UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

Gilbert E. Linder                          :

MAR 16    12 02 PM '04

v.                                         :        No. 3:02cv1956 s(JBA)    ...CT COURT
                                           :                              NEW HAVEN, CONN.
BYK-Chemie USA Inc.,                       :
in its capacity as Plan                    :
Sponsor of the Retirement Plan             :
of BYK-Chemie USA Inc., and the            :
Supplemental Retirement Plan               :
of BYK-Chemie USA Inc.                     :

**Ruling on Defendant's Motion for Summary Judgment [Doc. # 18]**

Plaintiff Gilbert E. Linder ("Linder"), a former employee
and participant in two pension plans sponsored by BYK-Chemie USA
Inc., brought suit under the Employee Retirement Income Security
Act of 1974 ("ERISA"), 29 U.S.C. § 1132, seeking the inclusion of
stock option compensation he received in 2001 in the calculation
of his pension benefits.  Defendant BYK-Chemie USA, Inc., in its
capacity as Plan Sponsor of the Retirement Plan of BYK-Chemie
USA, Inc., and the Supplemental Retirement Plan of BYK-Chemie
USA, Inc. ("Byk-Chemie") has now moved for summary judgment on
all of plaintiff's claims, arguing that plaintiff failed to
exhaust administrative remedies.  For the reasons discussed
below, defendant's motion is denied.

**I.  Background**

The parties agree that no material facts are in dispute.
Gilbert Linder is a former employee of BYK-Chemie, who was

1

terminated from his position effective January 31, 2002 as part of the corporate reorganization of the company.  <u>See</u> Affidavit of Gilbert E. Linder, June 13, 2003 [Doc. # 23, Ex. 9] at ¶ 2. Following his termination, Linder was provided with information about his retirement benefits under both the Retirement Plan of BYK-Chemie USA Inc. ("Retirement Plan") and the Supplemental Retirement Plan of BYK-Chemie USA Inc. ("SERP"), which are employee pension benefit plans as defined by Section 3(2) of ERISA.  <u>See</u> Letter from Gilbert Linder to Roland Peter, May 29, 2002 [Doc. # 18, Ex. 3]; Retirement Plan [Doc. # 23, Ex. 10]; SERP [Doc. # 23, Ex. 13].  Upon review, Linder challenged the Plan's failure to include the compensation he received in 2001 through the exercise of nonqualified stock options in the calculation of his retirement benefits.  In a letter to the Administrative Committee of the Retirement Plan of BYK-Chemie ("Committee") dated May 29, 2002, Linder informed the Committee that he believed he was entitled to the inclusion of his stock options compensation in the calculation of his pension benefits. <u>See</u> Letter from Gilbert Linder to Roland Peter, May 29, 2002 [Doc. # 18, Ex. 3].  This letter was treated as a formal claim for benefits, and on June 13, 2002, Carol Foley of the Administrative Committee responded by inviting Linder to submit additional information within ten days and providing an excised portion of the Plan.  <u>See</u> Letter from Carol Foley, Administrative

Committee to Gilbert Linder, June 13, 2002 [Doc. # 18, Ex. 4].[1]

On June 18, 2002, Lawrence Lissitzyn, counsel retained by Linder, wrote to Carol Foley, stating that the claims procedure was not described in the portion of the Plan provided with the June 13 letter, and that ten days was not a reasonable period of time to provide additional information. See Letter from Lawrence Lissitzyn to Carol Foley, June 18, 2002 [Doc. # 18, Ex. 5]. Saul Ben-Meyer, counsel for defendant, responded on behalf of Carol Foley in a letter dated June 27, 2002, which stated that the opportunity to submit additional information was offered as a courtesy, and that the Committee would make its determination based on the information it had in its possession if Linder did not submit additional information by July 1, 2002. See Letter from Saul Ben-Meyer to Lawrence Lissitzyn, June 27, 2002 [Doc. # 18, Ex. 7]. Enclosed with the letter was a copy of the Plan's claims procedure that the Committee previously neglected to provide. See id. On the same day, Linder's counsel wrote to Carol Foley with a detailed analysis of the facts and legal arguments supporting the inclusion of Linder's stock option

---

[1]While the letter stated that a copy of the claims procedure was enclosed, the section of the Plan included with the letter stated only the following about the claims procedure: "**9.10 Claims Procedure**. The Committee shall establish a claims procedure in accordance with applicable law and shall afford a reasonable opportunity to any Participant whose claim for benefits has been denied for a full and fair review of the decision denying such claim." See Enclosure to Letter from Carol Foley to Gilbert Linder, June 13, 2002 [Doc. # 18, Ex. 4].

