UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GILBERT E. LINDER, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:02CV1956 (JGM) |
| v. | : | |
| BYK-CHEMIE USA INC., in its capacity as Plan Sponsor of the RETIREMENT PLAN OF BYK-CHEMIE USA INC., and the SUPPLEMENTAL RETIREMENT PLAN OF BYK-CHEMIE USA INC., | : | |
| Defendants. | : | NOVEMBER 8, 2005 |

### PLAINTIFF'S LOCAL RULE 56(a)(1) STATEMENT

In support of his motion for summary judgment, Plaintiff, Gilbert E. Linder, submits the following as his Local Rule 56(a)(1) Statement consisting of material facts as to which Plaintiff maintains there is no genuine issue.

1. BYK-Chemie USA Inc. terminated Mr. Linder's employment effective January 31, 2002 in connection with its corporate reorganization. [Linder's Affidavit, Tab 2, ¶4]

2. From May 29, 2002, the date on which Mr. Linder submitted his benefit claim, through November 8, 2005, the date of his Motion for Summary Judgment, the Administrative Committee has not responded to Mr. Linder's benefit claim. [Appendix, Tab 1]

3. During most of his 21-year tenure as an officer of BYK-Chemie USA Inc., Mr. Linder was a member of the Administrative Committee. At no time during that period did the Committee ever convene or undertake any business. Moreover, Linder was never asked to undertake any tasks in his capacity as a Committee member for Committee purposes. [Linder Affidavit Tab 2, ¶6]

4. The term "compensation" set forth in the summary plan description for the Qualified Plan document, defines those forms of remuneration which are included in the calculation of a Qualified Plan benefit. According to the summary plan description, the term "compensation" means:

> . . . . your earnings from the Employer, including salary, bonuses, overtime and special pay, or amounts that you defer pursuant to a salary deferral election under a 401(k) plan or cafeteria plan or for certain transportation fringe benefits (e.g., transit passes or qualified parking). Compensation does not include the value of any fringe benefits, including but not limited to auto allowances, group insurance and equity-based compensation, provided by the Employer. For plan years after December 31, 2001, Compensation shall not exceed $200,000 in any calendar year as adjusted for cost-of-living increases in accordance with the Internal Revenue Code.

[Linder Affidavit Tab 2, p. 2 ]

5. During Mr. Linder's entire tenure at BYK-Chemie the term "compensation" was defined as it appears in Section 1.10 of the Retirement Plan of BYK-Chemie USA Inc. amended and restated effective January 1, 2001. [Appendix Tab 3]

6. The First Amendment to the Retirement Plan of BYK-Chemie USA Inc. was effective April 24, 2002 and changed the definition of "compensation" as it appeared in Section 1.10 of the Retirement Plan of BYK-Chemie USA, Inc. (amended and restated effective January 1, 2001). More specifically, the First Amendment excluded:

> . . . . any "equity based incentive awards granted by the Company or an Affiliate or any income realized upon the purchase of a discount of stock or other equity securities of the Company or an Affiliate".

[Linder's Affidavit, Tab 2, ¶7 and Appendix Tab 5, p. 20 §1.10]

6. The First Amendment to Section 1.10 of the Retirement Plan Document

16822.000/398259.1

redefining the term "compensation" became effective almost three months <u>after</u> Mr. Linder's employment was terminated. [Linder Affidavit, Tab 2, ¶7]

7. At no time did Mr. Linder ever draft any document forming any part of the Qualified Plan or the SERP, nor was he consulted in the preparation of the text of any document relating to either Plan. [<u>Id.</u>, Tab 2, ¶8]

8. The terms of the Qualified Plan state the following:

(a) Section 5.1.2 of the Qualified Plan states that a participant is entitled to receive a retirement benefit based on his or her final average compensation and years of credited service.

(b) Section 1.16 of the Qualified Plan defines final average compensation as a participant's compensation averaged over the 60 consecutive calendar months during the 120 calendar months preceding his or her termination of employment which produced the highest such average.

(c) Section 1.10 of the Qualified Plan defines a participant's compensation as follows:

> the regular remuneration actually paid or accrued by the Employer to or for the benefit of an employee during the period of reference, including, under rules uniformly applicable to all employees similarly situated, any bonuses and pay for overtime or special pay, and excluding the Employer's cost for any public or private employee benefit plan, including the Plan; provided, however, that any compensation which is deferred by an employee pursuant to a plan or arrangement qualified under sections 125, 401(k), 402(a)(8), 402(h) or 403(b) of the Code shall be regarded as Compensation for purposes of this Plan. Compensation shall not include the value of any fringe benefits provided by the Employer, including, but not limited to, auto allowances and group term life insurance.

> A participant's compensation under the Qualified Plan is subject to the dollar limitation set forth in Section 401(a)(17) of the Code.

