UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GILBERT E. LINDER, | CIVIL ACTION NO. |
| Plaintiff, | 3:02CV1956 (JGM) |
| v. | |
| BYK-CHEMIE USA INC., in its capacity as Plan Sponsor of the RETIREMENT PLAN OF BYK-CHEMIE USA INC., and the SUPPLEMENTAL RETIREMENT PLAN OF BYK-CHEMIE USA INC., | |
| Defendants. | NOVEMBER 8, 2005 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Gilbert E. Linder ("Mr. Linder"), by his attorneys, Reid and Riege, P.C., submits this Memorandum of Law in Support of His Motion for Partial Summary Judgment dated November 8, 2005.

**I.    ISSUE**

Whether Mr. Linder is entitled to have compensation income which he recognized as a result of the exercise of various stock options during the last years of his employment, and prior to his forced retirement, included in the computation of his retirement benefits.

**II.   SUMMARY**

This is an action pursuant to §502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Mr. Linder maintains that: (1) he is entitled to a pension benefit from the Retirement Plan of BYK-Chemie USA Inc., an employee pension benefit plan as defined by ERISA §3(2) ("Qualified Plan") and the Supplemental

**ORAL ARGUMENT REQUESTED**
16822.000/396215.3

Retirement Plan of BYK-Chemie USA Inc.[1], an employee pension benefit plan as defined by §3(2) of ERISA ("SERP") (collectively, the "Plans") and (2) both the Qualified Plan and the SERP are sponsored and administered by BYK-Chemie.

Substantively, Mr. Linder demands that the Qualified Plan and the SERP[2] calculate his pension benefit in accordance with the terms of the two Plans to include compensation income which he recognized as a result of the exercise of various stock options during the last years of his employment and prior to his forced retirement. Mr. Linder was employed by BYK-Chemie for 21 years as its chief financial officer before he was terminated in connection with his employer's corporate reorganization. He is now a geometry teacher in Connecticut.

**Procedural Posture**

On November 4, 2002, Mr. Linder commenced this action. Thereafter, defendants moved for summary judgment in an attempt to dismiss this action on the grounds that Mr. Linder had failed to exhaust his administrative remedies prior to filing suit.

---

[1] The defendant SERP is a "top hat plan." Top hat plans are unfunded plans that are designed to provide deferred compensation and other retirement benefits to a select group of management or highly compensated employees. They are a type of employee benefit plan for high-ranking employees and are exempted from ERISA's substantive provisions regarding participation, vesting, funding and fiduciary responsibility. Nevertheless, top hat plans remain subject to the enforcement provisions of ERISA contained in ERISA Section 502(a), 29 U.S.C. §1132(a). See Bigda v. Fischbach, 898 F.Supp. 1015 (S.D.N.Y. 1995).

[2] The SERP was adopted by the Board of Directors of Altana, Inc. (the "Board") effective May 27, 1994 as a nonqualified supplemental retirement plan for certain executives of its BYK-Chemie USA Division. The intent of the Plan was to replace pension benefits lost under the tax qualified pension plan for employees of the BYK-Chemie USA Division due to the reduction in the compensation limit under Code 401(a)(17) which became effective January 1, 1994. However, no formal Plan document was prepared at the time of adoption of the SERP. The successor of BYK-Chemie USA, Division of Altana, Inc. formally adopted a SERP plan document on or about February 28, 2002 (since the SERP refers to the Qualified Plan which was adopted on February 28, 2002). See Tab 4, p. 1.

16822.000/396215.4

By decision dated November 16, 2004, the Honorable Janet Bond Arterton ("Judge Arterton" or the "Court") denied defendants' motion on the grounds that Mr. Linder had exhausted his administrative remedies under the terms of the two Plans. On that basis, the Court squarely held that he was entitled to proceed directly to the federal district court for a judicial remedy pursuant to ERISA §502(a)(1)(B). Linder v. BYK-Chemie USA Inc., 313 F. Supp.2d 88 (D.Conn. 2004)

Specifically, Judge Arterton said:

> A denial of benefits is normally reviewed under an abuse of discretion standard if the retirement plan gives the administrator the "authority to determine eligibility for the benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Although the Retirement Plan here gives the Administrative Committee the power to interpret the terms of the Plan, no administrative determination had been made at the time Linder filed suit. [Mr. Linder was, therefore deemed to have exhausted his administrative remedies and was entitled to pursue his claim in the federal district t court.] **Review of the merits of his claim therefore would appear to be de novo.** [emphasis added].

In ruling as she did, Judge Arterton found the following facts:

1. As part of the reorganization of BYK-Chemie, Mr. Linder was terminated after twenty-one years of employment. (BYK Opinion at p. 90).

