their beneficiaries than they enjoyed before ERISA was enacted: a result that would be at odds with the congressional purposes of promoting the interests of employees and beneficiaries and protecting contractually defined benefits." Masella, 936 F.2d at 107 (citing Firestone v. Bruch, 489 U.S. 101 at 113-114 (1989) supra.

All of the terms of both Plans relating to retirement and its consequences were drafted by senior officers of BYK-Chemie and its service providers. Said another way, none of those documents was written or reviewed by Mr. Linder, nor was he consulted in their preparation. See Linder Affidavit, Tab 2, ¶¶6, 8. Therefore, Masella dictates that any ambiguity in the terms of the Plans' documents should be interpreted in favor of Mr. Linder.

**B. Under the terms of the Qualified Plan and the SERP, Mr. Linder is entitled to have his Stock Option Compensation included in his "compensation" for purposes of the computation of his retirement benefit.**

**(1)** The terms of the Qualified Plan state the following:

(a) Section 5.1.2 of the Qualified Plan[4] states that a participant is entitled to receive a retirement benefit based on his or her final average compensation and years of credited service.

(b) Section 1.16 of the Qualified Plan defines final average compensation as a participant's compensation averaged over the 60 consecutive calendar months during the 120 calendar months preceding his or her termination of employment which produced the highest such average.

---

[4] See Tab 3.

(c)     Section 1.10 of the Qualified Plan (Tab 3) defines a participant's compensation as follows:

> the regular remuneration actually paid or accrued by the Employer to or for the benefit of an employee during the period of reference, including, under rules uniformly applicable to all employees similarly situated, any bonuses and pay for overtime or special pay, and excluding the Employer's cost for any public or private employee benefit plan, including the Plan; provided, however, that any compensation which is deferred by an employee pursuant to a plan or arrangement qualified under sections 125, 401(k), 402(a)(8), 402(h) or 403(b) of the Code shall be regarded as Compensation for purposes of this Plan. Compensation shall not include the value of any fringe benefits provided by the Employer, including, but not limited to, auto allowances and group term life insurance.
>
> A participant's compensation under the Qualified Plan is subject to the dollar limitation set forth in Section 401(a)(17) of the Code.

**(2)**    The terms of the SERP (Tab 4) state the following:

(a)     Section 3.01 of the SERP states that a participant is entitled to receive a supplemental retirement benefit based on the retirement benefit that the participant would have received under the Qualified Plan if the dollar limit on compensation under Section 401(a)(17) of the Code and the benefit limit under Section 415 of the Code were not applicable.

(b)     Section 2.03 of the SERP defines a participant's compensation as follows:

> For purposes of this Plan, the term "Compensation" shall (except as modified below) have the same meaning given such term in the Pension Plan. Unlike the Pension Plan, however, Compensation for purposes of this Plan shall include salary, bonus or other

12

> compensation that the Company would otherwise have paid to the Participant but for the Participant's election to defer the receipt of such salary, bonus or other compensation pursuant to a Company sponsored deferred compensation program ("Deferred Compensation") provided, however, that Deferred Compensation shall not be included in Compensation in the year such Deferred Compensation is paid to the Participant.

A participant's compensation under the SERP is not subject to the dollar limitation set forth in Section 401(a)(17) of the Code that applies to qualified plans. Rather, it is subject to the dollar limit on compensation in effect on December 31, 1993 (i.e., $235,840), increased by cost of living adjustments for each year after 1993.

**(3)** The definition of compensation in the Qualified Plan, and as incorporated into the SERP, includes Stock Option Compensation.

    (a) Under the Qualified Plan, compensation is defined to include all of a participant's regular remuneration, plus bonuses, overtime, special pay, and pre-tax contributions to a Section 401(k) plan or a cafeteria plan. The only exclusions from the definition of compensation are BYK-Chemie's contributions to an employee benefit plan (other than certain pre-tax contributions) and fringe benefits (such as auto allowances and the cost of group term life insurance). Because the definition of compensation in the Qualified Plan is broad and does not specifically exclude Stock Option Compensation, Stock Option Compensation must be included as compensation.

    (b) The definition of compensation in the Qualified Plan includes "regular remuneration", and the Stock Option Compensation constitutes "regular remuneration".

13

The stock options granted to Linder are "remuneration", since they are compensatory in their nature and in their purpose. The stock options were reported as a compensation expense by BYK-Chemie under generally accepted accounting principles, were reported in the annual report of the BYK-Chemie's parent under the heading of compensation of employees and management, and were reported as compensation on Linder's Form W-2. See Linder Affidavit at Tab 2, ¶15. The stock options were given to employees in recognition of their past services and as an incentive for their future performance. Clearly, stock options represent "remuneration" for services rendered or to be rendered.

The stock options granted to Linder are also "regular", since they were awarded to him annually beginning in 1999.

(c) The definition of compensation in the Qualified Plan includes "special pay". If the Stock Option Compensation is not deemed to be "regular compensation", it nevertheless constitutes "special pay".

As noted above, stock options are compensatory in nature. Therefore, stock options clearly represent "pay" for services rendered or to be rendered.

Stock options are "special", since they are awarded to a limited number of employees in recognition of their past services and as an incentive for their future performance.

(d) The definition of compensation in the Qualified Plan includes "bonuses". Stock Option Compensation constitutes "bonuses".

Stock options are very similar to long term incentive bonuses. Both stock options and long term incentive bonuses are compensatory in nature, and their

14

value varies based on the performance of the employee, the employer or both. Both stock options and long term incentive bonuses are awarded to employees in recognition of their past services and as an incentive for their future performance.

