# TAB 3

order to comply with the provisions of USERRA, such accruals shall be made when the Participant presents himself to resume service as an employee of the Employer within the time that his reemployment rights are protected under USERRA. Any such military service accruals shall be equal to the sum of the accruals that would have been credited to the Participant had the Participant remained in the employ of the Employer as an Eligible Employee throughout the period of his military service absence, with imputed Compensation equal to the Compensation he would have earned at his rate of pay from the Employer in effect immediately prior to inception of his absence for military service.

**5.2. Postponed Retirement Pension** In the event that a Participant continues in employment with the Company after his Normal Retirement Date, he shall be entitled to receive a Postponed Retirement Pension commencing on the first day of the month coincident with or next following the date his employment terminates. Such Postponed Retirement Pension shall be in a monthly amount equal to the amount determined under the Normal Retirement Pension formula pursuant to Section 5.1, but using the Participant's Final Average Compensation and Years of Service as of his actual retirement date. The cumulative increases in a Participant's Retirement Pension otherwise resulting under the foregoing provisions of this Section 5.2 shall be reduced by the actuarial equivalent of the cumulative amount of distributions made to the Participant pursuant to Section 7.7.2, provided that in no event shall a Participant's Postponed Retirement Pension for any Plan Year be reduced below the amount of his Postponed Retirement Pension at the end of the preceding Plan Year as determined in accordance with this Section 5.2 (taking into account both additional accruals and distributions made through the end of such prior Plan Year).

**5.3. Vested Retirement Pension.** In the event of the Termination of Employment of a Participant who is not eligible for a Retirement Pension under section 5.1 or 5.2, but who has completed at least five (5) Years of Service (ten (10) Years of Service for Participants who do not have an Hour of Service after 1988), such Participant shall be eligible to receive a Vested Retirement Pension. In addition, each Participant shall be fully vested in his Accrued Benefit upon his attainment of age sixty-two (62), provided that he has attained the age of fifty-five (55) on January 1, 1984, the original effective date of Plan. Such Vested Retirement Pension shall be whichever benefit described in Section 5.3.1 or 5.3.2 he shall elect at such time and in such manner as the Committee shall determine.

> 5.3.1. <u>Payment at Normal Retirement Date</u>. A Retirement Pension commencing on his Normal Retirement Date in a monthly amount equal to his Accrued Benefit.

> 5.3.2. <u>Early Retirement</u>. Early retirement is available at age fifty-five (55) with five (5) Years of Service provided, however, that for purposes of early retirement and all other purposes under the Plan, benefits are reduced at ages below Normal Retirement Date by 1/15th for each year that a Participant's Early Retirement Date precedes his Normal Retirement Date for the first five (5) years. At ages fifty-five (55) to sixty (60), benefits are reduced by 1/30th for each additional year that the Early Retirement Date precedes the Participant's Normal Retirement Date. Notwithstanding the above, in no event will the benefit

determined pursuant to this Section 5.3.2 be less than the benefit calculated under the early retirement provisions of the Plan in effect on December 31, 1988, based on Year of Credited Service and Compensation on that date.

    5.3.3. <u>Crediting of Service for Periods of Military Service</u>. Absence from employment on account of a leave of absence for service in the uniformed armed services of the United States will be counted as employment with the Employer if, and only if, that leave of absence does not extend beyond the end of the period during which the employee's reemployment rights are protected under USERRA and the employee presents himself for employment with an entity constituting the Employer at or prior to the end of such leave. In addition, if the employee presents himself for return to service with the Employer within the period during which his reemployment rights are protected under USERRA, the period of his or her absence from employment between the end of his or her active duty period and his or her return to employment by the Employer will be considered service with the Employer. If the employee does not return to active employment with the Employer, his service will be deemed to have ceased on the earliest date permitted under applicable law. The Employer's leave policy shall be applied in a uniform and nondiscriminatory manner to all Participants under similar circumstances.

    **5.4.** **<u>Disability Retirement Pension</u>.** A Participant who has completed five (5) Years of Service (ten (10) Years of Service for Participants who do not have an Hour of Service after 1988) and terminated employment because of Disability incurred (a) while employed as an Eligible Employee and (b) before Normal Retirement Age shall be eligible to receive a Disability Retirement Pension subject to the further provisions of this Section 5.4.

Such Disability Retirement Pension shall commence as of the first date of the month following the Committee's determination of such Disability, and shall be in an annual amount equal to the Participant's Accrued Benefit determined as of such date and actuarially reduced to reflect commencement prior to the Participant's Normal Retirement Date.

    5.4.1. <u>Proof of Disability</u>. As a condition of entitlement to a Disability Retirement Pension, the Committee may require such proof of the Participant's continued Disability as it deems necessary at the time, and from time to time prior to the Participant's attainment of Normal Retirement Age, including having the Participant examined, but only once during any calendar year, by a duly licensed physician selected by the Committee at the Committee's expense.

    5.4.2. <u>Termination of Disability</u>. If a Participant recovers from his Disability before Normal Retirement Age, he shall cease to be eligible for a Disability Retirement Pension, and any Disability Retirement Pension in the course of payment at the time of such recovery shall cease immediately. Any payments of a Disability Retirement Pension to such person made after such recovery shall, to the extent they exceed the Retirement Pension to which the Participant was otherwise entitled under the other provisions of this Article V, be recoverable by the Plan or, in the discretion of the Committee, be offset on an

actuarially equivalent basis against future benefits otherwise payable, in addition to any offset authorized under Section 7.5 hereof. If such Participant returns to the employ of an Employer within thirty (30) days subsequent to the cessation of his Disability, the eligibility requirements of the Plan shall be waived and such person shall immediately resume participation in the Plan.

