# TAB 3

(c)     to a parent or guardian of such minor or other incompetent person, to the person with whom such minor or other incompetent person shall reside, or to a custodian for such minor under the Uniform Gifts to Minors Act (or similar statute) of any jurisdiction.

Payment to any person in accordance with the foregoing provisions of this Section 13.1 shall to that extent discharge all Employers, the members of the Committee, the Trustee and any person or corporation making such payment pursuant to the direction of the Committee, and none of the foregoing shall be required to see to the proper application of any such payment to such person pursuant to the provisions of this Section 13.1. Without in any manner limiting or qualifying the provisions of this Section 13.1, if any amount is payable hereunder to a minor or any other legally incompetent person, the Committee may in its discretion institute the procedures which are available to it under Section 13.2 in the event of doubt as to the right of any person to any payment under the Plan.

**13.2.** **Doubt as to Right to Payment.** If at any time any doubt exists as to the right of any person to any payment hereunder or the amount or time of such payment (including, without limitation, any case of doubt as to identity, or any case in which any notice has been received from any other person claiming any interest in amounts payable hereunder, or any case in which a claim from other persons may exist by reason of community property or similar laws), the Committee shall be entitled, in its discretion, to direct the Trustee (or any insurance company) to hold such sum as a segregated amount in trust until such right or amount or time is determined or until order of a court of competent jurisdiction, or to pay such sum into court in accordance with appropriate rules of law in such case then provided, or to make payment only upon receipt of a bond or similar indemnification (in such amount and in such form as is satisfactory to the Committee).

**13.3.** **Spendthrift Clause**.

13.3.1. Except as otherwise provided by law and the provisions of Section 13.3, no benefit or payment under this Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, whether voluntary or involuntary, and no attempt so to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be valid, nor shall any such benefit, interest or payment be in any way liable for or subject to the debts, contracts, liabilities, engagements or torts of any person entitled to such benefit, interest or payment, or subject to attachment, garnishment, levy, execution, or other legal or equitable process. The preceding sentence shall also apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order, unless such order is determined to be a Qualified Domestic Relations Order, as defined in section 414(p) of the Code.

13.3.2. Notwithstanding Section 13.3.1 or any other provision of the Plan to the contrary, an offset to a Participant's Accrued Benefit and any other benefit with respect to a Participant hereunder against an amount the Participant is ordered or required to pay the Plan with respect to a judgment, order or decree, or

**BYK 00130**

settlement entered into on or after August 5, 1997, shall be permitted in accordance with Section 401(a)(13)(C) and (D) of the Code.

13.3.3. Section 13.3.1 shall not apply to any Qualified Domestic Relations Order within the meaning of section 414(p) of the Code.

**13.4.** **Benefits Payable Only from Trust Fund.** All benefits payable under the Plan shall be paid or provided for solely from the Trust Fund, or from the policies or contracts issued by Insurers (if any) in accordance with the Plan, and neither the officers or employees of any Employer or any member of the Committee shall have any liability or responsibility therefor. Except as otherwise provided by law, no Employer assumes any obligations under the Plan except those specifically stated in the Plan.

**13.5.** **Estoppel of Participants and their Beneficiaries.** The Employers, Committee and Trustee may rely upon any certificate, statement or other representation made to them by any employee, Participant, beneficiary, or Spouse, with respect to age, length of service, leave of absence, date of cessation of employment, or other fact required to be determined under any of the provisions of the Plan, and shall not be liable on account of the payment of any moneys or the doing of any act in reliance upon any such certificate, statement or other representation. Any such certificate, statement or other representation made by an employee or Participant shall be conclusively binding upon such employee or Participant and his Spouse or beneficiary, and such employee, Participant, Spouse or beneficiary shall thereafter and forever be estopped from disputing the truth and correctness of such certificate, statement or other representation. Any such certificate, statement or other representation made by a Participant's Spouse or beneficiary shall be conclusively binding upon such Spouse or beneficiary, and such Spouse or beneficiary shall thereafter and forever be estopped from disputing the truth and correctness of such certificate, statement or other representation.

**13.6.** **Plan to be Available for Inspection.** A copy of the Plan and of all amendments thereto, if any, shall be available for inspection at all reasonable times by Participants at the office of the Company and at such other locations (if any) as may be required by law.

**13.7.** **No Diversion of Trust Fund.** It shall be impossible at any time prior to the satisfaction of all liabilities with respect to Participants and their Spouses and beneficiaries under the Plan, for any part of the Trust Fund to be (within the taxable year or thereafter) used for or diverted to purposes other than for the exclusive benefit of the Participants and their Spouses and beneficiaries (including the payment of the expenses of the administration of the Plan and of the Trust); provided, that:

13.7.1. A contribution that is made by an Employer by a mistake of fact may be returned to such Employer (or its successor) upon its request within one year after the payment of the contribution;

13.7.2. A contribution that is conditioned upon its deductibility under section 404 of the Code may be returned to the contributing Employer (or its

successor) upon its request, to the extent that the contribution is disallowed as a deduction, within one year after such disallowance; or

13.7.3. A contribution that is conditioned on initial qualification of the Plan under section 401 of the Code may, if the Plan does not qualify, be returned to the contributing Employer (or its successor), together with earnings attributable thereto, within one year after the date of denial of initial qualification of the Plan.

