# TAB 6

# BYK-CHEMIE USA INC.

# SUPPLEMENTAL RETIREMENT PLAN

## I
## INTRODUCTION

1.01   Establishment of Plan.

The BYK-Chemie USA Inc. Supplemental Retirement Plan (the "Plan") was authorized by the Board of Directors of Altana, Inc. (the "Board") effective May 27, 1994 as a nonqualified supplemental retirement plan for certain executives of its BYK-Chemie USA Division. The intent of the Plan was to replace pension benefits lost under the tax qualified pension plan for employees of BYK-Chemie USA Division due to the reduction in the compensation limit under Code 401(a)(17) which became effective January 1, 1994. Accordingly, the Plan provides that the compensation taken into account will be as defined in the Retirement Plan of BYK-Chemie USA Inc., as amended and restated effective January 1, 2001 (the "Pension Plan"), except that the limit under this Plan shall be the same as the limit in effect on December 31, 1993 (i.e., $235,840), as adjusted from time to time pursuant to the Code.

Effective January 1, 1999, Altana Inc. spun off all assets and liabilities other than those attributable to the BYK-Chemie USA Division and changed its name to BYK-Chemie USA Inc. ("BYK-Chemie" or the "Employer"). It was subsequently determined that no Plan document had been prepared to implement the Plan. Accordingly, this document is effective January 1, 1994 for the employees of BYK-Chemie, USA, Inc. and its predecessor, BYK-Chemie USA, Division of Altana, Inc.

This Plan is intended to be a plan maintained by the Employer solely for the purpose of providing unfunded retirement benefits to a select group of key employees and is intended to be a "top hat" Plan except from the substantive requirements of the Employee Retirement Income Security Act of 1974 ("ERISA").

1.02   Incorporation of Defined Terms.

Unless indicated otherwise, capitalized terms used, but not defined, in this Plan shall have the meaning given those terms in the Pension Plan.

BYK 00001

## II
## PARTICIPATION

2.01  <u>Eligibility.</u>

Except as provided in Section 2.02, any Eligible Employee of the Employer who is a participant in the Pension Plan and whose annual Compensation is expected to be equal to or greater than the compensation limits of Code Section 401(a)(17) or whose Accrued Benefit is limited by application of Code Section 415 shall participate in this Plan (a "Participant"). A Participant shall not be entitled to any benefit hereunder unless and until his benefits under the Pension Plan are reduced due to the application of either Section 401(a)(17) or Section 415 of the Code.

2.02  <u>Additional Rules on Eligibility.</u>

(a)  The Administrative Committee may increase or decrease the Compensation limitation (see Section 2.01) that a Participant must receive to become eligible to continue or commence his or her participation in the Plan.

(b)  The Administrative Committee may prohibit any Participant from participating in the Plan during a calendar year and subsequent calendar years by notifying such Participant during the first calendar year that his or her participation shall cease under the Plan.

2.03  <u>Definition of Compensation.</u>

For purposes of this Plan, the term "Compensation" shall (except as modified below) have the same meaning given such term in the Pension Plan. Unlike the Pension Plan, however, Compensation for purposes of this Plan shall include salary, bonus or other compensation that the Company would otherwise have paid to a Participant but for the Participant's election to defer the receipt of such salary, bonus or other compensation pursuant to a Company sponsored deferred compensation program ("Deferred Compensation") provided, however, that Deferred Compensation shall not be included in Compensation in the year such Deferred Compensation is paid to the Participant.

Also, unlike the Pension Plan, the annual Compensation of each Participant taken into account under this Plan, shall not exceed the limitation imposed under Section 401(a)(17) of the Code as such Section was in effect on December 31, 1993, as adjusted for increases in the cost-of-living in accordance with the methodology set forth in Section 401(a)(17)(B) of the Code as in effect on December 31, 1993. The limitation imposed pursuant to the preceding sentence, including the cost-of-lining adjustment, shall be determined by the actuary selected by the Administrative Committee.

