# TAB 15

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GILBERT E. LINDER, | CIVIL ACTION NO. 3:02cv1956 (JBA) |
| Plaintiff, | |
| VS. | NOVEMBER 2, 2005 |
| BYK-CHEMIE USA INC., in its capacity as Plan Sponsor of the RETIREMENT PLAN OF BYK-CHEMIE USA INC., and the SUPPLEMENTAL RETIREMENT PLAN OF BYK-CHEMIE USA INC., | |
| Defendants. | |

## DECLARATION OF BARBARA H. SHELDON

I, Barbara H. Sheldon, hereby declare and attest as follows:

1.

I voluntarily and freely make this declaration of my own personal knowledge for use as evidence in support of Defendants' Motion for Summary Judgment in the above-styled action and for any other use or purpose authorized by law. I am over the age of twenty-one years, am suffering from no legal disability, and am competent and authorized to make this declaration and to testify to the statements and facts contained herein.

2.

I have been a practicing actuary since at least 1974. I have a Bachelors degree in mathematics from the University of Connecticut. I am an Associate of the Society of Actuaries, an Enrolled Actuary under ERISA, and a Member of the American Academy

of Actuaries. I started working at Hartford Life Insurance Company in 1969 as an actuarial student in the Group Life and Health area, and switched to the pension area in 1974. While at Hartford, I was responsible for, and signed, pension valuation reports. From August of 1976 through July 1981, I was a retirement plan actuary with Johnson & Higgins in Richmond, Virgina.

3.

From August of 1981 through mid-January 2003, except for a leave of absence during all of 2000, I was a consulting actuary with Hooker & Holcombe, Inc. In 1994, I began providing actuarial services to BYK-Chemie USA, Inc., and Altana USA Inc. with regard to their defined benefit plans and their supplemental retirement plans, including the Retirement Plan of BYK-Chemie USA, Inc., (the "Retirement Plan") and the Supplemental Retirement Plan of BYK-Chemie USA, Inc. ("SERP") (collectively the "Plans"). I provided actuarial services to the BYK-Chemie and Altana USA employee benefit Plans through 1999 and during 2001.

4.

As the primary actuary responsible for the BYK-Chemie and Altana USA Plans, I was very familiar with their terms. During my tenure as consulting actuary for the Plans, I worked with the Plans' administrators, including Mr. Dulik and Mr. Linder.

5.

In early 2001, I recall that Mr. Arthur Dulik and Mr. Gilbert Linder contacted me regarding the issue of whether income derived from the exercise of stock options under the Altana Stock Option Plan would be included in "Compensation" under the Retirement Plan and SERP for purposes of calculating benefits under those Plans. I reviewed the

2

definition of "Compensation" under the Retirement Plan and advised both Mr. Dulik and Mr. Linder that stock option income would not be considered "Compensation" under that Plan and, because the SERP was intended to mirror the Retirement Plan (except as to the Code Section 401(a)(17) limits), I advised them that stock option income would not be included as "Compensation" under the SERP either. I reached this conclusion based on my review of the Plan's definition of "Compensation," which did not include income from fringe benefits (and therefore no imputed income from stock options as compensation) and my 27 years of experience as a pension actuary. Employers who sponsor qualified defined benefit pension plans seldom, if ever, include income from the exercise of stock options in the definition of compensation under the Plans because doing so subjects the Plans' funding requirements to unpredictable volatility. Including stock option compensation in calculating benefits under a defined benefit pension plan can also cause a participant's benefits to rise dramatically due to the exercise of stock options rather than accruing more evenly over an employee's working career, and can encourage employees to make retirement decisions based upon the exercise of stock options rather than the normal factors considered in retirement planning.

6.

Attached hereto as Exhibit A, is a true and correct copy of a memorandum dated August 21, 2002, which I drafted to the file and which accurately recounts my conversation with Mr. Dulik and Mr. Linder regarding the issue of whether income from the exercise of stock options was included in the definition of "Compensation."

[SIGNATURE ON NEXT PAGE]

FURTHER DECLARANT SAYETH NOT.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on this 2nd day of November, 2005.

*Barbara H. Sheldon*
Barbara H. Sheldon

# Exhibit A

04/07/04  WED 13:40  FAX 860 521 3742        H & H INC                                         ☒002

# MEMO



**HOOKER & HOLCOMBE, INC**
*Benefit Consultants and Actuaries*

65 LaSalle Road
West Hartford, CT 06107-2397
Telephone: (860) 521-8400
Fax: (860) 521-3742

DATE     August 21, 2002
TO       Altana and BYK-Chemie Files (DB & BYK's post-ret. medical) (Rich, Tim, Betty)
FROM     Barbara H. Sheldon
SUBJECT  8/16/02 Return Call to Saul Ben-Meyer

---

I checked voicemail about 4:40 Friday 8/16. Saul left a message that he wanted to talk Friday; he's away the following week on vacation.

