UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GILBERT E. LINDER, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 02-CV-1956 (JGM) |
| v. | : | |
| BYK-CHEMIE USA INC., in its capacity as Plan Sponsor of the RETIREMENT PLAN OF BYK-CHEMIE USA INC., and the SUPPLEMENTAL RETIREMENT PLAN OF BYK-CHEMIE USA INC., | : | |
| Defendants. | : | DECEMBER 21, 2005 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT**

Plaintiff Gilbert E. Linder ("Plaintiff") hereby submits this memorandum of law in opposition to Defendants' Second Motion for Summary Judgment dated November 8, 2005 (the "Defendants' Motion").

I.   **INTRODUCTION**

On November 8, 2005, Plaintiff filed with this Court his Motion for Partial Summary Judgment ("Plaintiff's Motion"),[1] Plaintiff's Memorandum of Law in Support of His Motion for Partial Summary Judgment ("Plaintiff's First Memorandum"), an Appendix of Exhibits to the

**ORAL ARGUMENT REQUESTED**

---

[1] The Plaintiff seeks "partial" summary judgment since he has requested that the Court conduct a hearing regarding damages (calculation of benefits) and attorneys' fees should Plaintiff prevail.

16822.000/401073.1

Memorandum (the "Appendix"), an Affidavit of Gilbert E. Linder ("Plaintiff's First Affidavit") and Plaintiff's Local Rule 56(a)(i) Statement. Plaintiff adopts the arguments made in Plaintiff's First Memorandum and he relies upon the evidence submitted in the Appendix, Affidavit and Rule 56(a)(i) Statement in general opposition to the Defendants' Motion. In addition, Plaintiff files with this memorandum a second Affidavit of Gilbert E. Linder (the "Second Affidavit"). Set forth below is a response to specific arguments advanced by the Defendants in their memorandum supporting the Defendants' Motion.

## II.  ARGUMENT

### A. Defendants Have Waived Any Defense of Release by Failing to Raise that Defense at the Administrative Proceeding Stage

In this Court, for the first time,[2] the Defendants raise a defense of waiver and release (the "Waiver Defense"). The Waiver Defense is based upon the execution of an Agreement and Release by Plaintiff (the "Agreement"). The Agreement was executed by Plaintiff on or about March 28, 2002 in connection with the separation of his employment from BYK-Chemie USA, Inc. ("BYK"). By failing to raise the Waiver Defense during an administrative review process, Defendants have waived that defense and cannot assert it as a bar to Plaintiff's claims in this action.

---

[2] The defense is vaguely referred to in the Fourth Defense contained in Defendants' Answer and Affirmative Defenses filed with this Court on July 22, 2005. The Fourth Defense states: "Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver and/or release". Defendants did not raise this defense in their first Motion for Summary Judgment dated May 23, 2003.

2

16822.000/401073.1

As Judge Arterton found in ruling upon Defendants' first Motion for Summary Judgment, on May 29, 2002 Plaintiff submitted a formal claim for benefits to the Administrative Committee of the Retirement Plan of BYK-Chemie (the "Committee"). See Ruling on Defendants' Motion for Summary Judgment dated March 15, 2005, p.8. As also found by Judge Arterton, as of the date of her ruling (March 15, 2004), the Committee had not issued a decision on Plaintiff's claim. Id. As a result, the Court found that Plaintiff was deemed to have exhausted his administrative remedies under the plans and he could proceed with his claims before this Court. See Regulation § 2560.503 -1 (l). Defendants' claim was deemed denied by the Court. In point of fact, the Committee has never issued a decision on Plaintiff's claim. See Plaintiff's First Affidavit.

Obviously, the Defendants were aware of the Waiver Defense in May, 2002, at the time of the Plaintiff's formal claim. See Declaration of Carol M. Foley. Defendants could have, but chose not to, raise the Wavier Defense during an administrative review process. Rather, the Committee ignored the Plaintiff's claim, and it failed to issue any decision at the administrative level. As discussed in detail in Plaintiff's First Memorandum, the Committee's failure to issue an administrative decision or opinion requires this Court to adopt a de novo standard of review. Moreover, the failure of the Defendants to follow the administrative process and raise the Wavier Defense during administrative proceedings has another consequence: waiver of that defense in the District Court. The Second Circuit Court of Appeals has held that a known defense to an ERISA claim can be waived where the defense is not raised at the administrative review level. Lauder v. First Union Life Insurance Co., 284 F.3d 375, 381-382 (2nd Cir. 2002). The Lauder court further

held that the doctrine of waiver will be applied by the court unless it would act to establish benefits.[3]

In this instance, the Plaintiff is not seeking to establish benefits where they might not otherwise exist. Here, it is agreed that Plaintiff is entitled to his benefits under the Plan and SERP. Only the calculation of those benefits is in dispute. Thus, the exception to the application of the waiver of defense rule enunciated by the Lauder court does not apply to the present facts. Rather, as did the defendants in Lauder, the Defendants knew of the Waiver Defense to Plaintiff's claim and decided not to assert that defense in the administrative review process. Thus, the Waiver Defense itself is waived.

