novo standard of review applies in this case. Here, there is no record, however weak, that supports a decision by the Committee since no decision was ever rendered.

Another significant difference between O'Neil and the present case is the fact that the SERP is non-qualified under I.R.C. § 401(a) whereas the plan in O'Neil was a qualified plan. In O'Neil, the Court accepted one of the administrator's factors that including the plaintiff's stock options might cause the plan to be disqualified from preferential tax status under the tax code. The court accepted this argument since the tax code requires that qualified plans do not discriminate in favor of "highly-compensated individuals." Since the SERP is nonqualified, the O'Neil court's decision on this point is inapplicable.

Contrary to the Defendants' assertions, many courts have supported broad readings of the definition of "compensation." The United States Supreme Court decided in Commissioner v. Smith 324 U.S. 177 (1945) that compensatory gross income should include stock options granted to an employee by an employer. Interpreting the Revenue Act of 1938 (predecessor to the 1986 Tax Code), the Court stated, "Section 22(a) of the Revenue Act is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected." Comm. v. Smith, 324 U.S. 177, 181 fn.1. Thus, the United States Supreme Court has adopted an extremely inclusive reading of compensation in the taxation context.

In the ERISA context, several courts have supported broad readings of plans' definitions of compensation and the inclusion of stock options for the purposes of calculating benefits. See e.g.

10

Davidson v. Canteen Corp., 957 F.2d 1404 (7th Cir. 1992), Adams v. Louisiana-Pacific Corp., 284 F.Supp.2d 331 (W.D.N.C. 2003), Dicioccio v. Duquesne Light Co. 911 F.Supp. 880 (W.D.Pa. 1995), Soule v. Retirement Income Plan for Salaried Employees of Rexham Corp., 723 F.Supp. 1138 (W.D.N.C. 1989). In Adams, the District Court for the Western District of North Carolina (applying a deferential standard of review) determined that an employee's stock options were "wages" as that term was used in a plan which defined compensation as "*wages* on participant's Form W-2 *excluding fringe benefits*." Adams v. Louisiana-Pacific Corp., 284 F.Supp.2d 331, 339 (emphasis added).

Similarly, in Dicioccio, the District Court for the Western District of Pennsylvania decided that a plan administrator had abused her discretion in deciding to exclude stock options from an employee's benefits calculation. 911 F.Supp. 880, 897. As in Adams, the plan in Dicioccio defined compensation as "remuneration paid to an eligible employee for the performance of job duties, including wages or salary, overtime and/or shift premiums, gratuities and other payments" and excluding certain enumerated fringe benefits. In rejecting the defendant's proposed reading of the plan language, the court reasoned:

> Because the language contained in the Plans defining compensation was inclusive rather than exclusive and specifically encompassed the type of income recognized under the [stock option] exercises, it follows that those employees which exercised their stock options and appreciation rights. . .and had income reported on their W-2's for the calendar year of 1989 acquired an accrued benefit. Id.

Just as the plan definition in Dicioccio contained expansive language including numerous forms of compensation ("wages or salary, overtime and/or shift premiums, gratuities and other

11

payments"), the Plan and SERP at issue before this Court broadly define compensation by including bonuses, overtime, and special pay. Therefore, this Court should reach the same conclusion as did the court in Adams and Dicioccio: the term "Compensation" includes Plaintiff's compensation realized from the exercise of the stock options.

The Defendants attempt to distinguish Adams and Dicioccio in its motion by pointing out that the plans in those cases both referred to the employees' taxable income as reported in their W-2 tax forms. However, the Defendants fail to demonstrate from this difference any principled reason why the Court might reach a different decision in this case. The Defendant merely asserts the distinction and urges the Court to reach a different conclusion.

The Defendants also argue that Plaintiff's stock options are not includable in either plans' definition of "Compensation" because they are "fringe benefits". In support of this argument, the Defendants cite dicta in three cases (Hartley v. Dillard's Inc., 310 F.3d 1054 (8th Cir. 2002), Kennedy v. Commissioner, 671 F.2d 167 (6th Cir. 1982), and In re the Marriage of Hug, 201 Cal.Rptr. 676 (Ct.App.1st Dist.Div.5 1984)) with no bearing on the instant matter.

