UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GILBERT E. LINDER, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 02-CV-1956 (JGM) |
| v. | : | |
| BYK-CHEMIE USA INC., in its capacity as Plan Sponsor of the RETIREMENT PLAN OF BYK-CHEMIE USA INC., and the SUPPLEMENTAL RETIREMENT PLAN OF BYK-CHEMIE USA INC., | : | |
| Defendants. | : | DECEMBER __, 2005 |

## AFFIDAVIT OF PLAINTIFF, GILBERT E. LINDER, IN OPPOSTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Gilbert E. Linder, being duly sworn, says:

1. I am over the age of 18 and understand the meaning and obligation of an oath.

2. I make this Affidavit in opposition to a Motion for Summary Judgment filed by the Defendants.

3. When I signed the Agreement and Release ("Agreement") in favor of BYK Chemie USA, Inc., a copy of which is attached hereto as Exhibit A, I did not intend to release any claims relating to my benefits or calculation of those benefits under the BYK-Chemie Retirement Plan ("Plan") or the BYK-Chemie USA, Inc. Supplemental Retirement Plan ("SERP").

4. The Agreement does not mention the Plan or SERP.

5. When I signed the Agreement I intended to release only BYK Chemie USA, Inc. ("BYK") and its shareholders, officers, directors, employees, agents and

16822.000/400969.1

affiliated companies. I did not intend to release the Plan or SERP from any claims that I had or may have against those entities.

6. My intent in signing the Agreement was to resolve employment claims that I had against BYK and to release employment claims that I had against only BYK. When I signed the Agreement I did not intend to release any claims relating to the calculation of my benefits under the Plan or SERP.

7. The consideration I received for signing the Agreement was in exchange for releasing certain employment claims against BYK. The consideration I received was not in exchange for giving a release of the claims I have made in this lawsuit. As stated above, I have not released those claims.

16822.000/400969.1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GILBERT E. LINDER, | : CIVIL ACTION NO. |
| Plaintiff | : 3:02CV1956 (JGM) |
| v. | : |
| BYK-CHEMIE USA INC., in its capacity as Plan Sponsor of the RETIREMENT PLAN OF BYK-CHEMIE USA INC., and the SUPPLEMENTAL RETIREMENT PLAN OF BYK-CHEMIE USA INC., | : |
| Defendants. | : December 18, 2005 |

AFFIDAVIT OF GILBERT E. LINDER
[signature page]

STATE OF CONNECTICUT    )
                        ) ss.    December 18, 2005
COUNTY OF NEW HAVEN     )

_____
Gilbert E. Linder

Personally appeared, Gilbert E. Linder, and executed the foregoing Affidavit and acknowledged the same to be true and accurate to the best of his knowledge and belief this 18th day of December, 2005.

_____
~~Commissioner of the Superior Court~~
Notary Public/My Commission expires: 3/31/06

3

16822.000/400969.1

# EXHIBIT A

## AGREEMENT AND RELEASE

In consideration of the payments and benefits described herein, Gil Linder (the "Executive") is entering into this Agreement and Release (the "Agreement") for the benefit of BYK Chemie USA Inc. (the "Company"), its affiliates and the respective shareholders, officers, directors, employees, agents, successors and assigns of the Company and its affiliates (together with the Company, the "Company Group").

1. Termination of Employment. The Executive acknowledges and agrees that his last day of employment with the Company will be January 31, 2002 (the "Termination Date").

2. Entitlement to Compensation and Benefits. Regardless of whether the Executive signs this Agreement, he will (i) receive his regular base salary and benefits through the Termination Date; (ii) be paid for any unused vacation days earned through the Termination Date; and (iii) be reimbursed for any unreimbursed business expenses incurred by the Executive prior to the Termination Date in accordance with the Company's expense reimbursement policy.

3. Consideration. Provided the Executive signs this Agreement and does not revoke it in accordance with Section 10 below, the Company will pay or provide to him the following payments and benefits:

    (a) The Company will pay the Executive, on the fifteenth (15th) day after he has signed and returned this Agreement to the Company, a lump sum payment equal to the gross amount of Fifty five Thousand Dollars ($55,000).

    (b) Provided the Executive remains unemployed through June 30, 2002, he will continue to vest in his stock options under the Altana Group 2000 stock option plan (the "2000 plan") following the Termination Date as if he continued to be employed by the Company until July 1, 2002, on which date he will be fully vested in such options under the 2000 plan. Provided the Executive remains unemployed through June 30, 2003, he will continue to vest in his stock options under the Altana Group 2001 stock option plan (the "2001 plan") as if he continued to be employed by the Company until July 1, 2003, on which date he will be fully vested in such options under the 2001 plan. Once the Executive has fully vested in either or both of the 2000 and 2001 plans, the Executive will have a period of twenty-four (24) [struck: twelve (12)] months to exercise such options, notwithstanding any provision in the plan to the contrary.