3

compensation in the calculation of his pension benefits.  See
Letter from Lawrence Lissitzyn to Carol Foley, June 27, 2002
[Doc. # 18, Ex. 8].  After failing to receive a response from the
Committee, Lissitzyn wrote to Carol Foley on September 16, 2002,
stating that Linder's June 27, 2002 letter constituted an appeal
and, having received no response, he was therefore free to bring
suit in federal court.[2]  See Letter of Lawrence H. Lissitzyn to
Carol Foley, September 16, 2002 [Doc. # 18, Ex. 9].  Following
the receipt of this letter, Ben-Meyer telephoned Lissitzyn and
informed him that his June 27, 2002 letter did not constitute an
appeal under the Pension Plan, because it simply provided the
additional information requested by the Committee before making
its initial decision on Linder's claim.  See Affidavit of Saul
Ben-Meyer, May 23, 2003 [Doc. # 18, Ex. 10] at ¶ 8.  Defendant's
counsel also suggested expediting the appeal process by
characterizing Linder's claim as "deemed denied" as of August 29,
2002.  See id. at ¶ 9; Plaintiff's Local Rule 9 (C)(2) Statement

---

[2]The letter misstates the legal standard, citing 29 C.F.R. §
2560.503-1(i), which refers to the time for the Plan's response
to a request for review of an adverse decision, when the
Committee had not yet reached an initial decision on Linder's
claim.  The parties do not now dispute that the Plan Committee
had not reached an initial decision at the time of Linder's June
27, 2002 letter.  See Defendant's Local Rule 9(C)(1) Statement
[Doc. # 19] at ¶ 4; Plaintiff's Local Rule 9(C)(2) Statement
[Doc. # 24] at ¶ A.4; see also Deposition Transcript of Carol
Foley, April 11, 2003 [Doc. # 23, Ex. 2] at 60-61 ("The committee
never denied the claim, and the next we heard of it there was a
lawsuit pending.  So we never denied the claim.")

[Doc. # 24] at ¶ A.4.  In an e-mail dated October 21, 2002, Lissitzyn wrote to Ben-Meyer that BYK-Chemie's response to his June 27, 2002 letter on Linder's behalf was "long overdue," and requested a response as soon as possible.  <u>See</u> E-mail from Lawrence Lissitzyn to Saul Ben-Meyer [Doc. # 18, Ex. 11].  Lissitzyn received no response to this e-mail.  On November 4, 2002, plaintiff filed suit in this Court, seeking to have his benefits under the Retirement Plan and the SERP calculated to take into account his stock option compensation in 2001.

## II.  Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-588 (1986) (quoting <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)).  Here, the parties are in agreement that there is no issue of material fact in dispute.  While not required to accept the parties' agreement, <u>see Heublein, Inc. v. United States</u>, 966 F.2d 1455, 1461 (2d Cir. 1993) (citation omitted), the Court sees no disputed material issues precluding disposition of the exhaustion issue.

## III.  Discussion

At issue is whether Linder properly exhausted his administrative remedies prior to filing this suit.  ERISA requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  29 U.S.C. §1133(2).  Therefore, although ERISA itself does not include an exhaustion requirement, there is a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases."  <u>Kennedy v. Empire Blue Cross and Blue Shield</u>, 989 F.2d 588, 594 (2d Cir. 1993) (quoting <u>Alfarone v. Bernie Wolff Construction</u>, 788 F.2d 76, 79 (2d Cir. 1986)).  The exhaustion requirement serves important purposes, including to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not <u>de novo</u>."[3]  <u>Davenport v. Abrams, Inc.</u>, 249 F.3d 130, 133 (2d

---

[3]A denial of benefits is normally reviewed under an abuse of discretion standard if the retirement plan gives the administrator the "authority to determine eligibility for benefits or to construe the terms of the plan."  <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).  Although the Retirement Plan here gives the Administrative Committee the power to interpret the terms of the Plan, no administrative

Cir. 2001) (citations and internal quotation marks omitted).