[Appendix, Tab 3]

9. The terms of the SERP state the following:

   (a) Section 3.01 of the SERP states that a participant is entitled to receive a supplemental retirement benefit based on the retirement benefit that the participant would have received under the Qualified Plan if the dollar limit on compensation under Section 401(a)(17) of the Code and the benefit limit under Section 415 of the Code were not applicable. [Appendix, Tab 4]

   (b) Section 2.03 of the SERP defines a participant's compensation as follows:

   > For purposes of this Plan, the term "Compensation" shall (except as modified below) have the same meaning given such term in the Pension Plan. Unlike the Pension Plan, however, Compensation for purposes of this Plan shall include salary, bonus or other compensation that the Company would otherwise have paid to the Participant but for the Participant's election to defer the receipt of such salary, bonus or other compensation pursuant to a Company sponsored deferred compensation program ("Deferred Compensation") provided, however, that Deferred Compensation shall not be included in Compensation in the year such Deferred Compensation is paid to the Participant.

[Appendix, Tab 4]

10. The SERP uses the same definition of "compensation" as is set forth in the Qualified Plan, except that the SERP definition includes amounts deferred under the

16822.000/398259.1

employer's deferred compensation program, and it is not subject to the dollar limit imposed on qualified plans by Code §401(a)(17). See §2.03 of the SERP. (Tab 4)

11. The SERP was adopted by the Board of Directors of Altana, Inc. (the "Board") effective May 27, 1994 as a nonqualified supplemental retirement plan for certain executives of its BYK-Chemie USA Division. The intent of the Plan was to replace pension benefits lost under the tax qualified pension plan for employees of the BYK-Chemie USA Division due to the reduction in the compensation limit under Code 401(a)(17) which became effective January 1, 1994. However, no formal Plan document was prepared at the time of adoption of the SERP. The successor of BYK-Chemie USA, Division of Altana, Inc. formally adopted a SERP plan document on or about February 28, 2002 (since the SERP refers to the Qualified Plan which was adopted on February 28, 2002). [Appendix, Tab 4]

12. The stock options were reported as a compensation expense by BYK-Chemie under generally accepted accounting principles, were reported in the annual report of the BYK-Chemie's parent under the heading of compensation of employees and management, and were reported as compensation on Linder's Form W-2. [Linder Affidavit at Tab 2, ¶15].

13. To the best of his knowledge, all of the documents relating to the formation of the two Plans were prepared by BYK-Chemie's attorneys and/or actuaries. (Linder's Affidavit, Tab 2, ¶9)

14. A true and accurate copy of portions of the annual reports of Altana AG, which include material data relating to BYK-Chemie USA, Inc., for the years 1999 (Tab 8),

16822.000/398259.1

2000 (Tab 9), 2001 (Tab 10), 2002 (Tab 11), 2003 (Tab 12) and 2004 (Tab 13) are attached to Appendix of Documents.

In an email from Carol Foley to Mr. Linder, Ms. Foley says:

> Hi Gil,
> I just heard from Saul today regarding your pension calculation. Germany has decided not to include exercised options in the pension calculation. Saul is preparing an amendment to our Plan and Altana's Pension Plan. Germany is sending Saul the relevant resolution regarding this matter. Let me know when you want your final pension calculation done.

Appendix Tab 7.

15. A true and accurate copy of the email from Mr. Linder to Carol Foley dated November 21, 2001 is attached at Tab 6. [Id., Tab 2, ¶3]

16. The Altana Annual Report for 1999 reflects the fact that the Stock Option Plan under Note 13 on Page 82 of Tab 8 says "The Managing Board and Supervisory Board intend to launch more Stock Option Plans over the coming years." This text reflects the fact that the Stock Option Plan is an ongoing form of compensation. A true and correct copy of the BYK-Chemie USA Inc. Stock Option Plan (1999) is attached at Tab 14. [Id., Tab 2, ¶12]

17. A true and correct copy of the BYK-Chemie USA Inc. Stock Option Plan (2000) is attached at Tab 15. [Id., Tab 2, ¶13]

18. The Stock Option Plans are reflected as compensation in the annual reports of Altana AG (Appendix, Tab 10). For example, the 2001 Annual Report (See Tab. 10) for Altana contains a footnote 14 entitled "Employee Incentive Plans" (Appendix, Tab 10). Under that Section there is included the Management Stock Option Plans reflecting the fact that those plans are, in fact, employee incentives. Moreover, they are carried as

"Compensation" as reflected on page 95 of the 2001 Annual Report. A true and correct copy of the BYK-Chemie USA Inc. Stock Option Plan (2001) is attached at Tab 16. [Id., Tab 2, ¶14]

19. The same is true for the 2002 Annual Report. See Tab 11. Under footnote 14 commencing on page 108, the heading is "Employee Incentive Plans." Under that footnote the stock option plans are carried as a "Compensation Expense" and, on page 123 under the heading of Compensation of Supervisory Board and the Management Board, there is, again, reference to the "Stock Option Plans attributable to the members of the Management Board."

20. A true and correct of Mr. Linder's 2001 IRS Form 1040, along with his pay stub from BYK-Chemie reflecting his gain from the sale of his stock options is attached at Tab 17. [Id., Tab 2, ¶15]

21. At no time since Mr. Linder filed his benefit claim on May 29, 2002 has there been any dialogue between him and the Administrative Committee regarding the status of his claim. [Id., Tab 2, ¶17]

PLAINTIFF, GILBERT E. LINDER

By: _____
Dominic Fulco III
Fed. Bar ID No. ct06494
Reid and Riege, P.C.
One Financial Plaza  21st Floor
Hartford, CT 06103
Tel: (860) 278-1150   Fax: (860) 240-1002
dfulco@reidandriege.com
His Attorney