2. Upon his review of BYK-Chemie's letter reflecting BYK-Chemie's failure to include the compensation [Mr. Linder] received in 2001 through the exercise (sale) of non-qualified stock options in the calculation of his retirement benefits, Mr. Linder wrote a letter to a senior member of BYK-Chemie complaining about this omission. That letter, dated May 29, 2002, is attached at Tab 1. The Court treated the date of that letter as the date of Mr. Linder's formal claim for benefits. (Id. at p. 90.)

3.  Mr. Linder wrote to the Plans' Administrator asking to receive a copy of the Plans' claims procedure.

4.  In response to that letter, the Administrator provided a copy of the Qualified Plan document which did not include a copy of the Claims' Procedure. Indeed, Judge Arterton noted that the Qualified Plan document sent to Mr. Linder said that the "[Administrative] Committee <u>shall</u> establish a Claims' Procedure in accordance with particular law". [emphasis added] (Opinion at p. 3).

5.  By letter dated June 27, 2002, Mr. Linder's counsel wrote to the Administrative Committee detailing the facts and legal arguments supporting Mr. Linder's claim for inclusion of the stock option compensation in the calculation of his pension benefits. Mr. Linder has never received any response whatsoever to this letter. (<u>Id</u>. at p. 90.) Judge Arterton determined that this omission/delay was in violation of 29 CFR §2560.503-1(f)(4) which <u>required</u> a response within 90 days of May 29, 2002.

6.  Finally, the court emphasized that Mr. Linder filed this action on November 4, 2002, well over the ninety-day period mandated by the United States Department of Labor in 28 CFR §2560.503-1(f). (<u>Id</u>. at p. 4).

7.  As of the date of the Court's ruling, the Administrative Committee had not rendered a decision on Mr. Linder's claim. Indeed, as of the date of this memorandum, the Administrative Committee has still not issued a response to Mr. Linder's benefit claim, nor has the Committee ever convened a meeting in an effort to consider and resolve this issue. See <u>Linder</u> <u>Affidavit</u> at Tab 2, ¶16.

4

16822.000/396215.4

## ARGUMENT

### Summary Judgment: Standard Of Review

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Silver v. City Univ., 947 F.2d 1021, 1022 (2d Cir.1991). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir.1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir.2002).

16822.000/396215.4

## POINT ONE

## THE VALIDITY OF MR. LINDER'S BENEFIT CLAIM SHOULD BE EVALUATED UNDER THE DE NOVO STANDARD OF REVIEW

### A. The Administrative Committee of the SERP never rendered a decision to which this court could give deference.

In general, under the de novo standard of review, a decision, if any, of a plan's administrative committee is not entitled to any deference in the process of its judicial review. In contrast, under the arbitrary and capricious standard, an administrative committee's ruling on a participant's benefit claim is entitled to a substantial degree of deference by a reviewing court, provided that the plan's document provides the administrative committee with the authority to make the decision in question. See generally, Firestone Rubber & Tire Co. v. Bruch, 489 U.S. 101, 115 (1989).

To date [November 8, 2005], the Plans' Administrative Committee has not rendered any decision in response to Mr. Linder's benefit claim submitted on May 29, 2002. Nor has there been any dialogue of any sort between Mr. Linder and the Administrative Committee, or anyone on its behalf, regarding any component of his benefit claim. See Linder Affidavit at Tab 2, ¶¶16, 17.

In short, there is no administrative decision, opinion, or anything else issued by the Committee to which this court can give deference. For that reason alone, this court should not -- indeed, could not -- defer to the findings of the Plan's Administrative Committee, as would otherwise be the case if the Committee had issued a decision to which deference could be granted.

6

16822.000/396215.4

**B.**   **Authoritative Case Law mandates that the *de novo* standard applies in a situation, like this one, where an administrative committee provides no response whatsoever to a plan participant's benefit claim.**

In Gilbertson v. Allied Signal Inc., 328 F.3d 625 (10th Cir. 2003), the plaintiff participant filed a benefit claim for disability benefits with her long-term disability plan. The plan's administrator reviewed and denied the claim in compliance with ERISA's claims regulations. In addition, the claim response letter properly notified the participant of her claim appeal rights. The participant timely filed a claim appeal with the plan's administrator. Prior to its initial response deadline, the plan administrator notified the participant that it was extending the deadline for the claim appeal response, but the plan administrator ultimately failed to send the participant a response within the period required by the claim procedure regulations. After the participant requested that a decision be rendered, the plan administrator set up an independent physician examination for the participant without providing her with any notice.

Ultimately, the participant decided that the plan administrator's failure to respond timely was a "deemed denial" and she filed suit. On appeal, the Tenth Circuit held that, when a plan administrator violates ERISA's claims review deadlines resulting in a claim being automatically or "deemed" denied on review, a court *must* review the denial under a de novo standard of review without giving any deference to a claim decision, even if the plan administrator has discretionary authority to decide claims under the plan. The court's rationale was that decisions made outside the boundaries of conferred discretion are not exercises of discretion and therefore are not entitled to deferential review.