(e) The retirement plan that preceded the Qualified Plan (the BYK-Mallinckrodt money purchase pension plan) defined compensation as base salary excluding bonuses. Since the Qualified Plan defines compensation as regular remuneration including bonuses, BYK-Chemie clearly intended to incorporate a new definition of compensation into the Qualified Plan that incorporates all types of compensation, including Stock Option Compensation.

(f) The definition of compensation in the Qualified Plan excludes certain items (such as fringe benefits) from consideration. If BYK-Chemie wished to exclude Stock Option Compensation, the definition of compensation could have specifically so provided. The failure of BYK-Chemie to exclude Stock Option Compensation from the definition of compensation indicates that BYK-Chemie intended that definition to be interpreted broadly and to include such amounts.

### C.  BYK-Chemie's internal correspondence and its Board of Directors resolutions confirm that the term "compensation" under the Qualified Plan and the SERP included the Stock Option Compensation.

Shortly after Mr. Linder identified his claim to BYK-Chemie's senior officers and Administrative Committee, BYK-Chemie amended the Qualified Plan to "clarify the definition of compensation in Section 1.10 of the Retirement Plan of BYK-Chemie USA, Inc." See Tab 3.

16822.000/396215.4

During the relevant period of Mr. Linder's tenure at BYK-Chemie, the term "compensation" was defined in the Qualified Plan as it is quoted above.

Effective April 24, 2002, the Board of Directors of BYK-Chemie adopted a unanimous written consent to corporate action by which it amended the terms "compensation" as it appeared in Section 1.10 of the Plan. Notably, this took place approximately three months after BYK-Chemie terminated Mr. Linder's employment. Specifically, the amendment excluded "gain or loss recognized in connection with the exercise of stock options, stock appreciation rights or other equity securities granted by the corporation or an affiliate of the corporation…". See Tab 5.

This Qualified Plan amendment, without more, clearly establishes that the proper reading of the term "compensation" prior to Mr. Linder's raising the issue was that the term included Stock Option Compensation.

In the same vein, there is an email from Carol Foley, a representative of the Administrative Committee, dated April 25, 2002, three months after Mr. Linder's termination, in which she responds to a question from Mr. Linder (See Tab 6) about the inclusion of Stock Option Compensation in connection with the computation of his retirement benefits. In that email, Ms. Foley said:

> Hi Gil,
> I just heard from Saul today regarding your pension calculation. Germany has decided not to include exercised options in the pension calculation. Saul is preparing an amendment to our Plan and Altana's Pension Plan. Germany is sending Saul the relevant resolution regarding this matter. Let me know when you want your final pension calculation done. See Tab 7.

Here again is proof positive that all parties concerned recognized that Stock Option Compensation was included in the term "compensation". Furthermore, in order to change

16

16822.000/396215.4

that interpretation, the Qualified Plan had to be amended – as it was – to accommodate "Germany's decision not to include exercised options in the pension calculation." Obviously, such a "decision" could have only a prospective application and could not impact the calculation of Mr. Linder's already accrued benefits.

### D.  COMPENSATION AS REFLECTED IN THE ALTANA ANNUAL REPORTS AND THE STOCK OPTION PLAN

The Stock Option Plans are reflected as compensation in the annual reports of Altana AG. For example, the 2001 Annual Report (See Tab. 10) for Altana contains a footnote 14 entitled "Employee Incentive Plans." Under that Section there is included the Management Stock Option Plans reflecting the fact that those plans are, in fact, employee incentives. Moreover, they are carried as "Compensation" as reflected on page 95 of the 2001 Annual Report.

Furthermore, The Altana Annual Report for 1999 reflects the fact that the Stock Option Plan under Note 13 on Page 82 of Tab 8 says "The Managing Board and Supervisory Board intend to launch more Stock Option Plans over the coming years." This text reflects the fact that the Stock Option Plan is an ongoing form of compensation.

The same is true for the 2002 Annual Report. See Tab 11. Under footnote 14 commencing on page 108, the heading is "Employee Incentive Plans." Under that footnote the stock option plans are carried as a "Compensation Expense" and, on page 123 under the heading of Compensation of Supervisory Board and the Management Board, there is, again, reference to the "Stock Option Plans attributable to the members of the Management Board."

17

Similarly, the 2002 Annual Report reflects the 2000, 2001 and 2002 Stock Option Plans as Compensation Expenses. Specifically, page 110 headed "Compensation Expenses under the foregoing Plan refer to the Stock Option Expense as 'Compensation'." <u>See</u> Tab 11.

These Annual Reports reflect the fact that the Stock Options issued pursuant to the Stock Option Plans are treated as "Compensation" by Altana AG.

## Conclusion

For the reasons provided above, Mr. Linder's Motion for Partial Summary Judgment should be granted.

> PLAINTIFF, GILBERT E. LINDER
>
> By: _____
> Dominic Fulco III
> Fed. Bar ID No. ct06494
> Reid and Riege, P.C.
> One Financial Plaza  21st Floor
> Hartford, CT 06103
> Tel: (860) 278-1150   Fax: (860) 240-1002
> dfulco@reidandriege.com
> His Attorney

## CERTIFICATION

This is to certify that a copy of the foregoing Plaintiff's Memorandum of Law in Support of His Motion for Partial Summary Judgment was mailed via first-class mail, postage prepaid, this 8th day of November, 2005, to the following:

| | |
|---|---|
| Charles F. Corcoran, III, Esq.<br>Carmody & Torrance LLP<br>195 Church Street<br>P.O. Box 1950<br>New Haven, Connecticut 06509-1950 | Michael G. Monnolly, Esquire<br>Alston & Bird, LLP<br>One Atlantic Center<br>1201 West Peachtree Street<br>Atlanta, GA 30309-3424 |

_____
Dominic Fulco III

16822.000/396215.4