### ARTICLE VI.

### BENEFITS UPON DEATH
### BEFORE PENSION COMMENCEMENT

**6.1. Automatic Spouse's Death Benefit.**

    6.1.1. <u>Availability of Benefit</u>. If a Participant who was married prior to the date of his death has completed at least five (5) Years of Service (ten (10) Years of Service for Participant's who do not have an Hour of Service after 1988), or has become Disabled or attained his Normal Retirement Age while employed by an Employer or Affiliate, shall die before his Pension Commencement Date, a benefit will be paid to his Surviving Spouse (if any) (the "Spouse's Benefit"). Subject to Section 7.4, the Spouse's Benefit shall be 50% of the amount which the Participant would have received had he terminated employment on the day before his death (if he had not previously terminated employment), survived until the day on which the Spouse's Benefit begins, and retired and begun to receive a Retirement Pension under the applicable provision of Article V, payable in the joint and 50% surviving spouse annuity form described in Section 7.2.1; provided, however, that if the Participant dies after he elects the optional form of benefit described in Section 7.4 prior to his Pension Commencement Date, his Surviving Spouse will receive a monthly benefit beginning on the Participant's Pension Commencement Date, in the amount the Participant would have received as a Retirement Pension had he survived until his Pension Commencement Date.

    6.1.2. <u>Payment of Benefit</u>. The Spouse's Benefit shall be payable monthly for the lifetime of the Participant's Surviving Spouse, shall begin as of the Participant's Normal Retirement Date, or if the Surviving Spouse so elects, after he would have attained age fifty-five (55) and shall end with the payment for the month in which such Spouse dies.

The foregoing Spouse's Benefit shall be determined after giving effect to any actuarial reductions applicable under Sections 7.2.1, 7.4.1, or 5.3.2.

**6.2. Plan Death Benefits.** No benefits shall be payable under this Plan upon the death of a Participant except as specifically provided in the foregoing provisions of this Article VI or Article VII.

## ARTICLE VII.

## METHOD OF PAYMENT

    **7.1.**   **Normal Form of Benefit.** Subject to the further provisions of this Article VII, a Participant's Retirement Pension shall be payable in monthly installments for the lifetime of the Participant, starting on his Pension Commencement Date and ending with the payment for the month in which the Participant dies.

    **7.2.**   **Automatic Post-Retirement Joint and Surviving Spouse Annuity.** Subject to the conditions set forth in this Section 7.2, if a Participant is married on his Pension Commencement Date, the Retirement Pension otherwise payable to him in the normal form described in Section 7.1 shall be automatically converted into a joint and surviving spouse annuity.

        7.2.1.   Form and Amount of Benefit. Subject to Section 7.2.2, the joint and surviving spouse annuity shall provide a reduced monthly pension payable to the Participant beginning on his Pension Commencement Date and ending with the payment for the month of his death; and, if the Participant shall die survived by the individual who was his Spouse at his Pension Commencement Date, a monthly benefit shall be payable to such Spouse, for the lifetime of the Spouse, equal to 50% of the monthly pension which had been payable to the Participant. The monthly amount of pension payable under the joint and 50% surviving spouse annuity to the Participant shall be an amount which, together with the monthly amount of benefit payable to the Spouse, is actuarially equivalent to the Retirement Pension otherwise payable to the Participant in the normal form described in Section 7.1.

        7.2.2.   Death of Spouse. If a Participant's Spouse shall die after the Participant's Retirement Pension has become payable in the form of a joint and surviving spouse annuity, the Participant shall continue to receive the reduced amount of Retirement Pension payable under such form of annuity for the remainder of his lifetime, ending with the month in which his death occurs. Thereafter, no further benefits will be payable under this Plan in respect of such Participant, whether or not the Participant has subsequently remarried.

        7.2.3.   Divorce. The individual who is a Participant's Spouse on the Participant's Pension Commencement Date shall continue to be treated as his Spouse for purposes of this Section 7.2 so long as such Spouse shall live, whether or not such Spouse is subsequently divorced from the Participant or the marriage is otherwise terminated after such date.

        7.2.4.   Information to Participants. Within no less than thirty (30) days and no more than ninety (90) days before a married Participant's Pension Commencement Date, such Participant shall be given a written explanation by the Administrative Committee of:

(a)   the terms and conditions of the joint and surviving spouse annuity;

(b)   the right of the Participant to make, and the effect of, a Qualified Election;

(c)   the right of the Participant's Spouse to consent or not to consent to such a Qualified Election;

(d)   the right of the Participant to make, and the effect of, a revocation of a Qualified Election; and

(e)   the material features and the relative values of the various optional forms of benefit under the Plan.

7.2.5.   <u>Waiver of the Joint and Surviving Spouse Annuity</u>.   During the period commencing ninety (90) days before a Participant's Pension Commencement Date, a Participant may waive his right to receive his Retirement Pension in the form of a joint and surviving spouse annuity, and elect instead to receive such Retirement Pension in the normal form described in Section 7.1 or in an optional form described in Section 7.3 or 7.4.  Such waiver shall be made only by filing a Qualified Election with the Committee, except that a Qualified Election shall not be required to elect any form of benefit described in Section 7.4.  Any such waiver may be revoked by the Participant and a new Qualified Election made at any time before the Participant's Pension Commencement Date.