Subject to Article XII, the Trust shall continue for such time as may be necessary to accomplish the purpose for which it is created.

**13.8.    Limitation of Liability.**  Except as provided in Section 9.3 and except to the extent otherwise provided by law, no liability shall attach to or be incurred by any partner, officer or director of an Employer or any Affiliate, under or by reason of the terms, conditions and provisions contained in the Plan or in the Trust Agreement, or for the acts or decisions taken or made thereunder or in connection therewith; and as a condition precedent to his participation in the Plan or the receipt of benefits thereunder, or both, such liability, if any, is expressly waived and released by each Participant, Spouse or beneficiary, and by any and all persons claiming under or through such persons, such waiver and release to be conclusively evidenced by any act or participation in or the acceptance of benefits or the making of elections under the Plan.

**13.9.    Simultaneous Death.**  If a Participant and any of his Spouse, beneficiary or contingent annuitant shall die in a manner such that there is no sufficient evidence (as determined by the Committee, without regard to any presumption of law otherwise applicable) that the persons have died otherwise than simultaneously, it shall be presumed for all purposes of the Plan that the Participant died last.

**13.10.  Inability to Locate Distributee.**  Notwithstanding any other provision of the Plan, if the Committee cannot locate any person to whom a payment is due under the Plan, and no other payee has become entitled thereto pursuant to any provision of the Plan, the benefit in respect of which such payment is to be made shall be forfeited at such time as the Committee shall determine in its sole discretion (but in all events prior to the time such benefit would otherwise escheat under any applicable state law); provided, that any benefit so forfeited shall be reinstated if such person subsequently makes a valid claim for such benefit.

**13.11.  Construction.**  The Plan is intended to constitute a qualified plan under section 401(a) of the Code, and to comply with applicable provisions of ERISA.  Accordingly, the Plan shall, at all times, be construed and administered in a manner consistent with the requirements of said section 401(a) and ERISA.

**13.12.  Usage.**  Whenever applicable the masculine gender, when used in the Plan, shall include the feminine or neuter gender, and the singular shall include the plural.

**13.13.  Governing Law.**  To the extent not preempted by federal law, the Plan shall be governed by and construed and administered under the internal laws of the State of New York (without regard to principles of conflict of laws).

**BYK 00132**

**13.14.  Separability.** If any provision of the Plan or the Trust Agreement is held invalid or unenforceable, its invalidity or unenforceability shall not affect any other provisions of the Plan or Trust Agreement, and the Plan and Trust Agreement shall be construed and enforced as if such provision had not been included therein.

**13.15.  Captions.** The captions contained herein and the table of contents, if any, prefixed hereto are inserted only as a matter of convenience and for reference and in no way define, limit, enlarge or describe the scope or intent of the Plan nor in any way shall affect the Plan or the construction of any provision thereof.

**13.16.  Name.** This plan may be known as the Retirement Plan of BYK-Chemie USA.

**13.17.  Military Service** Notwithstanding any provisions of the Plan to the contrary, effective December 12, 1994, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

# ARTICLE XIV.

## LIMITATION ON ANNUAL BENEFITS

**14.1.  Purpose and Definitions.** The purpose of this Article XIV is to comply with the provisions of section 415 of the Code, and all terms and provisions of this Article XIV shall be interpreted and construed consistently with said provisions. The provisions of this Article XIV shall apply notwithstanding any contrary provision of this Plan.

Solely for purposes of this Article XIV:

14.1.1. Affiliate. "Affiliate" shall have the meaning set forth in Section 1.4, but modified as provided in section 415(h) of the Code.

14.1.2. Annual Addition. "Annual Addition" means the sum for any year of (a) Employer contributions to a plan (or portion thereof) subject to section 415(c) of the Code maintained by an Employer or Affiliate, (b) forfeitures under all such plans (or portions thereof), if any, credited to employee accounts, (c) employee contributions under all such plans (or portions thereof), and (d) amounts described in section 419A(d)(2) of the Code (relating to post-retirement medical benefits of Key Employees) or allocated to a pension plan individual medical account described in section 415(1) of the Code to the extent includable for purposes of section 415(c)(2) of the Code. The employee contributions described in clause (c) shall be determined without regard to (i) any rollover contributions, (ii) any repayments of loans, or (iii) any prior distributions repaid to a plan upon the exercise of buyback rights. Employer and employee contributions taken into account as Annual Additions shall include "excess contributions" as defined in section 401(k)(8)(B) of the Code, "excess aggregate contributions" as defined in section 401(m)(6)(B) of the Code and "excess deferrals" as described in section

402(g) of the Code, regardless of whether such amounts are distributed or forfeited. The Annual Additions for any year beginning before January 1, 1987 shall not be recomputed to treat all employee contributions as Annual Additions.