BYK 00002

## III
## SUPPLEMENTAL RETIREMENT INCOME

3.01  Calculation of Supplement.

    (a)    Each Participant who terminates active employment with the Employer on or after his Normal Retirement Date by reason of retirement or voluntary or involuntary termination shall, except as provided in Section 6.04, be entitled to a monthly supplemental retirement income ("Supplemental Retirement Income") equal to (1) minus (2), where

        (1)    equals the monthly Normal or Postponed Retirement Pension which the Participant would be entitled to receive under the Pension Plan beginning on the Benefit Commencement Date (as defined in Section 3.02 of this Plan) if the benefit limitation of Code Section 415 as reflected in the Pension Plan was not in effect (measured in the form of a single life annuity payable in monthly installments for the Participant's life) and if the definition of Compensation and limitation thereon as modified under this Plan were used to compute the Participant's Normal or Postponed Retirement Pension under the Pension Plan; and

        (2)    equals the monthly Normal or Postponed Retirement Pension which Participant is actually entitled to receive under the Pension Plan beginning on the Benefit Commencement Date measured in the form of a single life annuity payable in monthly installments for the Participant's life.

    (b)    Each Participant who terminates active employment with the Employer prior to his Normal Retirement Date and who is eligible to receive a Vested Retirement Pension, Early Retirement Pension or Disability Retirement Pension pursuant to Sections 5.3 or 5.4 of the Pension Plan shall, except as provided in Section 6.04, be entitled to a monthly Supplemental Retirement Income equal to (1) minus (2), where

        (1)    equals the monthly Vested Retirement Pension, Early Retirement Pension or Disability Retirement Pension which Participant would be entitled to receive under Sections 5.3.1, 5.3.2 or 5.4 of the Pension Plan beginning on the Benefit Commencement Date (as defined in Section 3.02 of this Plan) if the benefit limitation of Code Section 415 as reflected in the Pension Plan were not in effect (measured in the form of a single life annuity payable in monthly installments for the Participant's life) and if the definition of Compensation and limitation thereon as modified under this Plan were used to compute the Participant's Vested or Early Retirement Pension under the Pension Plan; and

BYK 00003

      (2)    equals the monthly Vested Retirement Pension or Early Retirement Pension which Participant is actually entitled to receive under Sections 5.3.1 or 5.3.2. of the Pension Plan beginning on the Benefit Commencement Date measured in the form of a single life annuity payable in monthly installments for the Participant's life.

3.02    <u>Benefit Commencement Date; Manner of Payment</u>.

A Participant's Supplemental Retirement Income will be paid at the same time and in the same form that payment of the Vested, Early, Normal or Postponed (as the case may be) Retirement Pension is actually paid under the Pension Plan.

IV
**<u>DEATH BENEFITS</u>**

4.01    <u>Automatic Spouse's Death Benefit</u>.

If a Participant who was married at the time of his death dies before Supplemental Retirement Income commences hereunder and while he remains employed by the Employer, then the Administrative Committee may, in its sole discretion, determine that a Participant's Surviving Spouse shall be entitled to receive a survivor benefit which is calculated in the same manner as in the Spouse's Benefit in Section 6.1 of the Pension Plan based upon the Actuarial Equivalent of the Participant's Supplemental Retirement Income accrued to the date of his death under Section 3.01.

4.02    <u>Form of Survivor Benefit</u>.

For purposes of Section 4.01, the survivor benefit shall be a benefit payable monthly for the life of the Participant's Surviving Spouse which commences as of the Participant's Normal Retirement Date, or if the Surviving Spouse so elects, after the Participant would have attained age fifty-five (55), and shall end with the payment for the month in which such Spouse dies.

The foregoing Surviving Spouse's benefit shall be determined after giving effect to any actuarial reductions applicable under Sections 7.2.1, 7.4.1, 5.3.2 or any other provision of the Pension Plan.

4.03    <u>Death of Participant After Supplemental Retirement Income Payments Have Commenced</u>.