I returned the call, since Rich was unavailable. Saul does know Rich is the responsible actuary now, but though I could help.

He and a new female lawyer (Ms. Carrithers) were drafting a SERP plan document to act instead of the one short paragraph Sherrie Desmond had drafted for Art. (It erroneously referred to 417(e) instead of 401(a)(17), as I had previously brought to Art's attention.) My understanding was that this would go out in draft form while he was away, and that we would be sent a copy to review.

Saul: questioned whether someone who didn't immediately retire from active service had any right to collect a benefit before age 65.
Barb: Yes, I think so. Since Art had previously said they wanted to make up for the benefits the qualified plan wasn't able to pay because of the limits (originally the max comp limit, but later on our questioning he thought also because of any maximum benefit limitations). Although I'm aware of no discussion between Art and H&H about entitlement to early retirement, I believe from their thinking about the SERP as just making up what the DB plan can't do because of legal limits, that VTs should have the right to early retirement benefits within the SERP also. It's clear that SERP benefits should have the same early retirement availability and benefit reduction for VTs that the qualified plan does.

We did NOT discuss any bad-boy clause possibilities.

Apparently this is getting contentious, because Gil Linder has hired an attorney. Altana clearly needs a formal document.

(FYI, I'm not sure Saul realized that a qualified pension plan had to allow a VT with the requisite service, who left before ERA, to be able to start a reduced NRB at his election on or after ERA, though I told him I thought but wasn't sure a qualified plan was entitled to stipulate more favorable early-retirement reductions for Ees retiring early from active service.)

We discussed "deferred compensation", which I hadn't even thought of before. Saul will write their draft SERP to include compensation that was voluntarily (before being earned) deferred for payment until a future tax period. [We should be thinking about that not-uncommon business practice whenever we think SERP.]

There's contention (at least on Gil's part) about why the imputed income coming from exercise of stock options hasn't been included in the qualified plan's calculations. (And probably also by extention, the SERP plan) I said the question came up early last year, both Gil and Art were interested. When asked, we said we read the compensation definition in BYK's and Altana's plans to exclude that income as coming from fringe benefits, and "they weren't going to get us to support the inclusion". They'd need to

G:\CLIENTS\3830\WORD\SERP\816FBCon.doc

Signed: *Barbara H. Sheldon*
Nov. 2, 2005

BYK 00291

go to Germany or an attorney to get help, but I'd be very uncomfortable with a determination by an attorney that the imputed income from option exercise could give rise to a qualified plan pension benefit. Saul agreed.

**BYK-Chemie's** post-retirement medical window last year was unsuccessful. First, Gil didn't take it. (The Company paid his COBRA through June, I think. Gil declined the retiree medical program when offered, apparently in favor of coverage through his wife, who can get coverage at her teaching job.

The only person who elected it and left, was the one person they didn't want to lose. She's not a key or HCE, so there shouldn't be taxable benefit implications for her.

*Not a topic of discussion with Saul, but I don't remember making a file note, so....*
Re: BYK-Chemie's post retirement medical expensing. At the request of someone in BYK's finance department, Carol Foley had called perhaps in June '02. Since their medical plan is self-insured with a stop-loss insurance policy, for expensing the active life medical program, they use paid claims instead of paid premium. (We didn't get into it, but I expect their auditors make BYK reserve an amount for both incurred and not reported, and reported but not paid claims.) I told Carol it was fine for them to charge the one electing retiree's claims rather than assumed "premium", to the post-retirement medical reserve.

This will come up at year-end when we may need to come up with some reserve adjustment for this program. HOWEVER, I'm hoping that with only one employee electing it, and no responsibility for more than 10 years from retirement (hopefully fewer years, since they might drop the program when they're eligible for Medicare), the auditors will just ignore it and assume the original charge to earnings for this person's electing the plan, and its being used-up or freed-up, will be sufficient for their purposes.

BHS

G:\CLIENTS\3830\WORD\SERP\816PhCon.doc
G:\CLIENTS\3830\WORD\SERP\816PhCon.doc

Signed: *Barbara H. Sheldon*
Nov. 2, 2005