The Lauder holding has been applied to a general release signed by a former employee. See Spann v. AOL Time Warner, Inc., 219 F.R.D. 307, 317-318 (S.D. N.Y. 2003). In considering a motion for class action certification, the Spann court determined that a plan administrator who did not raise a defense of release at the administrative review process may waive that defense in subsequent litigation. Id. As the Spann court noted, when the District Court undertakes a de novo review it is can consider only those defenses contained in the administrative record. Id.; See also, Krizek v. Cigna Group Insurance, 345 F.3d 91, 98 (2nd Cir. 2003). In this case there is no administrative record because the Committee failed to avail itself of the administrative review process. Accordingly, since the Defendants failed to raise the Waiver Defense at the administrative

---

[3] The court concluded that application of waiver to the facts before it would not create coverage under a policy where none would otherwise exist.

16822.000/401073.1

level, and the administrative "record" before this Court contains no such defense, it cannot be raised for the first time before this Court.

### B. Alternatively, the Agreement did not Release the Plan or the SERP and, therefore, the Plaintiff's Claims in this Action are not Barred.

If this Court does consider the Waiver Defense asserted by the Defendants, then it must do so with heightened scrutiny. A beneficiary's waiver of a claim to benefits under ERISA is subject to closer scrutiny than a waiver of general contract claims. Yak v. Bank Brussels Lambert, 252 F.3d 127, 131 (2d Cir. 2001); Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 231 (2d Cir. 1995); Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan, 935 F.2d 1360, 1365-1368 (2d Cir. 1991). Waiver and release are affirmative defenses on which the defendant bears the burden of proof. Rivere-Flores v. Bristol Meyers Squibb Caribbean, 112 F.3d 9, 11-12 (1st Cir. 1997). The release and waiver contained in the Agreement does not survive this heightened scrutiny.

In the Agreement, the only entity that is released is BYK. The first paragraph of the Agreement provides:

> In consideration of the payments and benefits described herein, Gil Linder (the "Executive") is entering into this Agreement and Release ("Agreement") for the benefit of BYK Chemie USA Inc. (the "Company"), its affiliates and the respective shareholders, officers, directors, employees, agents, successors and assigns of the Company and its affiliates (together with the Company, the "Company Group").

Neither the Plan nor the SERP is mentioned anywhere in the Agreement. In paragraph 4 of the Release, Plaintiff releases only the "Company Group" and not the Plan or SERP.

ERISA recognizes employee benefit plans as separate legal entities. <u>Antoniou v. Thiokol Corporation Group Long-Term Disability Plan</u>, 849 F.Supp. 1531, 1534 (MD. Fla 1994). This recognition is found in ERISA's statutory scheme: "An employee benefit plan may sue or be sued under this subchapter as an entity." 29 U.S.C. §1132(d)(1). In addition, "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. §1132(d)(2).

Several courts have held that releases purporting to release ERISA claims are ineffective when the plans themselves are not released. <u>Barron v. Unum Life Insurance Company of America</u>, 260 F.3d 310, 315-317 (4th Cir. 2001); <u>Laurenzano v. Blue Cross and Blue Shield of Mass., Inc. Retirement Income Trust</u>, 191 F. Supp. 223, 233 (D. Mass. 2002); <u>Antoniou</u>, <u>supra</u>, 849 F. Supp. at 1534 (holding employer and plan separate legal entities; release of employer did not release plan).

The Agreement contains a release that releases only Plaintiff's employer at the time, BYK. The Agreement does not mention the Plan or SERP and, therefore, does not release those entities. Thus, as a matter of law, the release language contained in the Agreement cannot be used by the Defendants in this case to preclude Plaintiff's claims against the Plan and the SERP in this action.[4]

---

[4] Moreover, Plaintiff states in his Second Affidavit that he did not intend to release claims against the Plan or SERP, including those claims that he has raised in this lawsuit. As such, Plaintiff did not knowingly and voluntarily release the claim that he has asserted in this lawsuit. See <u>Sharkey v. Ultramar Energy Ltd.</u>, 70 F. 3d 226, 231 (2d Cir. 1995).