Hartley v. Dillard's Inc., for example, was an age discrimination civil rights case. Kennedy v. Commissioner was a tax appeal in which the government challenged the reasonableness of the taxpayer's compensation business deduction. In re the Marriage of Hug was a review of a dissolution of marriage property settlement in California.

The Defendants cite this menagerie of dicta in non-ERISA cases to support their argument that proceeds from such options should be considered "fringe benefits". In the ERISA cases of

12

16822.000/401073.1

Adams and Dicioccio (cited above), however, the courts reached the opposite conclusions and determined that stock options are not "fringe benefits," but fall squarely within the bounds of regular compensation. However, given the unique nature of each pension plan, this Court cannot be guided strictly by decisions of other courts construing other plans. Rather, the Plan and SERP must be interpreted using applicable rules of construction.

### F. The Declarations of Mr. Bauer and Ms. Sheldon and Affidavit of Mr. Sych Submitted by the Defendants are not Admissible and Should Not be Considered by the Court

The last argument made by the Defendants is that extrinsic evidence in the form of declarations and an affidavit demonstrates the "intent" of the drafters of the Plan and SERP. First, before this Court may consider extrinsic evidence, it must first find an ambiguity in the Plan and SERP. See Curry Road Ltd. v. Kmart Corp., 893 F.2d 509, 511 (2d Cir. 1990) (only when contract is ambiguous may court turn to extrinsic evidence of intent); Duse v. International Business Machines Corp., 252 F.3d 151-158 (2d Cir. 2001) (whether contract is ambiguous is question of law for the court). As discussed above and in Plaintiff's First Memorandum (pages 11-15), no such ambiguity exists. From the face of the Plan and SERP this Court can and should determine that stock option compensation comes within the meaning of "Compensation" as that term is used in the Plan and SERP. Thus, extrinsic evidence should not be considered by this Court.

Moreover, should the Court find ambiguity, this Court should reject Defendants' argument regarding "intent" of the drafters since that argument is based solely on testimony that is inadmissible under the Federal Rule of Civil Procedure and Federal Rule of Evidence.

16822.000/401073.1

Rule 56(e) of the Federal Rules of Civil Procedure governs the form of affidavits to be submitted in conjunction with a motion for summary judgment and states in relevant part: "Supporting and opposing affidavits shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, the affiant's testimony must be based on first-hand knowledge, and may not contain hearsay or second-hand information based on "information and belief." See <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 643 (2nd Cir. 643), <u>Chandler v. Coughlin</u>, 763 F.2d 110, 114 (2nd Cir. 1985), <u>John Hancock Property and Casualty Insurance Co. v. Universale Reinsurance Co.</u>, 147 F.R.D. 40, 44-45 (S.D.N.Y. 1993) ("<u>John Hancock</u>").

The first declaration relied upon by the Defendants is that of Joerg Bauer, the present head of human resources for Altana Chemie AG, the German parent company of BYK, Plaintiff's former employer. In his declaration, Mr. Bauer makes a number of very broad generalizations about the purposes of the BYK-Chemie Retirement and SERP plans culminating with his opinion that "[n]either the Retirement Plan nor the SERP include, nor were they ever intended to include, income from the exercise of stock options in the compensation used to determine retirement benefits under these Plans." ¶5  This statement is inadmissible because Mr. Bauer has demonstrated *no basis* upon which he is competent to make such a statement.

As noted above, Rule 56(e) requires that an affiant speak from "personal knowledge" and affirmatively demonstrate that he "is competent to testify to the matters stated therein." Mr. Bauer does not and cannot offer such proof.  In the case of <u>John Hancock</u>, a dispute arose over

14

16822.000/401073.1

representations made during the negotiation of a reinsurance contract (called a "Treaty") between the parties. In asserting its claim that the plaintiffs made misrepresentations, the defendant produced an affidavit by its current managing director. The affidavit opined that the defendant's employees never would have entered into the contract had the alleged misrepresentations not been made. The court refused to consider the affidavit, however, stating:

> Mr. Karli's [The managing director's] affidavit relies on unnamed individuals who allegedly would neither have participated in the 1985 Treaty nor considered renewals thereto. . .Mr. Karli cannot testify as to what [the Defendant's] former employees would or would not have done during the negotiations concerning the Treaties. Accordingly, this Court cannot consider the Karli affidavit since it fails to comply with Fed.R.Civ.P. 56(e).

John Hancock, 147 F.R.D. 40, 45.