000076

(c) The Company will pay the Executive, on the fifteenth (15th) day after he has signed and returned this Agreement to the Company, a lump sum payment equal to the gross amount of Forty-two Thousand Five Hundred Dollars ($42,500) as a bonus for 2001.

(d) The Executive will be included in the voluntary early retirement program ("VERP") which the Company intends to announce and implement shortly, whereby employees at least fifty-five (55) years of age and having at least twelve (12) years of service with the Company on a specified date will be given the option of retiring early and receiving post-retirement medical coverage for up to ten (10) years under terms to be set out in the VERP. Should the Company fail to implement the VERP, the Executive will be entitled to rescission of this Agreement.

(e) The Executive will be permitted to keep the leased automobile currently provided to him by the Company. The Company's cost in providing this benefit will be reported as taxable income paid to the Executive.

All payments and benefits provided to the Executive hereunder will be reported as taxable income to the extent required by law and will be subject to applicable federal, state and local income and payroll withholding taxes.

In the event the Executive breaches any of his promises or obligations hereunder (other than a challenge by the Executive of the validity of his waiver of age discrimination claims under this Agreement), he will be required to return to the Company any payments or benefits provided to him as consideration for this Agreement, and he will forfeit his right to receive any payments or benefits which have not yet been paid to him hereunder.

4. Release. The Executive hereby fully and forever releases the Company Group from any and all claims, causes of action and charges, of whatever kind or nature, whether known or unknown, which he now or hereafter may have against any member of the Company Group, including, but not limited to, claims arising under or in any way connected with his employment with the Company or the termination of such employment. The Executive acknowledges and agrees that the claims released hereunder include any claims or rights arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act ("ADEA"), the Connecticut Fair Employment Practices Law or any other federal, state, county, city or local law, statute, ordinance or regulation relating to discrimination on any basis, including age, sex, race, national origin, disability and religion, or under any other theory of law or contract, including but not limited to fraud, wrongful termination, retaliatory discharge, intentional infliction of emotional or

000077

mental distress, libel or slander. The Executive does not, however, waive rights or claims that may arise after the date he executes this Agreement.

The Executive further agrees, to the extent permitted by law, not to bring any administrative or legal action arising out of his employment by the Company or the rights released under this Agreement, and the Executive agrees that he will not seek or accept any award or settlement from any source or proceeding with respect to any claim or right released under this Agreement.

5. <u>Confidentiality</u>. The Executive agrees that at all times hereafter, he will hold in strictest confidence, and will not use or disclose to any person, firm or corporation (except as may otherwise be required by law), any Confidential Information of the Company or any member of the Company Group. "Confidential Information" means any Company or Company Group proprietary information, technical data, trade secrets or know-how, including, but not limited to, sales, marketing and pricing information, product plans or other plans for future development, customer requirements, customer lists, inventions, processes, financial or other business information (including personnel information) disclosed to the Executive by the Company or any member of the Company Group, either directly or indirectly, in writing, orally or by drawings or observation of parts or equipment. "Confidential Information" does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of the Executive or of others. The Executive further agrees that he will not disclose the terms or existence of this Agreement to any third party (other than to his professional advisors or immediate family members or as may be required by law).

6. <u>Return of Property</u>. The Executive represents that he has returned to the Company all Company information and property (without retaining any copies, whether electronic or otherwise) including, but not limited to, reports, files, records, keys, computer disks and software, computer files, credit cards, telephones and any and all other physical or personal property provided to the Executive by the Company or any member of the Company Group during the course of his employment by the Company.

7. <u>No Disparagement or Harm</u>. The Executive agrees that he will not make any comments or statements relating to the Company or any member of the Company Group which are negative, critical or derogatory or which may tend to denigrate, disparage or otherwise injure the business or reputation of any of them.

000078

8. <u>No Other Termination Benefits</u>. The Executive acknowledges that the consideration provided to him in this Agreement will be in lieu of any and all bonus, severance or other termination benefits to which he may otherwise be entitled under any Company plans or policies or agreements in effect at any time during his employment, and this Agreement will supersede all such plans, policies and agreements except as expressly provided in this Agreement.