The defendant argues that Linder failed to exhaust his administrative remedies because (1) Linder did not "perfect" his formal claim for benefits until June 27, 2002 when he provided the Committee with additional information; (2) under the Plan's claims procedures, the Committee had 90 days to respond to Linder's "perfected" claim, that is, until September 27, 2002, and (3) after Linder's counsel threatened to bring suit because of the Committee's failure to respond, the defendant's counsel offered to forego the initial claims review and "deem" plaintiff's claim denied, thus allowing him to proceed directly to the administrative appeal stage.  Because Linder brought suit without ever filing an administrative appeal, defendant concludes that he failed to properly exhaust his administrative remedies.

Linder argues, however, that under the Department of Labor regulations in effect since January 1, 2002, administrative remedies are deemed to be exhausted if the Plan Administrator fails to respond to a claim for benefits within 90 days.  He argues that the Plan's claims procedures, which provide that a claimant may administratively appeal if the Plan Administrator fails to respond within 90 days, are invalid, as they fail to comply with ERISA's procedural requirements.  The Court agrees.

_____

determination had been made at the time Linder filed suit. Review of merits of his claim therefore would appear to be de novo.  See id.

7

Under the express terms of the regulations, Linder's claim is deemed exhausted, and he is entitled to bring suit in federal court. See 29 C.F.R. § 2560.503-1(l).

ERISA requires "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial." 29 U.S.C. § 1133(1). As the implementing regulations provide, this notice of denial must be provided within "90 days after receipt of the claim by the plan, unless the plan administrator determines that special circumstances require an extension of time for processing the claim." 29 CFR 2650.503-1 (f). The 90 day time period is calculated to "begin at the time a claim is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination accompanies the filing." 29 CFR 2560.503-1(f)(4).

Here, it is undisputed that Linder submitted a formal claim for benefits on May 29, 2002, see Defendant's Local Rule 9(C)(1) Statement [Doc. # 19] at ¶ 2, and that the Committee to date has not issued a decision on Linder's claim. See Deposition of Carol Foley, April 11, 2003 [Doc. # 23, Ex. 2] at 60-61. While BYK-Chemie argues that Linder did not "perfect" his claim until June 27, 2002, the regulations are clear that the provision of

8

additional information would not restart the 90-day clock.   In

any event, the June 27, 2002 date is irrelevant, because BYK-

Chemie does not argue that the 90-day period for deciding his

claim should have been tolled after June 27, 2002, and the facts

of this case would not support such an argument.

Linder filed suit on November 4, 2002, well over 90 days

after his claim for benefits was filed, having received no

written decision from the Committee.   The ERISA regulations are

clear that claimants are "deemed to have exhausted administrative

remedies" in such circumstances.   As 28 C.F.R. § 2560.503-1(1)

---

[4]At most the 90-day time period would be tolled from the
date an extension was requested until the date the additional
information was provided, which in this case would be
approximately 14 days between June 13, 2002, when the
administrative committee invited Linder to submit additional
information, and June 27, 2002, when Linder responded.   The
regulations, however, do not expressly allow for tolling under
the facts of this case, as tolling is expressly referenced for
those claims under group health plans and disability benefit
plans in which additional information from the claimant is
required before the claim can be processed.   See 29 C.F.R. §
2560.503-1(f)(4)(providing for the tolling of the 90-day period
"from the date on which the notification of the extension is sent
to the claimant until the date on which the claimant responds to
the request for additional information.").   In this case, there
is no evidence in the record to suggest that Linder's submission
of additional information was required before the claim could be
decided.   The Committee simply invited Linder to provide
additional information if he so desired.   See Letter from Carol
Foley to Gilbert Linder, June 13, 2002 [Doc. # 18, Ex. 4].
Moreover, because the letter inviting Linder to provide
additional information nowhere states that an extension of time
was necessary, and nowhere provides a date by which the plan
expected to render a decision, it does not meet the regulation's
requirements for notice of an extension of time to process a
claim.   See 29 C.F.R. § 2560.503-1(f)(1).

provides:

> In the case of the failure of a plan to establish or
> follow claims procedures consistent with the
> requirements of this section, a claimant shall be
> deemed to have exhausted the administrative remedies
> available under the plan and shall be entitled to
> pursue any available remedies under section 502(a) of
> the Act on the basis that the plan has failed to
> provide a reasonable claims procedure that would yield
> a decision on the merits of the claim.