7

Another recent decision also illustrates this principle. In <u>Jebian v. Hewlett Packard Company</u>, 349 F.3d 1098 (9th Cir. 2002), a plan administrator denied an employee's claim for long term disability benefits after the claim had already been "deemed denied" under the terms of the plan and applicable ERISA regulations. The district court reviewed the denial under the arbitrary and capricious standard because the plan vested the administrator with the discretionary authority that, under <u>Firestone</u>, triggers arbitrary and capricious review. <u>Jebian</u>, 310 F.3d at 1176-77. However, the Ninth Circuit reversed, holding that, where "a claim is 'deemed . . . denied' on review after the expiration of a given time period, there is no opportunity for the exercise of discretion and the denial is reviewed <u>de</u> <u>novo</u>." <u>Id</u>. at <u>1177</u>.

The Eighth Circuit reached a similar result in <u>Seman v. FMC Corp. Retirement Plan for Hourly Employees</u>, 334 F.3d 728 (8th Cir. 2003). In <u>Seman</u>, the participant filed a claim for disability benefits, which the plan administrator denied. The participant filed a timely claim appeal. After 18 months passed without a decision by the plan's claim review panel, the participant filed suit for wrongful denial of benefits under ERISA. The district court applied the arbitrary and capricious standard of review and dismissed the claim.

The Eighth Circuit disagreed with the district court, however, and found that, when a plan administrator denies a participant's initial application for benefits but the claim appeal is not timely acted on and decided, the plan administrator's decision on the underlying claim is subject to judicial review under the <u>de novo</u> standard of review.

<u>Gritzer v. CBS, Inc.</u>, 275 F.3d 291 (3d Cir. 2002) also supports the principle that "deemed denied" decisions should be reviewed <u>de novo</u>. In that case, a plan administrator with discretionary authority failed to respond to a claim until after it was deemed denied.

8

The Third Circuit reversed the district court's application of the arbitrary and capricious standard, holding that, under Firestone's application of trust law principles to ERISA cases, if "a trustee fails to act or to exercise his or her discretion, de novo review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer." Id. at 296.

Thus, it is clear that case law on this subject supports the position that de novo review is the proper standard of judicial review where, as here, a plan's fiduciary fails to render any decision at all in response to a valid benefit claim[3].

## POINT TWO

### THE PROFIT WHICH MR. LINDER DERIVED FROM THE EXERCISE OF STOCK OPTIONS GRANTED TO HIM BY BYK-CHEMIE SHOULD BE INCLUDED IN THE COMPUTATION OF HIS PENSION BENEFIT

**A.**   **The term "Compensation" includes the profit that Mr. Linder realized from the exercise of the stock options.**

The term "compensation" set forth in the summary plan description for the Qualified Plan document, [Tab 3, p. 2 ] defines those forms of remuneration which are included in the calculation of a Qualified Plan benefit.

According to the summary plan description, the term "compensation" means:

> . . . . your earnings from the Employer, including salary, bonuses, overtime and special pay, or amounts that you defer pursuant to a salary deferral election under a 401(k) plan or

---

[3] There are cases which hold, on different facts, that the arbitrary and capricious review standard applies even though a plan administrator's response to a claim is late. See, e.g., McGarrah v. Hartford Life Insurance Co., 234 F.3d (8th Cir. 2000)

>  cafeteria plan or for certain transportation fringe benefits (e.g., transit passes or qualified parking). Compensation does not include the value of any fringe benefits, including but not limited to auto allowances, group insurance and equity-based compensation, provided by the Employer. For plan years after December 31, 2001, Compensation shall not exceed $200,000 in any calendar year as adjusted for cost-of-living increases in accordance with the Internal Revenue Code.

The SERP uses the same definition of "compensation" as is set forth in the Qualified Plan, except that the SERP definition includes amounts deferred under the employer's deferred compensation program, and it is not subject to the dollar limit imposed on qualified plans by Code §401(a)(17). See §2.03 of the SERP. (Tab 4)

Mr. Linder maintains that the term "compensation" as defined for the purposes of the Qualified Plan and the SERP clearly includes the income which he realized from the exercise of the stock options granted to him by BYK-Chemie ("Stock Option Compensation"). However, if the court determines that there is some measure of ambiguity in the term "compensation", (i.e., whether Stock Option Compensation constitutes "compensation" for purposes of computing Mr. Linder's retirement benefit), then the doctrine of contra proferendum applies.

The Second Circuit has adopted the rule that, where there is ambiguity in the terms of an ERISA plan subject to de novo review, such ambiguity should be construed against the party which drafted the plan. Masella v. Blue Cross & Blue Shield of Conn., Inc. v. Trustees of American Consulting, 936 F.2d 98, 107 (2nd Cir. 1991); See also I.V. Services of America, Inc., 136 F.3d 114, 121 (2nd Cir. 1998). Explaining the value of the contra proferendem rule, the court in Masella said "[t]o ignore the effect of this rule where the de novo standard applies 'would require us to . . . afford less protection to employees and

16822.000/396215.4