Notwithstanding the foregoing, effective January 1, 1997, a Participant may, after having received the written explanation described in Section 7.2.4, affirmatively elect to have his benefit commence sooner than thirty (30) days following receipt of the explanation, provided all of the following requirements are met: (i) the Participant has been provided with information that clearly indicates that the Participant has at least thirty (30) after receiving the written explanation to consider whether to waive the joint and surviving spouse annuity and elect (with spousal consent if applicable) a form of distribution other than the joint and surviving spouse annuity, (ii) the Participant is permitted to revoke any affirmative distribution election at least until the later of the "annuity starting date" (as defined in Section 417(f)(2) of the Code) or the expiration of the seven (7) day period following the day the written explanation was provided to the Participant, and (iii) the annuity starting date is a date after the date that the written explanation was provided to the Participant.

7.3.   **Annuity with Period Certain**

7.3.1.   <u>Form</u>.  A Participant may elect to receive, in lieu of a Retirement Pension in the form described in Section 7.1 or 7.2, an annuity with a ten (10) year period certain option.  Such option shall provide an adjusted monthly amount of Retirement Pension payable for the lifetime of the Participant, and, if the Participant shall die after his Pension Commencement Date and before the

expiration of the period certain payments have been made to the Participant, such adjusted pension payments shall be continued to the Participant's beneficiary until the period certain pension payments, as applicable, in the aggregate have been made to the Participant and his beneficiary. The pension payable to a Participant and his beneficiary under this optional form shall be a benefit actuarially equivalent to the Retirement Pension otherwise payable in the normal form described in Section 7.1 of this Plan.

7.3.2. <u>Election and Revocation</u>. Any election of an annuity with a period certain option shall be made in such manner and at such time as the Committee shall determine; provided, that a married Participant may elect an annuity with a period certain option only if he has on file with the Committee an unrevoked Qualified Election made during the election period described in Section 7.2.5. Any such election may be revoked by written notice to the Committee at any time before the Participant's Pension Commencement Date.

7.3.3. <u>Beneficiary</u>. Each Participant shall designate one or more beneficiaries (who may be any one or more members of his family or other persons, executors, administrators, any trust, foundation, or other entity) to receive such amounts as may be payable to such beneficiary upon and after the death of the Participant in accordance with this Section 7.3. Such designation shall be made by executing and filing with the Committee a written designation of beneficiary, in such form and at such time as may be prescribed by the Committee. Each Participant may also, in the same manner, and at any time and from time to time, change any beneficiary previously designated by him, without notice to, or consent of, any previously designated beneficiary; provided, that a Participant whose current Spouse was his Spouse at his Pension Commencement Date may change his beneficiary designation so as to name a beneficiary other than such Spouse only if he files a Qualified Election with respect to such change of beneficiary.

If any such Participant shall fail to designate a beneficiary or if any individual designated as a beneficiary shall fail to survive the Participant, the beneficiary shall be the Participant's Surviving Spouse, or, if none, the Participant's estate. Any amounts remaining due under this Plan to a beneficiary at the time of the beneficiary's death shall, unless otherwise provided by the Participant in his designation of beneficiary, be paid to the beneficiary's estate. If the designated beneficiary (a) cannot be located for a period of one (1) year following the death of the Participant despite mailing to the last known address of the designated beneficiary, and (b) has not made written claim within such period to the Committee, then such beneficiary shall be treated as having predeceased the Participant. Any payments owing to a Participant's or beneficiary's estate under this Plan may, in the discretion of the Committee, be commuted and paid in a single lump sum actuarially equivalent to the value of such payments.

**7.4.   100% Joint and Surviving Spouse Annuity Option.**

7.4.1.   Form. A married Participant may elect to receive, in lieu of a Retirement Pension in the form described in Section 7.2, a Retirement Pension payable in the form of a 100% joint and surviving spouse annuity which shall be the actuarial equivalent of the normal form described in Section 7.1. The 100% joint and surviving spouse annuity option will provide a reduced monthly amount of Retirement Pension for the lifetime of the Participant and for the continuance of 100% of such reduced monthly amount to the Participant's Spouse, at the time of the Participant's death, to be paid for the remainder of the Spouse's lifetime, provided that such Spouse was married to the Participant on his Pension Commencement Date (or the Participant had died between the time he elected benefits under this Section 7.4.1 and his Pension Commencement Date).

7.4.2.   Death Before Pension Commencement Date. If the Participant's Spouse dies before his Pension Commencement Date, the Participant's election of this option will be null and void. If the Spouse dies before the Participant but after the Participant's Pension Commencement Date, no benefits will be payable under this option upon the death of the Participant, but the Participant's Retirement Pension will continue to be payable to him during his life in the reduced amount provided under the option. If the Participant dies prior to his Pension Commencement Date but after electing benefits under this Section 7.4, the Spouse's Benefit shall be determined as though the Participant had survived until his Pension Commencement Date.