14.1.3. <u>Compensation Limit</u>. "Compensation Limit" means 100% of the Participant's average annual Earnings for the three (3) consecutive years in which his Earnings were highest, as adjusted from time to time to reflect increases in the cost of living pursuant to applicable regulations. The adjustment required pursuant to the preceding sentence for any year shall be the cost of living adjustment which is effective as of the January 1 which occurs in such year. No such adjustment shall be taken into account before the year for which such adjustment first takes effect.

14.1.4. <u>Dollar Limit</u>. "Dollar Limit" means $90,000, as adjusted from time to time to reflect increases in the cost of living pursuant Section 415(d) of the Code. No such adjustment shall be taken into account before the year for which such adjustment first takes effect.

14.1.5. <u>Earnings</u>. "Earnings" for any year means the total of a Participant's wages, salary, fees for professional services, and other amounts received during the Plan Year (whether or not in cash) for personal services rendered to the Company or an Affiliate to the extent such amounts are includible in gross income (including, but not limited to, commissions, compensation for services on the basis of a percentage of profits, tips, bonuses, fringe benefits, and reimbursements or other expense allowances under a nonaccountable plan (as described in Treasury Regulation Section 1.62-2(c)), and, effective for Plan Years beginning on or after January 1, 1998, any elective deferrals (as defined in Section 402(g)(3) of the Code), any Company contributions made pursuant to Sections 125 or 457 (or, effective January 1, 2001, Section 132(f)(4)) of the Code which are not includible in the Member's gross income for the taxable year in which contributed), but shall exclude the following:

(1)     effective January 1, 1998, except for elective deferrals (as defined in Section 402(g)(3) of the Code) and Company contributions made pursuant to Sections 125 or 457 of the Code which are not includible in the Participant's gross income for the taxable year in which contributed, Company contributions to plans of deferred compensation which are not includible in the Participant's gross income for the taxable year in which contributed, or Company contributions under a simplified employee pension plan to the extent such contributions are deductible by the Participant, or any distribution from a plan of deferred compensation;

(2)     amounts realized from the exercise of a non-qualified stock option or when restricted stock (or property) held by the Participant either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(3)     amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

**BYK 00134**

(4) other amounts which received special tax benefits, or contributions made by the Company (whether or not under a salary reduction agreement) towards the purchase of any annuity described in Section 403(b) of the Code (whether or not the amounts are actually excludible from the gross income of the Participant); and

(5) make-up contributions under a defined contribution plan of the Company pursuant to Section 414(u) of the Code.

A Participant's Earnings shall not exceed the dollar limitations applicable to Compensation described in Section 1.10.

14.1.6. <u>Qualified Plan</u>. All plans of the Company and any Affiliate that are qualified under Part I, Subchapter D of Chapter 1 of Subtitle A of the Code.

14.1.7. <u>Social Security Retirement Age</u>. "Social Security Retirement Age" means retirement age as used under section 216(1) of the Social Security Act, applied without regard to the age increase factor, and as if the early retirement age under such section were sixty-two (62). The Social Security Retirement Age of a Participant born before 1938 is sixty-five (65); of a Participant born after 1937 and before 1955, sixty-six (66); and of a Participant born after 1954, sixty-seven (67).

## 14.2. **Limitation on Annual Benefits**.

14.2.1. <u>Normal Payment Forms</u>. If a Participant's Retirement Pension is payable as a qualified joint and survivor annuity or an annuity for life only, the annual amount of benefit payable to the Participant shall not exceed the lesser of the Dollar Limit or the Compensation Limit. For this purpose, a "qualified joint and survivor annuity" includes a joint and 50% surviving spouse annuity or a joint and 100% surviving spouse annuity under Sections 7.2 and 7.4, respectively.

14.2.2. <u>Optional Payment Forms</u>. If a Participant's Retirement Pension is payable in any form other than annuity for life only or a qualified joint and survivor annuity, the annual amount of benefit payable to the Participant shall not exceed the actuarial equivalent of an annuity for life only which does not exceed the lesser of the Dollar Limit or the Compensation Limit. In making such actuarial adjustment, (a) the actuarial assumptions used shall be those set forth in Exhibit A to this Plan, and (b) no adjustment shall be made for any ancillary benefit provided under the Plan which is not directly related to retirement benefits, including, without limitation, disability benefits, medical benefits, and pre-retirement death benefits (including any death benefit coverage described in Article VI).

14.2.3. <u>Employee Contributions</u>. In determining the annual amount of benefit, benefits derived from employee contributions shall be disregarded.

**BYK 00135**

14.2.4. <u>Multiemployer Plans</u>.  Any benefits provided under any multiemployer plan to which an Employer or any Affiliate is a party shall be taken into account under this Article XIV only to the extent that the benefits provided under such plan exceed the benefits that would have been provided under such plan if the Participant had no service with an Employer or any Affiliate.