If a Participant dies after Supplemental Retirement Income payments have begun hereunder, then the Participant's Surviving Spouse or "beneficiary" (as defined in Section 7.3.3 of the Pension Plan), as the case may be, shall be entitled to only that death benefit, if any, which is in effect at the time of the Participants' death in accordance with the benefit option elected by the Participant. No other death benefits shall be paid to the Participant's Surviving Spouse or other beneficiary.

# V
# ADMINISTRATION AND CLAIMS PROCEDURE

5.01 <u>Administrative Committee</u>.

  (a) The Administrative Committee shall be the Administrative Committee established pursuant to Article IX of the Pension Plan and, except as otherwise provided in this Plan, shall have complete control of the administration of the Plan with all powers necessary to enable it to carry out properly the provisions of the Plan.

  (b) In addition to all implied powers and responsibilities necessary to carry out the objectives of the Plan, the Committee shall have the power to construe the Plan and to determine all questions arising in the administration, interpretation and operation of the Plan and to adopt such rules and by-laws as it may find necessary for the proper administration, interpretation and operation of the Plan provided that all interpretations, determinations and decisions of the Committee in respect of any matter hereunder shall be final, conclusive and binding upon the Employer, Participants, and all other persons claiming any interest under the Plan, subject only to the claims procedure described in Section 5.02.

  (c) If a member of the Committee is also a Participant in this Plan, and if an issue or action with respect to this Plan relates specifically and uniquely to such Participant, then such Participant shall take no part in the deliberations or decision concerning such issue or action.

5.02 <u>Claims Procedure</u>.

The claims procedures contained in Section 9.10 of the Pension Plan shall apply equally to this Plan. These procedures are set forth in the Summary Plan Description for the Pension Plan and will be provided to any Participant free of charge upon written request to the Administrative Committee.

# VI
# MISCELLANEOUS

6.01 <u>Funding</u>.

Nothing contained in this Plan and no action taken pursuant to the provisions of this Plan shall create or be construed to create a trust for the purpose of assuring funds for the payment of any amounts provided herein. The amounts provided by this Plan shall be paid from each Employer's general assets or by such other means as the Employer deems advisable. A Participant shall have no title to or beneficial interest in any assets set aside or acquired by an Employer to fund its obligations hereunder prior to its due date and to the extent a Participant acquires the right to

BYK 00005

receive a payment from the Employer under this Plan, such right shall be no greater than that of an unsecured general creditor of such Employer.

6.02 <u>Nonassignability</u>.

The Supplemental Retirement Income payable under the Plan shall not be subject in any manner to anticipation, assignment, garnishment or pledge and any attempt to anticipate, assign, garnish or pledge the same shall be void and no such benefits shall be in any manner liable or subject to the debts, liabilities, engagements or torts of any Participant, Spouse or beneficiary.

6.03 <u>No Right to Continued Employment</u>.

Nothing in this Plan shall be deemed to give any Participant the right to be retained in the service of the Employer or to deny the Employer any right it may have to discharge a Participant at any time.

6.04 <u>Right to Amend and Terminate</u>.

The Board reserves the right to modify, alter, amend, or terminate the Plan, at any time and from time to time, without notice, to any extent deemed advisable or in the best interests of the Employer.

6.05 <u>Release for Payment</u>.

Any payment to a Participant, Spouse or beneficiary or to their legal representatives, in accordance with the provisions of this Plan, may be delayed by the Administrative Committee until Such Participant, Spouse or beneficiary or legal representative executes a receipt and release therefore in such form as shall be determined by the Administrative Committee.

6.06 <u>Severability</u>.

The invalidity and unenforceability of any particular provision of this Plan shall not affect any other provision hereof, and the Plan shall be construed in all respects as if such invalid or unenforceable provision were omitted or modified so as to cure such defect.

6.07 <u>Successors and Assigns</u>.

This Plan shall be binding upon the successors and assigns of the parties hereto.

6.08 <u>Governing Law</u>.

This Plan shall be governed by and construed in accordance with the laws of the State of Connecticut to the extent such laws are not preempted by Federal law.

BYK 00006