6

### C. The Anti-Alienation Provision in ERISA and the SERP Void Any Release of Plaintiff's Claims in this Action

If this Court does not agree with the foregoing analysis, then there is a third reason why the release in the Agreement is void as to Plaintiff's present claims: the anti-alienation provision of ERISA and in the SERP. The Supreme Court has held that pension entitlements are, without exception, subject to the anti-alienation provision of ERISA. Patterson v. Shumate, 504 U.S. 753, 759 (1992). The anti-alienation provision of ERISA has been read to apply to releases given by employees. See Lynn v. CSX Transportation, 84 F.3d 970, 975 (7th Cir. 1996); Laurenzano, supra, 191 F. Supp. at 228.[5] In Lynn the Seventh Circuit held that the anti-alienation provision in ERISA acted to void a broadly-worded release contained in a voluntary resignation agreement. Lynn, supra, 975-977. Thus, the release given in connection with an agreement to separate from employment could not be used in defense of claims relating to pension calculations for the employee's original pension benefits that were not part of the Separation Agreement.

Similarly, the Laurenzano court held that release language contained in a resignation agreement could not be used to preclude a claim for recalculation of pension benefits based on an interpretation of the employer's deferred benefit pension plan. The court's analysis in Laurenzano is instructive. The Laurenzano court reasoned that there is a distinction between claims for pension entitlement that arise from the plan itself and those that arise under a settlement agreement between an employee and employer. Under this dichotomy, a release may be effective to prevent a plan

---

[5] The Court concluded that the First Circuit Court of Appeals had not ruled on the issue of the validity of waivers in the face of the anti-alienation provision of ERISA. Research by Plaintiff's counsel did not find any such ruling by the Second Circuit Court of Appeals.

7

16822.000/401073.1

participant from asserting claims based on a settlement agreement but not claims based on pension entitlements which are protected by the anti-alienation provisions of ERISA. Thus, the <u>Laurenzano</u> court held that a plaintiff could have the court interpret the pension plan to determine if military service should be included in the calculation of benefits, even in the face of a broad release of claims given as part of a resignation agreement.

The same analysis applies here. The Plaintiff is not claiming benefits arising from the Agreement, nor is he seeking to have this Court interpret the Agreement. Rather, Plaintiff is asking the Court to interpret the Plan and the SERP as to the calculation of benefits. As such, by virtue of the anti-alienation provisions of ERISA and those contained in the SERP[6], the release language contained in the Agreement cannot be used to bar the Plaintiff's claims in this action.

### D. Defendants' Have Ignored the term "Special Pay" in Their Analysis of Special Pay

Significantly, the Defendants, in their analysis, ignore the term "special pay" contained in the definition of Compensation in the Plan and SERP. In fact, the portion of the "Compensation" definition that most definitely describes stock option compensation is "special pay". Webster's New Collegiate Dictionary defines "special" as: "being other than the usual: additional, extra". Webster's New Collegiate Dictionary defines "pay" as "to make due return for services rendered". Using the plain meaning of these words, stock option compensation is "special pay" provided by

---

[6] As noted in Plaintiff's First Memorandum, the Plan comes under the substantive provisions of ERISA but the SERP is excepted from ERISA's substantive provisions (but not its enforcement provisions). However, the SERP as written contains an anti-alienation provision: "6.02 <u>Nonassignability</u>. The Supplemental Retirement Income payable under the Plan shall not be subject in any manner to anticipation, assignment, garnishment or pledge and any attempt to

BYK to the Plaintiff. Indisputably, Plaintiff received the stock options as additional or extra compensation in return for services rendered. Thus, "Compensation" as used in the Plan and SERP clearly includes stock option compensation under the term "special pay".

### E. The Defendants' Construction of "Compensation" is Wrong

The Plaintiff's First Memorandum clearly sets forth why Plaintiff's stock option compensation comes within the meaning of "Compensation" under both the Plan and SERP. That analysis does not need to be repeated here. However, in their memorandum, Defendants take a distorted, erroneous construction of the term "Compensation" as used in the Plan and SERP.

The Defendants attempt to support their reading of "Compensation" by citing O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc., 37 F.3d 55 (2nd Cir. 1994). However, O'Neil is distinguishable from the facts in this case. In O'Neil, the plan administrator determined that the plaintiff's income did not fall within the plan's definition of "Earnings" for the purpose of calculating annual benefits. The Court in O'Neil, however, reviewed the administrator's determination under the *arbitrary and capricious* standard, granting a high degree of deference to that decision. Id., 37 F.3d 55, 59-60. In spite of its serious doubts, the court decided to grant deference under the *arbitrary and capricious* standard to the administrator's reasoning in its decision to exclude the plaintiff's stock options. The court examined the record and reviewed several factors considered by the administrator. As discussed in Plaintiff's Memorandum, the de

---

anticipate, assign, garnish or pledge the same shall be void and no such benefits shall be in any manner liable or subject to the debts, liabilities, engagements or torts of any Participant, Spouse or beneficiary."

16822.000/401073.1