Just as the defendant in John Hancock asked the court to accept as evidence the uncorroborated opinion of an upper level manager on matters beyond his personal knowledge, so do the Defendants in this case ask the court to accept the unfounded opinion of Mr. Bauer. Mr. Bauer states, first of all, that the Plans are not intended to include compensation for the exercise of stock options. Such an opinion cannot be considered because it is not relevant. According to the Federal Rules of Evidence, "Evidence which is not relevant is not admissible." Fed.R.Evid. 402. In interpreting the meaning of the terms of an ERISA plan, only the intentions of the parties *at the time the plan was executed can be considered as* relevant. Any subsequent statements of intent are not relevant and thus not admissible. Soule v. Retirement Income Plan for Salaried Employees of Rexham Corp., 723 F.Supp. 1138, 1152 (W.D.N.C. 1989) ("Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with

15

the meaning attached by one of them at the time the agreement was made.") As noted above, Mr. Bauer also contends that the plans were never intended to comprehend the calculation of stock options. Mr. Bauer, never states, though, *who* never intended to include stock options. As in <u>John Hancock</u>, Mr. Bauer asks the Court to infer the actions of the unnamed persons who actually drafted the language of the plans. Mr. Bauer asserts in Paragraph 1 that his statements are based on "personal knowledge." Beyond this however, he gives the Court no basis upon which his assertions are founded. Mr. Bauer does not even state how long he has been Head of Human Resources nor whether he held a position with the company in 1984 and 1994 when the plans were enacted. Of most importance, Mr. Bauer does not state (and he cannot state) that he was one of the drafters of the Plan or SERP. The balance of Mr. Bauer's affidavit is devoted to pontificating about the purpose of employee benefit plans in general and the turmoil including stock options in calculating plan benefits would cause. This information has no bearing on the issue of interpreting the particular Plans at issue in this case. As such, Mr. Bauer's entire declaration should be disregarded by the Court.

The Defendants also rely upon the declaration and affidavit of two actuaries, Barbara Sheldon and Richard Sych, retained by BYK to perform consulting work on behalf of the plans. These affidavits should likewise be disregarded by the Court, as they contain information that is irrelevant and not based on first-hand knowledge. Both affidavits devote much time to discussing the affiants' opinion that the common practice in employment benefit plans is to exclude stock options from benefit calculations. The Defendants ask the Court to *infer* from this information that

16

the intention of the parties to the Plans was to so exclude such stock options. The affiants have no personal knowledge, however, as to the actual intent of the drafters of the Plan and SERP. The affiants' "after-the-fact" opinions as to the common practice with other plans is wholly irrelevant to interpreting the meaning of Mr. Linder's benefits. See Soule, supra. As such, their testimony is inadmissible and improper under Rule 56(e) and should not be considered by the Court.[7]

### III. CONCLUSION

For the reasons set forth in this Memorandum and in Plaintiff's First Memorandum, this Court should deny Defendants' Motion and grant Plaintiff's Motion for Partial Summary Judgment.

PLAINTIFF, GILBERT E. LINDER

By: _____
Dominic Fulco III
Fed. Bar ID No. ct06494
Reid and Riege, P.C.
One Financial Plaza 21st Floor
Hartford, CT 06103
Tel: (860) 278-1150
Fax: (860) 240-1002
dfulco@reidandriege.com
His Attorney

---

[7] Should this Court determine that the declarations and affidavit submitted by Defendants are admissible, then supplemental discovery in the form of deposition(s) of the drafters of the Plan and SERP is requested by Plaintiff under Rule 56(e) of the Federal Rules of Civil Procedure. See Wards Company Inc. v. Stamford Ridgeway Associates, 761 F.2d 117 (1985) (non-moving party has right to present extrinsic evidence regarding intent).

# CERTIFICATION

This is to certify that a copy of the foregoing was served via first-class mail, postage prepaid this 21st day of December, 2005, to:

Charles F. Corcoran, III, Esq.  
Carmody & Torrance LLP  
195 Church Street  
P.O. Box 1950  
New Haven, Connecticut 06509-1950

Michael G. Monnolly, Esquire  
Alston & Bird, LLP  
One Atlantic Center  
1201 West Peachtree Street  
Atlanta, GA 30309-3424

_____  
Dominic Fulco III

16822.000/401073.1