9. <u>Knowing and Voluntary Execution</u>. The Company hereby specifically advises the Executive to consult a lawyer before signing this Agreement. The Executive acknowledges that he has carefully read and understands the contents of this Agreement, that he has had ample opportunity to review this Agreement with his financial or legal advisors (if he chose to do so), and that he executed this Agreement of his own free will. The Executive further acknowledges that he has received and reviewed the attached Appendix A which contains information the Company is legally required to provide the Executive in order to obtain a release of any rights or claims he may have under ADEA.

10. <u>Time for Execution/Right to Revoke</u>. The Executive hereby acknowledges that after receiving this Agreement, he will have forty-five (45) days to consider signing this Agreement. If he elects not to take forty-five (45) days to sign this Agreement, the Executive acknowledges that the period of time used by him prior to signing this Agreement was ample time to consider and review this Agreement. The Executive further acknowledges that he will have seven (7) days from the date this Agreement is signed by him to revoke this Agreement by advising the Company in writing of such revocation. If the Agreement is not revoked within seven (7) days from the date this Agreement is signed by the Executive, this Agreement will become effective and enforceable as to all parties on the eighth (8th) day following the date of the Executive's execution of this Agreement.

11. <u>Remedies</u>. The Executive understands and acknowledges that a breach of the provisions of this Agreement would injure the Company Group irreparably in a way which could not be adequately compensated for by damages. The Executive therefore agrees that in the event a court of competent jurisdiction determines that the Executive has breached any of the provisions of this Agreement (other than a challenge by the Executive of the validity of his waiver of age discrimination claims under this Agreement), the Company will be entitled to an injunction, without bond, restraining such breach, as well as costs and attorneys' fees relating to any such proceeding or any other legal action to enforce this Agreement. Nothing herein will be construed, however, as prohibiting the Company from pursuing other available remedies or recovering on any claim for damages for such breach or threatened breach.

12. <u>Applicable Law</u>. This Agreement will be deemed to have been made under and will be interpreted, construed and enforced in accordance with the laws of the State of Connecticut, without regard to its conflicts of law provisions.

000079

13. <u>Severability</u>. If any provision of this Agreement is deemed invalid or unenforceable, the validity of the other provisions of this Agreement will not be impaired. If any provision of this Agreement will be deemed invalid as to its scope, then notwithstanding such invalidity, that provision will be deemed valid to the fullest extent permitted by law.

14. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained herein and supersedes any and all prior and contemporaneous written or oral agreements, representations and understandings of the parties.

15. <u>Successors and Assigns</u>. This Agreement is binding upon and will inure to the benefit of the Executive, the Company and the Company Group, as well as the Company's successors and assigns.

16. <u>Counterparts</u>. This Agreement may be executed by one or more of the parties hereto on any number of separate counterparts and all of the counterparts taken together will be deemed to constitute one and the same instrument.

Executed and presented for consideration to Gil Linder by BYK Chemie USA Inc. this ___ day of February, 2002.

**BYK CHEMIE USA INC.**

By: _____

Name: Dr. Klaus Oehmichen
Title: Member of the Board


**For BYK-CHEMIE GMBH**

By: _____

Name: Dr. Roland Peter
Title: Chairman of the Board Additives Division


Agreed to and accepted:

_____        3-28-02
Gil Linder                              Date

000080

-5-

## APPENDIX A

### Data Pertaining to Release of Rights and Claims under the Age Discrimination in Employment Act

Because other employees are being offered agreements similar to the one the Executive is being offered, the Company is required to advise the Executive of the following:

1) All top management-level executives of the Company were eligible to be selected for this termination program. All persons who are being terminated as a result of the restructuring of the Company's management structure were selected for this termination program.

2) All persons who are being offered consideration under a Settlement and Release Agreement must sign the agreement and return it to the Company within forty-five (45) days after receiving it. Once the signed waiver is returned to the Company, the employee has seven (7) days to revoke the Agreement.

3) The ages and positions of the Company's employees who were selected for termination and the offer of consideration for signing a waiver are:

   President, age 53

   Vice President Finance, age 56

4) There are no eligible employees who were not selected for this termination program.

000081

## CERTIFICATION

      This is to certify that a copy of the foregoing was served via first-class mail, postage prepaid this 21st day of December, 2005, to:

Charles F. Corcoran, III, Esq.  
Carmody & Torrance LLP  
195 Church Street  
P.O. Box 1950  
New Haven, Connecticut 06509-1950

Michael G. Monnolly, Esquire  
Alston & Bird, LLP  
One Atlantic Center  
1201 West Peachtree Street  
Atlanta, GA 30309-3424

_____  
Dominic Fulco III

16822.000/400969.1