The defendant notes that the parties agreed during a telephone

conversation between counsel in September 2002 to "deem" Linder's

claim to be denied in order to allow Linder to expedite his

administrative appeal.  See Affidavit of Saul Ben-Meyer, May 23,

2003 [Doc. # 18, Ex. 10] at ¶ 9.  Such a "deemed denial",

however, is not an actual denial in compliance with the terms of

ERISA.  See 29 U.S.C. § 1133(1) (requiring written notice setting

forth specific reasons for denial); 29 C.F.R. § 2560.503-1(g)

(providing manner and content of notification of benefit

determination).  Instead, the suggestion for a "deemed denial"

referred to the regulatory procedures in effect prior to 2002,

which provided that a claim that received no response would be

"deemed denied under and Plan and ERISA," and which required a

claimant to then file an administrative appeal.  See J.E. Hickmon

and B. Randolph Wellford, Current Considerations in Adopting New

Employee Benefit Plan Claims Procedures, 30 Tax Mgmt. Comp. Plan.

J. 131 (2002) [Doc. # 23, Ex. 14] at 9 (citing 29 C.F.R. §

2560.503.1(e)(2) (1977)).  The regulations effective from January

2002, however, removed the language of "deemed denial," and

replaced it with the "deemed exhaustion" approach, which

explicitly gives the claimant the right to bring suit to pursue

legal remedies if the administrator fails to respond within the

requisite time period.  <u>See</u> <u>id</u>.; <u>see</u> <u>also</u> 29 C.F.R. 2560.503-1

(1); Michael Snyder, <u>No More "Deemed Denials</u>," 6 No. 7

Compensation & Benefits Update 1 (2002) [Doc. # 23, Ex. 15] at 1.

Under the current regulatory scheme, Linder's claim is properly

before this Court.

In its reply, BYK-Chemie asserts that its failure to issue a

decision on Linder's claim was a result of confusion over the

review process, its efforts to accommodate Linder's submission of

additional information, and defendant's reliance on the agreement

between counsel to informally deem Linder's claim denied.  BYK-

Chemie also argues that a technical violation of claims

regulation does not excuse exhaustion unless the claimant can

demonstrate that he was prejudiced by the defect.

However well-meaning the Committee, the regulation is

unequivocal that any failure to adhere to a proper claims

procedure is sufficient to deem administrative remedies

exhausted.  Moreover, the regulation contains no exception for

lack of prejudice, and the cases defendant cites, all issued

prior to 2002, have no bearing on the case at hand.  In <u>Perrino</u>

<u>v. Southern Bell Tel & Tel Co.</u>, 209 F.3d 1309, 1316-1317 (11th

11

Cir. 2000), for example, the Eleventh Circuit concluded that the

Plan Administrator's failure to follow some of ERISA's technical

requirements, such as creating a summary plan description or

informing employees about their specific appeal rights, did not

excuse the failure to exhaust administrative remedies where a

claims procedure remained available to the claimants.  Similarly,

in Heller v. Fortis Benefits Ins. Co., 142 F.3d 487, 492-93 (D.C.

Cir. 1998), the D.C. Circuit declined to excuse the failure to

exhaust administrative remedies because although the initial

benefits denial was not in compliance with the regulations, the

claimant was otherwise made aware of the reasons for her denial

and the right to appeal.  In contrast to those cases relied on by

the defendant, here the issue is not whether the failure to

exhaust administrative remedies should be excused by the Court as

an equitable measure; under the facts of this case, 29 C.F.R.

2560.503-1(1) has deemed administrative remedies exhausted.

**IV.   Conclusion**

For the foregoing reasons, defendant's motion for summary

judgment is DENIED.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this** /5 **day of March, 2004.**