**7.5.   Suspension, Redetermination and Form of Payments upon Reemployment**. If a Participant returns to employment with an Employer or Affiliate after payment of a Retirement Pension to him has commenced, such Retirement Pension shall cease. Upon the subsequent Termination of Employment of a Participant who was eligible for a Retirement Pension upon his prior Termination of Employment (whether or not payment of such Retirement Pension had commenced), the Participant's Retirement Pension shall be redetermined in accordance with the provisions of this Plan applicable to him as of his subsequent Termination of Employment, as if no prior benefit payments had been made, and his Retirement Pension as so redetermined shall then be reduced by the actuarial equivalent of the benefit payments, if any, previously made to such Participant prior to his Normal Retirement Date. The form of payment of any Retirement Pension to which he may thereafter become entitled shall be determined in accordance with the provisions of this Article VII without regard to the form in which his Retirement Pension had previously been paid. If a Participant continues in employment after his Normal Retirement Date or is rehired after such date, the Retirement Pension otherwise determinable in respect of such Participant shall be actuarially increased to reflect the amount by which (a) the value of all missed payments exceeds (b) the value of additional benefits credited to him after his Normal Retirement Date (including, without limitation, additional benefits attributable to actuarial increases, continued accruals and benefit improvements, retroactive or otherwise). For purposes of the preceding sentence, a "missed payment" shall mean any monthly pension payment which (x) was not paid on account of the Participant's employment after his Normal Retirement Date and (y) is attributable to a calendar month in which the Participant had less than forty (40) hours of paid working or non-working time. The suspension of benefit

**BYK 00117**

provisions of this Section shall be applied by the Committee in accordance with the notice procedures and other requirements of 29CFR §2530.203-3 or other applicable government regulations.

        7.6. **Small Benefits.** Notwithstanding any provision to the contrary contained in this Plan, the Committee shall direct that the Actuarial Value of a Participant's Retirement Pension or any other benefit under the Plan be paid in a single sum distribution in final satisfaction of any rights to benefits payable to or in respect of a Participant under this Plan if the single sum Actuarial Value of the nonforfeitable portion of such benefit (I) is, for Plan Years ending prior to January 1, 2001, no more than $3,500 and was no more then $3,500 as of the date of any prior distribution, and (ii) is, for Plan Years beginning on or after January 1, 2001, no more than $5,000. For purposes of this Section 7.6, the determination of whether the Actuarial Value of benefit exceeds $5,000 shall be determined using the Applicable Interest Rate and the Applicable Mortality Table, as more fully provided in Exhibit A (and the determination of whether the Actuarial Value of benefit exceeds $3,500 shall be determined in accordance with the provisions of the Plan in effect prior to January 1, 2001). For purposes of this Section 7.6, if the Actuarial Value of the nonforfeitable portion of a Participant's Retirement Pension is zero, the Participant will be deemed to have received a single sum distribution of zero dollars equal to the nonforfeitable portion of his Retirement Pension upon his Termination of Employment.

        7.7. **Time of Commencement of Benefits.** Notwithstanding any provision to the contrary contained in this Plan, the following provisions of this Section 7.7. shall be applicable to all Retirement Pensions:

        7.7.1. <u>In General</u>. Except as provided in Section 7.7.3, payment of a Retirement Pension shall be made or commence not later than the sixtieth (60th) day after the close of the Plan Year in which occurs the later of the Participant's most recent Termination of Employment or his Normal Retirement Date.

        7.7.2. <u>Distribution at Age 70½</u>. Payment of a Retirement Pension of a Participant who was a five (5) percent owner (as described in Section 18.2.3) for any part of any Plan Year during or after which such Participant attained age sixty six and one-half (66½) shall be made or commence no later than the first day of April following the later of the calendar year in which such Participant attained age seventy and one-half (70½) or became a five (5) percent owner, even if he is still employed. Effective beginning with the 1994 calendar year (distributions with respect to which shall be made no later than April 1, 1990), this provision shall apply to all Participants who attain age seventy and one-half (70½) on or after January 1, 1988, regardless of their ownership interest. If a Participant is still employed by an Employer or Affiliate when distribution commences under this Section 7.7.2, the form and initial amount of such distribution shall be determined as though the Participant had retired at the end of the previous calendar year. The amount distributable shall be adjusted annually to reflect any change in the amount of the Participant's Postponed Retirement Pension pursuant to Section 5.2.

BYK 00118

7.7.3. <u>Retroactive Payments</u>. If the amount of payment required to commence on the date otherwise determined under this Plan cannot be ascertained by such date, or if it is not possible to make such payment on such date because the Committee has been unable to locate the payee after making reasonable efforts to do so, a payment retroactive to such date (without interest) may be made no later than sixty (60) days after the earliest date on which the amount of such payment can be ascertained under this Plan or the date on which the payee is located, whichever is applicable.

7.7.4. <u>Claim for Benefits</u>. The Committee may require, as a condition for the payment of benefits under the Plan that a Participant (or his Spouse or other beneficiary) shall file a written claim for benefits with the Committee which provides all the information reasonably necessary for the payment of such benefits, including, without limitation, satisfactory proof of date of birth and marital status.

**7.8.    Qualified Domestic Relations Orders**.

7.8.1. <u>Definition</u>. For purposes of this Section 7.8, "Qualified Domestic Relations Order" means any judgment, decree or order (including approval of a property settlement) made pursuant to a state domestic relations law (including a community property law) which relates to the provision of child support, alimony payments or marital property to a Spouse, former Spouse, child or other dependent of a Participant and which creates or recognizes the existence of a right of such Spouse, former Spouse, child or other dependent to receive all or a portion of the benefits payable with respect to a Participant under the Plan. A Qualified Domestic Relations Order must clearly specify the amount or percentage of the Participant's benefits to be paid to such recipient by the Plan (or the manner in which such amount or percentage is to be determined). A Qualified Domestic Relations Order (a) may not require the Plan (i) to provide any form or type of benefits or any option not otherwise provided under the Plan; (ii) to pay benefits to an alternate payee under such order which are required to be paid to another alternate payee under another such order previously filed with the Plan, or (iii) to provide increased benefits (determined on the basis of actuarial equivalents), but (b) may require payment of benefits to an alternate payee under the order (i) in the case of any payment before a Participant has separated from service on or after the date on which the Participant attains (or would have attained) the earliest retirement age (ii) as if the Participant had retired on the date on which such payment is to begin under such order (taking into account only the present value of benefits actually accrued and not taking into account the present value of any subsidy for early retirement) and (iii) in any form in which such benefits may be paid to the Participant.