**14.3.    <u>Adjustments for Early or Late Payment</u>.**

14.3.1. <u>Payments Starting At or After Age Sixty-Two</u>.  If a Participant's Retirement Pension begins before his Social Security Retirement Age but on or after the date he attains age sixty-two (62), the Dollar Limit shall be reduced:  (i) if the Participant's Social Security Retirement Age is sixty-five (65), by 5/9th of 1% for each month by which the commencement of payment of his Retirement Pension precedes the month in which he attains age sixty-five (65); or (ii) if the Participant's Social Security Retirement Age is sixty-six (66) or sixty-seven (67), by 5/9th of 1% for each of the first thirty-six (36) months and 5/12th of 1% for each additional month by which the commencement of payment of his Retirement Pension precedes the month in which he attains his Social Security Retirement Age.

14.3.2. <u>Payments Starting Before Age Sixty-Two</u>.  If a Participant's Retirement Pension begins before age sixty-two (62), the Dollar Limit shall be reduced in accordance with applicable regulations (using the actuarial assumptions set forth in Exhibit A to this Plan), so that it is equivalent to the Dollar Limit as applied to a benefit beginning at age sixty-two (62).

14.3.3. <u>Payments Starting after Social Security Retirement Age</u>.  If a Participant's Retirement Pension begins after his Social Security Retirement Age, the Dollar Limit shall be increased in accordance with applicable regulations (using a 5% interest assumption) so that it is actuarially equivalent to the Dollar Limit as applied to a benefit beginning at his Social Security Retirement Age.

**14.4.    <u>Conditional Exemption for Pensions Under $10,000</u>.  The** Compensation Limit shall not be applicable to any Retirement Pension with respect to a Participant for any year if (a) the annual amount of employer-provided retirement benefits payable with respect to such Participant under this Plan and all other defined benefit plans of all Employers and Affiliates do not exceed $10,000 for such year or any prior year, and (b) such Participant never participated in any defined contribution plan maintained by any Employer or Affiliate.

**14.5.    <u>Participants with Fewer Than Ten Years of Service</u>.  If a Participant** has fewer than ten (10) Years of Service with the Company and its Affiliates at the time his Retirement Pension starts, the Compensation Limit and the $10,000 limit described in Section 14.4 shall be adjusted by multiplying such amounts by a fraction (i) the numerator of which is the Participant's number of Years of Service (and fractions thereof) and (ii) the denominator of

**BYK 00136**

which is ten (10).  In no event shall such fraction be less than 1/10th.  Service prior to the Effective Date shall be taken into account for purposes of this Section 14.5.

**14.6.   Participants with Fewer Than Ten Years of Participation.**  If a Participant has been credited with fewer than ten (10) years of Plan participation at the time his Retirement Pension starts, the Dollar Limit shall be adjusted by multiplying such amount by a fraction (i) the numerator of which is the Participant's number of years of participation in the Plan (within the meaning of section 415(b)(5)(A)(i) of the Code) (and fractions thereof) and (ii) the denominator of which is ten (10).  In no event shall such fraction be less than 1/10th.

**14.7.   Benefits Payable Under More Than One Defined Benefit Plan**.  If benefits that are subject to the limitations of section 415 of the Code are payable under any other defined benefit plan maintained by the Company or any Affiliate, the benefits payable under this Plan, as limited by this Article XIV, shall be subject to further limitation in order that the amount of employer-provided benefits payable under all defined benefit plans maintained by the Company or any of its Affiliates shall not, in the aggregate, exceed the benefit limitations described in section 415 of the Code.  If a reduction in the benefits under such defined benefit plans in the aggregate is thus required, such reduction shall be applied in the reverse order in which benefits under such plans would otherwise accrue except as any such other plan may otherwise expressly provide, provided that benefits under any multiemployer plan shall be reduced last.

**14.8.   Participation in Defined Contribution Plan**

14.8.1. Combined Limitation. For Plan Years beginning before January 1, 2000, with respect to a Participant who is also a member in one or more defined contribution Qualified Plans, the sum of the Defined Benefit Plan Fraction and the Defined Contribution Plan Fraction for any Plan Year shall not exceed 1.0.  In the event the sum of such fractions exceeds 1.0, the annual benefit under the defined benefit Qualified Plans shall be frozen or reduced first so that none of the Qualified Plans shall be disqualified under the Code.  For Plan Years beginning after January 1, 2000, such frozen or reduced defined benefit shall continue to apply to any Participant who, on or after January 1, 2000, fails to earn an Hour of Service or who, before January 1, 2000, terminates employment with the Company and the Affiliates.

14.8.2. Defined Contribution Plan Fraction Determination.  For purposes of this Section 14.8, a Participant's "Defined Contribution Plan Fraction" shall be determined as follows:

(a)   Numerator.  For any year, the numerator shall be the sum of the Annual Additions to the Participant's account(s) under all such defined contribution plans maintained by the Company or an Affiliate in such year and in all prior years.