7.8.2. <u>Distributions</u>. The Committee shall recognize and honor any judgment, decree or order entered on or after January 1, 1985 under a state domestic relations law which the Committee determines to be a Qualified Domestic Relations Order in accordance with such reasonable procedures to

determine such status as the Committee shall establish. Without limitation of the foregoing, the Committee shall notify a Participant and the person entitled to benefits under a judgment, decree or order which purports to be a Qualified Domestic Relations Order of (a) the receipt thereof, (b) the Plan's procedures for determining whether such judgment, decree or order is a Qualified Domestic Relations Order and (c) any determination made with respect to such status. During any period during which the Committee is determining whether any judgment, decree or order is a Qualified Domestic Relations Order, any amount which would have been payable to any person pursuant to such order shall be separately accounted for (and adjusted to reflect its appropriate share of the investment adjustment as of each valuation date) pending payment to the proper recipient thereof. Any such amount, as so adjusted, shall be paid to the person entitled to such payment under any such judgment, decree or order if the Committee determines such judgment, decree or order to be a Qualified Domestic Relations Order within eighteen (18) full calendar months commencing with the date on which the first payment would be required to be made under such judgment, decree or order. If the Committee is unable to make such a determination within such time period, payment under the Plan shall be as if such judgment, decree or order did not exist and any such determination made after such time period shall be applied prospectively only. Distribution to a person entitled to payment under a Qualified Domestic Relations Order shall be made from the Participant's Retirement Pension in such manner as the Committee shall direct.

## ARTICLE VIII.

## FORFEITURES; NONDUPLICATION OF BENEFITS

    **8.1.** **Forfeitures to Reduce Plan Costs.** Any forfeiture arising from Termination of Employment, death, or for any other reason shall not be applied to increase the benefits any Participant, Spouse or beneficiary would otherwise receive under the Plan, but shall be used to reduce the costs of the Plan.

    **8.2.** **Nonduplication of Benefits.** If an Employer or Affiliate shall contribute to any defined benefit plan which is qualified or intended to qualify under sections 401(a) or 403(a) of the Code, any Participant who becomes entitled to benefits under such other plan with respect to any period of service for which he is entitled to benefits under this Plan, shall be deemed to have accepted the benefits provided under such other plan with respect to such period of service in discharge of an actuarially equivalent amount of the benefits, if any, provided by this Plan for the same period of service.

## ARTICLE IX.

## ADMINISTRATION

9.1. **Appointment of Committees**.

9.1.1. An Administrative Committee is hereby created which shall consist of not less than three members to be appointed by the Company. Each member of the Committee may resign, or may be removed at any time by the Company (with or without cause), and, in the event of the removal, death or resignation of any member, his successor shall be appointed by the Company. If a vacancy or vacancies shall occur on the Committee, the remaining member or members shall act as the Committee until the Company fills such vacancy or vacancies.

9.1.2. No person shall be ineligible to be a member of the Committee because he is, was or may become entitled to benefits under the Plan or because he is a partner, director and/or officer of an Employer or an Affiliate; provided, that no member of the Committee shall participate in any determination by the Committee relating specifically to his own benefits under the Plan.

9.1.3. The members of the Committee shall serve without bond except to the extent required by applicable law.

9.2. **Powers and Authority; Action Conclusive**. Except as otherwise expressly provided in the Plan or in the Trust Agreement, or by the Company:

9.2.1. The Committee shall be responsible for the administration of the Plan.

9.2.2. The Committee shall be responsible for making appropriate provision for the investment and reinvestment of the Trust Fund.

9.2.3. The Committee shall appoint a Trustee and may appoint an Investment Manager for all or a portion of the Trust Fund.

9.2.4. The Committee shall have all powers necessary or helpful for the carrying out of its responsibilities, and the decisions or actions of such Committee in good faith in respect of any matter hereunder shall be conclusive and binding upon all parties concerned.

9.2.5. The Committee may delegate to one or more of its members the right to act on its behalf in any one or more matters connected with the administration of the Plan.

9.2.6. Except where otherwise provided, the Committee shall have the exclusive power and authority within its sole and absolute discretion to control and manage the operation and administration of the Plan and to interpret the Plan

BYK 00121

and is hereby designated the "administrator" of the Plan within the meaning of section 3(16) of ERISA and section 414(g) of the Code. The Committee shall administer the Plan pursuant to the terms of the Plan with all of the necessary powers to carry out the provisions of the Plan and shall be deemed to have properly exercised such authority unless it has abused its discretion by acting arbitrarily or capriciously.

Without limiting the generality of the foregoing, the Committee shall have the following powers and duties the exercise of which shall be governed by its general discretionary authority described below.