(b)   Denominator.  For any year, the denominator shall be the sum of the lesser of the following amounts, determined for such year and for each

**BYK 00137**

prior Year of Service with the Company or an Affiliate as if the Participant were covered by a defined contribution plan maintained by such Company or its Affiliate for all such years, but were not covered by any defined benefit plan for any such year:

     (i)    125% of the maximum dollar limitation applicable to defined contribution plan allocations for such year (as provided in section 415(c)(1)(A) of the Code determined without regard to section 415(c)(6)), or

     (ii)    35% of the Participant's Earnings for such year.

Notwithstanding the foregoing, in computing the denominator of the Defined Contribution Plan Fraction for any year ending after 1982, the Committee may elect to determine the portion of such denominator which relates to 1982 and prior years under the method described in section 415(e)(6) of the Code, in lieu of the method described above. Such election may be made at such time and in such manner as may be provided in applicable Treasury regulations.

    14.8.3. Defined Benefit Plan Fraction Determination. For purposes of this Section 14.8, a Participant's "Defined Benefit Plan Fraction" shall be determined as follows for any year:

     (a)    Numerator. The numerator shall be the total projected annual benefit (as defined in section 415(b)(2) of the Code) of the Participant under all defined benefit plans maintained by the Company or any Affiliate as of the close of such year, as determined for each such plan for purposes of section 415(e)(2)(A) of the Code, disregarding benefits derived from employee contributions.

     (b)    Denominator. The denominator shall be the lesser of the following amounts:

     (i)    125% of (a) the greater of the Dollar Limit, or (b) the current accrued benefit, as defined in section 1106(i)(3)(B) of the Tax Reform Act of 1986; or

     (ii)    140% of the Compensation Limit.

For this purpose, the Dollar Limit for the Defined Benefit Fraction shall be determined as if all Years of Service (and fractions thereof) were years of participation (and fractions thereof) for purposes of Section 14.6.

    14.8.4. Adjustment of Defined Contribution Plan Fraction. If the Plan satisfied the applicable requirements of section 415 of the Code as in effect for all Limitation Years beginning prior to 1987, an amount will be subtracted from the numerator of the Defined Contribution Plan Fraction (not exceeding such

BYK 00138

numerator) so that the sum of the Defined Contribution Plan Fraction and Defined Benefit Plan Fraction computed under section 415(e)(1) of the Code (as revised by this Article XIV) does not exceed 1.0 for such Limitation Year.  Such amount shall be equal to the product of:

  (i)   the sum of the Defined Contribution Plan Fraction plus the Defined Benefit Plan Fraction as of the determination date minus one, times

  (ii)   the denominator of the Defined Contribution Plan Fraction as of the determination date.

For purposes of this Section 14.8.4, the determination date is December 31, 1986 (the day immediately preceding the first Limitation Year beginning after 1986).

  **14.9.** **Limitation Year.**  All determinations under this Article XIV shall be made by reference to the Plan Year.

  **14.10.** **Protection of Current Accrued Benefit.**  If a Participant's Retirement Pension, determined as if the Participant had separated from Service as of the close of 1986 and expressed in the form of a qualified joint and survivor annuity (including any such benefit payable pursuant to Section 7.2) or an annuity for life only, as of January 1, 1987, exceeds the limitations of Sections 14.2-14.6, then the Dollar Limit with respect to such Participant shall be equal to his Retirement Pension determined as described in this Section 14.10.  The Dollar Limit as so determined shall include optional benefit forms and early retirement benefits or retirement subsidies that are protected under section 411(d)(6) of the Code, whether or not the Participant has met all the requirements to qualify for such forms or benefits or subsidies, if and to the extent that they remain so protected as of the date on which the limitations of this Article XIV are applied.

  **14.11.** **Effective Date.**  The provisions of this Article XIV shall be effective for Limitation Years (as described in Section 14.9) beginning after 1986.

## ARTICLE XV.

## LIMITATION ON BENEFITS PAYABLE ON
## EARLY TERMINATION OF PLAN

  **15.1.** **In General.**  Except as otherwise provided under section 4044 of ERISA, and notwithstanding any other provision of the Plan to the contrary, in the event of plan termination, the benefit of any highly compensated active or former employee is limited to a benefit that is nondiscriminatory under section 401(a)(4) of the Code.

  **15.2.** **Limitations on Benefits.**  For Plan Years beginning on or after January 1, 1991, benefits distributed to any of the 25 most highly compensated employees who is active and former Highly Compensated Employees (as determined in accordance with the regulations under Section 414(q) of the Code and IRS Notice 97-45) are restricted such that the annual payments

are no greater than an amount equal to the payment that would be made on behalf of the employee under a single life annuity that is the actuarial equivalent of the sum of the employee's Accrued Benefit and the employee's other benefits under the Plan.

The preceding paragraph shall not apply if: (a) after payment of the benefit to an employee described in the preceding paragraph, the value of Plan assets equals or exceeds 110% of the value of current liabilities, as defined in section 412(1)(7) of the Code, (b) the value of the benefits for an employee described above is less than 1% of the value of current liabilities before distribution or (c) the value of the benefits for an employee described above does not exceed the amount described in section 411(a)(11)(A) of the Code.