(a) To require any person to furnish such information as it may request, for the purpose of the proper administration of the Plan, as a condition to receiving any benefits under the Plan;

(b) To adopt and enforce such rules and regulations and to prescribe the use of such forms as it shall in its sole discretion deem necessary for the efficient administration of the Plan;

(c) To interpret the provisions of the Plan, and to resolve ambiguities, inconsistencies and omissions, such interpretation and resolution to be conclusive and binding on all parties affected thereby, except as otherwise expressly provided herein;

(d) To determine the eligibility of any employee to participate in the Plan;

(e) To determine all questions relating to the status and rights of Participants under the Plan;

(f) To furnish the Trustees with such information as they may reasonably require to perform their duties hereunder; and

(g) To make administrative or technical amendments to the Plan by written resolution as shall be determined, with the advise of counsel, to be necessary or desirable; provided, however, that no such amendment shall materially increase the cost of funding or administering the Plan;

(h) To employ such clerical staff and to hire counsel and such other consultants as it shall deem necessary for the proper administration and operation of the Plan.

The foregoing list of powers is not intended to be either complete or exclusive, and the Committee shall, in addition, have such powers as it may determine to be necessary for the performance of its duties under the Plan and the Trust Agreement.

BYK 00122

9.3. **Liability Limited and Indemnification**. Except as otherwise provided by law, no person who is a member of the Committee or who is an employee, partner, officer and/or director of an Employer or of any Affiliate, shall incur any liability whatsoever on account of any matter connected with or related to the Plan or the administration of the Plan, unless such person shall have acted in bad faith, or have willfully neglected his duties, in respect of the Plan.

The members of the Committee shall serve without compensation for their services as such members. The Employer shall pay or reimburse the Committee for all expenses reasonably incurred by it and shall indemnify each member thereof against all loss, liability and expense (including, without limitation, reasonable attorneys' fees) occasioned or incurred by reason of or as a result of any act or omission to act taken by him or his duly constituted agents in the administration of the Plan, except any such act or omission which is judicially determined to constitute willful misconduct of such member. The members of the Committee shall serve without bond except as otherwise required by law.

9.4. **Quorum and Voting; Procedures**. A majority of the members of the Committee at the time in office shall constitute a quorum for the transaction of business. The Committee shall select from among its members a Chairman, and shall appoint (from its members or otherwise) a Secretary. The Committee may act by vote or consent of the majority of its members then in office and may establish its own procedures. The Committee may authorize any one or more of its members or the Secretary of the Committee to sign and deliver any instrument, certificate or other paper or document on its behalf.

9.5. **Subcommittees, Counsel and Agents**. The Committee may appoint from its members such subcommittees (of one or more such members), with such powers, as the Committee shall determine. The Committee shall employ an Actuary whose duties shall include making annual actuarial valuations, and may employ such counsel (including legal counsel, who may be counsel for an Employer or any Affiliate) and agents and such clerical and other services as it may require in carrying out the provisions of the Plan, and may charge the fees, charges and costs resulting from such employment as an expense to the Company. Unless otherwise required by law, persons employed by the Committee as counsel, or as its agents or otherwise, may include members of the Committee, or the Company, or firms with which members of the Committee or the Company are associated as partners, employees or otherwise. Persons serving on the Committee or on any such subcommittee shall be fully protected in acting or refraining to act in accordance with the advice of legal or other counsel.

9.6. **Reliance on Information**. The members of the Committee and any Employer and Affiliate and their respective partners, officers, directors and employees, shall be entitled to rely upon all tables, valuations, certificates, opinions and reports furnished by any Actuary, accountant, Trustee, insurance company, counsel, physician or other expert who shall be engaged by the Committee, an Employer or any Affiliate, and the members of the Committee and any Employer and Affiliate and their respective partners, officers, directors and employees, shall be fully protected in respect of any action taken or suffered by them in good faith in reliance thereon, and all action so taken or suffered shall be conclusive upon all persons affected thereby.

BYK 00123

**9.7. Instructions to Trustee.** The Committee shall provide appropriate written instructions in accordance with the Trust Agreement to enable the Trustee to make the distributions provided for in the Plan.

**9.8. Genuineness of Documents.** The Committee, and any Employer and Affiliate and their respective officers, directors and employees, shall be entitled to rely upon any notice, request, consent, letter, telegram or other paper or document believed by them or any of them to be genuine, and to have been signed or sent by the proper person, and shall be fully protected in respect of any action taken or suffered by them in good faith in reliance thereon.

**9.9. Proper Proof.** In any case in which an Employer or the Committee shall be required under the Plan to take action upon the occurrence of any event, they shall be under no obligation to take such action unless and until proper and satisfactory evidence of such occurrence shall have been received by them.

**9.10.** Claims Procedure.

**9.10.1.** <u>Claims</u>. If a Participant has any grievance, complaint, or claim concerning any aspect of the operation or administration of the Plan or Trust, including but not limited to claims for benefits and complaints concerning the performance or administration of the investment of Plan assets (collectively referred to herein as "claim" or "claims"), the Participant shall submit the claim to the Committee, which shall have the initial responsibility for deciding the claim. All such claims shall be submitted in writing and shall set forth the relief requested and the reasons the relief should be granted. All such claims must be submitted within the "applicable limitations period." The "applicable limitations period" shall be two years, beginning on (i) in the case of any lump-sum payment, the date on which the payment was made, (ii) in the case of an installment payment, the date of the first in the series of payments, or (iii) for all other claims, the date on which the action complained or grieved of occurred. To the extent that documentary or other evidence is relevant to the relief sought, the Participant shall submit such evidence or, if the evidence is in the possession of the Committee, the Participant shall refer to such evidence in a manner sufficient to allow the Committee to identify and locate such evidence.