For purposes of this Section 15.2, the term "Benefit" includes loans in excess of the amount set forth in section 72(p)(2)(A) of the Code, any periodic income, any withdrawal values payable to a living employee, and any death benefits not provided for by insurance on the employee's life.

## ARTICLE XVI.

## LEASED EMPLOYEES

**16.1.    Definitions.**  For purposes of this Article XVI, the term "Leased Employee" means any person (a) who performs or performed services for an Employer or an Affiliate (hereinafter referred to as the "Recipient") pursuant to an agreement between the Recipient and any other person (hereinafter referred to as the "Leasing Organization"), (b) who has performed such services for the Recipient (including persons related to the Recipient within the meaning of section 144(a)(3) of the Code) on a substantially full-time basis for a period of at least one year and (c) whose services performed under the primary direction or control of the Recipient.

**16.2.    Treatment of Leased Employees**.  Notwithstanding any provision of this Plan to the contrary, for purposes of this Plan (i) a Leased Employee shall be treated as an employee excluded from participation under Section 1.13.2, and (ii) the Leased Employee shall not be eligible to become a Participant eligible to accrue benefits under the Plan unless and except to the extent that he shall at some time, either before or after his service as a Leased Employee, otherwise qualify as an Eligible Employee.  Subject to the foregoing provisions of this Section 16.2, the service performed by a Leased Employee who becomes an Eligible Employee for the Recipient (including service during the one-year period referred to in Section 16.1 and service prior to the effective date of this Plan) is to be taken into account in determining the service requirements of the Plan relating to participation and vesting but not for purposes of determining the amount of his benefits, his entitlement to retirement subsidies or ancillary benefits, or any purpose other than participation and vesting.

**16.3.    Exception for Employees Covered by Plans of Leasing Organization**. The last sentence of Section 16.2 shall not apply to any Leased Employee if such employee is covered by a money purchase pension plan of the Leasing Organization meeting the requirements of section 414(n)(5) of the Code and Leased Employees do not constitute more

**BYK 00140**

than 20% of the aggregate "nonhighly compensated work force" (as defined in section 414(n)(5)(C)(ii) of the Code) of all Employers and Affiliates.

      **16.4.**  **Construction.** The purpose of this Article XVI is to comply with the provisions of section 414(n) of the Code and, subject to the provisions of Section 16.2, the provisions of this Article shall be construed consistently with Section 414(n) of the Code. Without limiting the generality of the foregoing, no individual shall be treated as a Leased Employee except as required under such Section 414(n).


### ARTICLE XVII.

### "TOP-HEAVY" PROVISIONS

      **17.1.**  **Plans Included in Determination of "Top-Heavy" Status.** For purposes of this Article XVII, "Applicable Plans" shall include (a) each plan of an Employer or Affiliate in which a Key Employee (as defined in Section 17.2 for this Plan, and as defined in section 416(i) of the Code for each other Applicable Plan) is a Participant and (b) each other plan of an Employer or Affiliate which enables any plan described in clause (a) of this sentence to meet the requirements of sections 401(a) or 410 of the Code. Any plan not required to be included under the preceding sentence may also be included, at the option of the Company, provided that the requirements of sections 401(a)(4) and 410 of the Code continue to be satisfied for the group of Applicable Plans after such inclusion. Applicable Plans shall include terminated plans, frozen plans, Keogh plans, and to the extent that benefits are provided with respect to service with an Affiliate, multiemployer plans (described in section 414(f) of the Code) and multiple employer plans (described in section 413(d) of the Code) to which an Employer or Affiliate makes contributions.

      **17.2.**  **"Key Employee".** For purposes of this Article XVII, "Key Employee" shall mean an employee (including a former employee whether or not deceased) of an Employer or an Affiliate who, at any time during a given Plan Year or any of the four (4) preceding Plan Years, is one or more of the following:

      17.2.1. An officer of an Employer or an Affiliate having "Top-Heavy Compensation" as defined in section 414(q)(7) of the Code, greater than 50% of the dollar amount in effect under section 415(b)(1)(A) of the Code for any such Plan Year; provided, that the number of employees treated as officers shall be no more than fifty (50) or, if fewer, the greater of three (3) employees or 10% of the employees, including "Leased Employees" as described in Section 16.1 (exclusive of employees described in section 414(q)(8) of the Code).

      17.2.2. One of the ten (10) employees (a) having Top-Heavy Compensation from an Employer or an Affiliate of more than the maximum dollar limitation described in Section 14.1.4 and (b) owning (or considered as owning, within the meaning of section 416(i) of the Code) the largest percentage interests in value of an Employer or an Affiliate, provided that such a percentage interest

**BYK 00141**

exceeds 0.5% in value. If two employees have the same interest in an Employer or an Affiliate, the employee having greater annual compensation shall be treated as having a larger interest.