9.10.2. <u>Denial of Claims</u>. If a claim is denied in whole or in part, the Committee shall give the claimant written notice of the decision within ninety (90) days of the date the claim was submitted. Such written notice shall set forth in a manner calculated to be understood by the claimant:

(1) the specific reason or reasons for the denial;

(2) specific references to pertinent Plan provisions on which the denial is based;

(3) a description of any additional material or information necessary for the claimant to perfect the claim, along with an explanation of why such material or information is necessary; and

(4)  appropriate information about the steps to be taken if the claimant wishes to submit the claim for review of the denial.

The ninety-day period for review of a claim for benefits may be extended for an additional ninety (90) days by a written notice to the claimant setting forth the reason for the extension. If the Committee fails to respond to a claim within the time limits set forth above, the claim shall be deemed denied and the Participant may request review by the Committee as set forth in Section 9.10.3.

9.10.3. <u>Appeals Procedure</u>. If a claim is denied in whole or in part or if the claimant has no response to such claim within ninety (90) days of its submission (in which case the claim for benefits shall be deemed to be denied), the claimant or his duly authorized representative may appeal the denial to the Committee within sixty (60) days of receipt of written notice of denial or within sixty (60) days of the expiration of the ninety-day period. In pursuing his appeal, the claimant or his duly authorized representative:

(i)  shall request in writing that the Committee review the denial;

(ii) shall review pertinent documents; and

(iii) shall submit evidence as well as written issues, comments or arguments.

The decision on review shall be made within sixty (60) days of receipt of the request for review, unless special circumstances require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of the request for review. If such an extension of time is required, written notice of the extension shall be furnished to the claimant before the end of the original sixty-day period. The decision on review shall be made in writing, shall be written in a manner calculated to be understood by the claimant, and shall include specific references to the provision of the plan on which the denial is based. If the decision on review is not furnished within the time specified above, the claim shall be deemed denied on review. The decision shall be final and conclusive and a Participant shall not be permitted to bring suit at law or in equity on a claim without first exhausting the remedies available hereunder. No action at law or in equity to recover under this Plan shall be commenced later than one year from the date of the decision on review (or if no decision is furnished within 120 days of receipt of the request for review, the 120th day after receipt of the request for review).

9.10.4. <u>Disability Retirement Pension</u>. Notwithstanding the foregoing, the determination of any claim made for a Disability Retirement Pension under the Plan shall be made in accordance with the claims procedures applicable to disability claims as set forth in the Department of Labor regulations section 2560.503-1, as now in effect as hereafter amended.

**BYK 00125**

## ARTICLE X.

## TRUST FUND

**10.1. Trust Agreement.** By adopting the Plan, each Employer shall automatically become party to the Trust Agreement between the Trustee and the Company under which the Trustee shall receive the contributions of the Employers to the Trust Fund, and shall hold, invest and distribute the Trust Fund in accordance with the terms and provisions of the Trust Agreement. Any and all rights or benefits which may accrue to any person under the Plan shall be subject to all the terms and provisions of the Trust Agreement.

**10.2. Investment in Interest Bearing Deposits.** If the Trustee shall be a bank or similar financial institution supervised by the United States or a State, the Committee, in its discretion, may authorize the Trustee to invest all or a part of the Plan's assets in deposits which bear a reasonable interest rate in such bank or financial institution.

**10.3. Investment Manager**. If the Committee appoints an Investment Manager, the Investment Manager will have exclusive responsibility for directing investment and management of the assets of the Trust Fund to which its appointment applies. If more than one Investment Manager is appointed, each Investment Manager will have exclusive responsibility for directing the investment and management of a specified portion of the assets of the Trust Fund as the Committee shall determine. The Committee shall notify the Trustee in writing of its appointment of any Investment Manager.

**10.4. Trustee Obligations**. The Trustee shall have no obligation to question any investment direction by the Investment Manager or the Committee. The Trustee shall comply as promptly as possible with any investment direction from an Investment Manager or the Committee, to the extent such direction is properly provided pursuant to procedures the Trustee establishes.

## ARTICLE XI.

## AMENDMENT OR MERGER

**11.1. Right Reserved.** Notwithstanding any other provision of this Plan, the Company reserves the right to amend the Plan in whole or in part, at any time or from time to time by action of the Board of Directors of the Company through a written resolution. No amendment shall divest any Participant of any Accrued Benefit except as provided in Section 11.2 or otherwise permitted by law. No amendment shall have the effect of eliminating an optional form of distribution with respect to any Participant or beneficiary entitled to such form, except as otherwise permitted by law. No amendment shall vest in the Company or any Employer, directly or indirectly, any interest in, or ownership or control of, any part of the Trust Fund.

**11.2. Amendments Required for Qualification.** All provisions of this Plan, and all benefits and rights granted hereunder, are subject to any amendments, modifications or alterations which are necessary from time to time, to qualify the Plan under section 401(a) of the Code, to continue the Plan as so qualified, or to comply with any other provision of law. Accordingly, notwithstanding any other provision of this Plan, the Company may amend, modify or alter the Plan with retroactive effect in any respect or manner necessary to qualify the Plan under section 401(a) of the Code, or to continue the Plan as so qualified, or to comply with any other provision of applicable law.

**11.3. Merger.** Subject to the provisions of this Section 11.3, this Plan may be amended to provide for the merger of this Plan, in whole or in part, or a transfer of all or a part of its assets, to any other qualified plan within the meaning of section 401(a) of the Code (including such a merger or transfer in lieu of a distribution which might otherwise be required under this Plan). This Plan shall not be merged or consolidated with, nor may its assets or liabilities, in whole or in part, be transferred to, any other plan unless each Participant would be entitled to a benefit immediately after the merger, consolidation or transfer (if this Plan and such other plan then terminated) which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer (if this Plan had then been terminated).