17.2.3. A person owning (or considered as owning, pursuant to section 416(i) of the Code), more than 5% of the outstanding stock of an Employer or an Affiliate, or stock possessing more than 5% of the total combined voting power of all stock of the Employer or Affiliate (or having more than 5% of the capital or profits interest in any Employer or Affiliate that is not a corporation, determined under similar principles).

17.2.4. A one-percent owner of an Employer or an Affiliate having Top-Heavy Compensation from the Employer and all Affiliates of more than $150,000. "One-percent owner" means any person who would be described in Section 17.2.3 if "1%" were substituted for "5%" in each place where it appears in that Section.

**17.3.  "Top-Heavy" Test.**  In any Plan Year during which the sum, for all Key Employees (as defined in Section 17.2 for this Plan and as defined in section 416(i) of the Code for each other Applicable Plan) of the present value of the cumulative accrued benefits under all Applicable Plans which are defined benefit plans (determined based on the actuarial assumptions set forth (a) in the case of this Plan, in Exhibit A, and (b) in the case of each other such Applicable Plan, in the "top-heavy" provisions of such plans) and the aggregate of the accounts under all Applicable Plans which are defined contribution plans, exceeds 60% of a similar sum determined for all participants in such plans (but excluding participants who are former Key Employees), the Plan shall be deemed "Top-Heavy". The Accrued Benefit of a Participant other than a Key Employee shall be determined under (a) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the Employer, or (b) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of section 411(b)(1)(C) of the Code.

**17.4.  Determination Dates.**  For the first Plan Year, the determination as to whether this Plan is "Top-Heavy" shall be made on the last day of such year, and for each succeeding Plan Year, the determination as to whether this Plan is "Top-Heavy" shall be made on the last day of the preceding Plan Year (the "Determination Date"); and other plans shall be included in determining whether this Plan is "Top-Heavy" based on the determination date for each such plan which occurs in the same calendar year as such Determination Date for this Plan.

**17.5.  Valuation.**  The value of account balances and the present value of accrued benefits for each Applicable Plan will be determined subject to section 416 of the Code and the regulations thereunder, as of the most recent valuation date occurring within the twelve (12) month period ending on the applicable determination date for such plan if it is a defined contribution plan and the most recent valuation date used for determining such plan's minimum funding requirements occurring during the twelve (12) month period ending on the applicable determination date if it is a defined benefit plan.

**BYK 00142**

**17.6.    Distribution Within Five Years.**  Subject to Section 17.7, distributions from the Plan or any other Applicable Plan during the five (5) year period ending on the applicable determination date shall be taken into account in determining whether the Plan is "Top-Heavy".

**17.7.    No Service Within Five Years.**  For Plan Years beginning on or after January 1, 1985, benefits and distributions under this Plan or any other Applicable Plan shall not be taken into account with respect to any individual who has not rendered any services for the Company or an Affiliate for services as an employee at any time during the five (5) year period ending on the applicable determination date.

**17.8.    Rollovers, etc.**  Amounts attributable to rollovers or similar transfers to and from this Plan or any other Applicable Plan shall be taken into account in accordance with applicable regulations.

**17.9.    Compliance With Code Section 416.**  The calculation of the "Top-Heavy" ratio and the extent to which distributions, amounts attributable to rollovers or similar transfers are taken into account will be made in accordance with section 416 of the Code and the regulations thereunder.

**17.10.    Provisions Applicable in "Top-Heavy" Years.**  For any Plan Year in which the Plan is deemed to be "Top-Heavy", the following provisions shall apply:

17.10.1.    Minimum Accrued Benefit.  The Accrued Benefit derived from employer contributions under this Plan of each Participant who is not a Key Employee, expressed as an annual benefit in single life annuity form beginning at Normal Retirement Date, shall be at least (a) 2% of the average of such Participant's Compensation for the five (5) calendar years in which such average is highest (excluding any such Plan Year after the Plan ceased to be "Top-Heavy") multiplied by (b) the number of Plan Years during which the Plan is "Top-Heavy" and in which he is credited with Credited Service, but not more than ten (10) years.  The foregoing provisions of this Section 17.10.1 shall apply only after the corresponding provision of any Applicable Plan which is a defined contribution plan, and shall, to the extent necessary or appropriate, be deemed satisfied in whole or in part by benefits provided to the Participant under any other qualified plan maintained by the Employer or Affiliate (whether or not an Applicable Plan), including without limitation the actuarial equivalent of accumulated account balances under any defined contribution plans.  A Participant's Accrued Benefit, determined as of the last day of any Plan Year in which the Plan ceases to be "Top-Heavy" shall not be reduced because the Plan ceased to be "Top-Heavy".

17.10.2.    Adjustment of Combined Limits.  Except as otherwise provided by law, the percentage "125%" in Sections 14.8.2(b) and 14.8.3(b) shall become "100%" unless the percentage described in Section 17.3 does not exceed 90%.  If such percentage does not exceed 90%, Section 17.10.1 shall be applied by substituting "3%" for the "2%" specified therein.  Notwithstanding any other

provision of this Plan and only with respect to Plan Years beginning prior to January 1, 2000, if the sum of the combined plan fractions described in Sections 14.8.2 and 14.8.3, calculated by substituting "100%" for "125%" in the denominator described in each such Section, for any Participant exceeds 1.0 for the last Plan Year before such substitution becomes required under this Section 17.10, such fractions shall be adjusted, in accordance with applicable regulations, so that their sum does not exceed 1.0 for such Plan Year.