## ARTICLE XII.

## TERMINATION OF THE PLAN

**12.1. Rights Reserved.** The Company reserves the right at any time, to terminate the Plan, in whole or in part. If the Plan is terminated, no Employer shall have any liability or obligation to make any contribution or payment to the Trust Fund after the date of such termination.

**12.2. Vesting Upon Termination.** Upon the termination or partial termination of the Plan (within the meaning of section 411(d)(3) of the Code), the rights of all affected active employees to benefits accrued to the date of such termination or partial termination, to the extent funded as of such date (determined by allocating assets in accordance with Section 12.3, whether the termination is complete or partial, as if the termination were complete), shall, subject to such requirements as the Internal Revenue Service shall impose in order to prevent discrimination (including any applicable provisions of Article XV), be nonforfeitable.

**12.3. Priority of Distribution on Termination.**

12.3.1. In General. Subject to Section 12.3.2., if the Plan terminates, the assets of the Trust Fund shall be used and disposed of for the benefit of such affected employees and their Spouses and beneficiaries in accordance with the provisions of Title IV of ERISA. Without limiting the generality of the foregoing, if the Secretary of the Treasury (or his delegate) determines that any allocation made pursuant to this Section 12.3.1 (without regard to this sentence) results in discrimination prohibited by section 401(a)(4) of the Code, then, if

required to prevent disqualification of the Plan (or any trust under the Plan) under section 401(a) of such Code, the assets allocated under subsections 4044(a)(4)(B), (a)(5) and (a)(6) of ERISA shall be reallocated to the extent necessary to avoid such discrimination.

12.3.2. **Special Treatment of Merged Plans.** If any other plan shall merge or consolidate with this Plan, or transfer its assets or liabilities to this Plan, the priority of distribution upon termination of this Plan otherwise applicable pursuant to Section 12.3.1 shall be subject to such requirements of law as apply in the event of such merger, consolidation, or transfer, by reason of section 208 of ERISA or section 414(1) of the Code.

12.4. **Method of Payment.** Except to the extent otherwise required by applicable law, the Committee may determine in its sole discretion that the benefits payable pursuant to Section 12.3 may be provided:

(a) by continuation of the Trust for such benefits as are acceptable to the Trustee, whether payment is commenced immediately or is deferred to attainment of Normal Retirement Date or termination of employment, as determined by the Committee;

(b) through the purchase of annuities from one or more insurance companies, with the amount of the benefit determined by a premium equal to the value of the assets available for the Participant (or his Spouse or beneficiary);

(c) by a distribution in a single sum of the value of assets available for the Participant (or his Spouse or beneficiary); or

(d) by any combination of the foregoing.

The Trustee shall continue as Trustee of the Trust Fund until the complete distribution has been made.

12.5. **Determination by Committee.** All determinations as to priorities and amounts of benefits payable upon termination of the Plan as provided in Section 12.3, and as to the manner in which such termination benefits shall be provided as set forth in Section 12.4, shall be made by the Committee acting with the advice of the Actuary, and shall be final and binding upon all Participants and their Spouses and beneficiaries.

12.6. **Return of Actuarial Excess.** Notwithstanding any provisions to the contrary contained in the Plan or the Trust Agreement, upon termination of the Plan, the Employers or their successors or assigns shall be entitled to any balance of the net assets of the Trust Fund remaining after all liabilities under the Plan to Participants and their Spouses and beneficiaries have been satisfied.

BYK 00128

**12.7. Expenses of Termination.** If the Plan terminates, the expenses incident thereto shall be a prior claim and lien upon the assets of the Trust Fund, and shall be paid or provided for prior to the distribution of any benefits pursuant to Sections 12.3 and 12.4.

**12.8. Discontinuance of Participation.** An Employer's discontinuance of its participation under the Plan may be voluntary or involuntary, partial or complete, as follows:

12.8.1. Any Employer may elect at any time to discontinue its participation hereunder in whole, or in part with respect to any of its divisions, locations or other employee groups, by filing written notice thereof with the Committee and specifying the divisions, locations or employee groups affected by such election.

12.8.2. The Plan shall discontinue as to all Participants of any Employer which shall be declared bankrupt or which makes any general assignment for the benefit of creditors.

12.8.3. The Plan shall discontinue as to Participants of any Employer in the event of the dissolution, merger, consolidation, or sale or other disposition of the business and assets or stock of such Employer, unless provision is made for the continuance of the Plan by a successor.

In any such event the Committee shall either make such current or deferred distribution to the Participants, Spouses, beneficiaries and contingent annuitants affected by such discontinuance as it shall deem appropriate and in accordance with the Plan, or, in lieu thereof, direct that the portion of the Trust Fund allocable to such Participants, Spouses, beneficiaries and contingent annuitants be transferred to a successor qualified plan or funding medium, if provision is made for coverage for such Participants under such plan or funding medium. No benefit shall accrue in respect of service with or compensation from any Employer following the discontinuance of its participation in the Plan, and service following such discontinuance shall be disregarded for all other purposes unless the former Employer continues as an Affiliate and the Plan is not terminated.

## ARTICLE XIII.

## MISCELLANEOUS

**13.1. Payment to a Minor or Incompetent.** If any amount is payable hereunder to a minor or other legally incompetent person, such amount may be paid in any one or more of the following ways, as the Committee in its sole discretion shall determine:

(a) to the legal representatives of such minor or other incompetent person;

(b) directly to such minor or other incompetent person; and/or