17.10.3.   <u>Vesting</u>.  Any Participant shall be vested in his Accrued Benefit derived from employer contributions on a basis at least as favorable as is provided under the following schedule:

| <u>Years of Service</u> | <u>Percentage Vested</u> |
| --- | --- |
| Less than 2 years | 0% |
| 2 years but less than 3 | 20% |
| 3 years but less than 4 | 40% |
| 4 years but less than 5 | 60% |
| 5 years but less than 6 | 80% |
| 6 years or more | 100% |

In any Plan Year in which the Plan is not deemed to be "Top-Heavy", the minimum vested percentage shall be no less than that which was determined as of the last day of the Plan Year in which the Plan was deemed to be "Top-Heavy."

**17.11.   Represented Employees.**  Sections 17.10.1 and 17.10.3 shall not apply to any employee included in a unit of employees covered by a collective bargaining agreement, if retirement benefits are the subject of good faith bargaining.


## ARTICLE XVIII.

## DIRECT ROLLOVER

**18.1.   General.**  This Article applies to distributions from the Plan made on or after January 1, 1993.  Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Article, a Distributee may elect, at the time and in the manner prescribed by the Administrative Committee, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

**18.2.   Applicable Definitions.**  The following additional definitions shall apply to this Article:

"<u>Eligible Rollover Distribution</u>" means any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include:  any distribution that is one of a series of

substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Code Section 401(a)(9); and the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

"Eligible Retirement Plan" means an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b), an annuity plan described in Code Section 403(a), or a qualified trust described in Code Section 401(a), that accepts the Distributee's Eligible Rollover Distribution. However, in the case of an Eligible Rollover Distribution to the surviving Spouse, an Eligible Retirement Plan is an individual retirement account or individual retirement annuity.

"Distributee" means an Employee or former Employee. In addition, the Employee's or former Employee's surviving Spouse and the Employee's or former Employee's Spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code Section 414(p), are Distributees with regard to the interest of the Spouse or former spouse.

"Direct Rollover" means a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

IN WITNESS WHEREOF, and as evidence of the adoption of this Plan by the Company, it has caused this instrument to be executed by its duly authorized officer on the 28th day of February, 2002.

BYK-CHEMIE USA INC.

By: _____

Title: Asst. Secy

BYK 00145

NYC01/7525322v3

49

02/28/02   THU 16:06   [TX/RX NO 5308]

**EXHIBIT A**

**ACTUARIAL ASSUMPTIONS**

**RETIREMENT PLAN OF BYK-CHEMIE USA INC.**

Section A.1    Actuarial Assumptions – Accrued Benefits Other Than Lump Sums

      The following shall apply in computing Accrued Benefits in a form other than a lump sum payment:

| | |
|---|---|
| Mortality: | For Employees:<br>UP-1984 Mortality table with ages set back 2 years.<br><br>For Beneficiaries or contingent annuitants:<br>UP-1984 Mortality table with ages set back 5 years. |
| Interest Rate: | 8% provided, that for purposes of converting (a) the Participant's Retirement Pension (or payment in respect thereof) into an actuarially equivalent lump sum, the interest rate used shall be no greater than the interest rate used by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution on plan termination as of January 1 in the year in which distribution is to be made. |

Section A.2    Actuarial Assumptions –Lump Sum Benefits

      Effective January 1, 2001, the following shall apply in computing Accrued Benefits in the form of a lump sum payment:

      For purposes of determining the present value of a lump sum benefit, the present value shall be calculated by using (i) an interest rate equal to the "applicable interest rate" (within the meaning of Code Section 417(e)(3)) determined for the month of November preceding the Plan Year in which the annuity starting date (as defined in Code Section 417(f)(2)) occurs, and (ii) the 1983 Group Annuity Mortality Table weighted fifty percent (50%) male and fifty percent (50%) female, or such other mortality assumption as shall be prescribed by the Secretary of the Treasury and which shall be the "applicable mortality table' (as defined in Code Section 417(e)(3)). The preceding sentence shall be effective for distributions made on or after January 1, 1996, provided, however, that a lump sum benefit distributed on or after January 1, 2001 and prior to December 31, 2001 shall in no event be less than the lump sum benefit calculated using the applicable interest rate determined as of January 1 of the Plan Year in which the annuity starting date (as defined in Code Section 417(f)(2)) occurs.

**BYK 00146**

Notwithstanding the foregoing provisions of this Exhibit A, in no event will the benefit calculated be less than the Accrued Benefit determined on December 31, 1988 using the actuarial assumptions in effect on that date.

**BYK 00147**

NYC01/7525322v3