### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| **GILBERT E. LINDER,** | : CIVIL ACTION NO. 02-CV-1956(JGM) |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **BYK-CHEMIE USA, INC., in its** | : |
| **Capacity as Plan Sponsor of the** | : |
| **RETIREMENT PLAN OF BYK-CHEMIE** | : |
| **USA INC., and the SUPPLEMENTAL** | : |
| **RETIREMENT PLAN OF BYK-** | : |
| **CHEMIE USA INC.,** | : |
| | : |
| **Defendants.** | : **JANUARY 13, 2006** |

### REPLY MEMORANDUM IN FURTHER SUPPORT OF
### DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The following undisputed facts have emerged from the extensive briefing on the cross

motions for summary judgment and these undisputed facts require judgment in Defendants'

favor:

- The stock option plan is an employee benefit plan that is sponsored by the Company.

    Compensation expense attributable to employee benefit plans sponsored by the company

    is expressly excluded from "Earnings" under the Retirement Plan and SERP.

- Income from the exercise of stock options has never been included in calculating benefits

    under the SERP and Retirement Plan or in determining the Company's funding

    obligations under the Retirement Plan.

- The Company never intended income from the exercise of stock options to be included in

    the definition of Compensation under the SERP or the Retirement Plan.

- Under industry custom and practice, stock option income is generally not considered as compensation for purposes of calculating pension benefits under defined benefit plans.

- Plaintiff was specifically aware that stock option income had not been included in his pension estimate and that this issue was unresolved at the time he executed the Release.

- Plaintiff received consideration in exchange for signing the Release which exceeds the value of the benefits sought here.

- Plaintiff is a sophisticated business person, and former fiduciary of the Retirement Plan, who personally negotiated the terms of the Release.

In his response to Defendants' Second Motion for Summary Judgment, Plaintiff offers a number of arguments against dismissal, none of which withstand scrutiny and all of which are addressed herein.

## I.     PLAINTIFF HAS FAILED TO OVERCOME HIS RELEASE OF CLAIMS AND COVENANT NOT TO SUE.

The Second Circuit and this Court have repeatedly identified the factors applicable to the enforceability of a release of claims under ERISA.  E.g., Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan, 935 F.2d 1360, 1368 (2d Cir. 1991); Walker v. Asea Brown Boveri, Inc., 214 F.R.D. 58, 65-66 (D. Conn. 2003).  Although the absence of any one factor is not dispositive, id., Defendants demonstrated in their moving brief that *all* of these factors support enforcement of the Release.  (Def. Mem. pp. 12-19.)  But Plaintiff does not even attempt to address these factors.

### A.  Plaintiff's "Waiver" Argument (Pl. Resp. pp. 2-5) is Misplaced.

Plaintiff's first contention is that Defendants "waived" their right to enforce the Release by not asserting it in its denial during the administrative claims process.  See 29 U.S.C. § 1133. But Plaintiff has argued (successfully) throughout this action that he is entitled to *de novo*

judicial resolution of his claims for pension and supplemental retirement income benefits *because there was no administrative decision.* Linder v. BYK-Chemie USA Inc., 313 F. Supp. 2d 88, 92 (D. Conn. 2004) ("Here it is undisputed that Linder submitted a formal claim for benefits on May 29, 2002 . . . and that the Committee to date had not issued a decision on Linder's claim"). See also id. at 93 ("Linder filed suit on November 4, 2002, well over 90 days after his claim for benefits was filed, having received no written decision from the Committee"). Under these circumstances, the courts have held that the *de novo* standard of review applies because there is no administrative decision or developed administrative record to review. Nichols v. Prudential Ins. Co., 406 F.3d 98, 109 (2d Cir. 2005). Because there is no administrative decision (or record) the Court starts with a clean slate, unrestricted by administrative review and considers all admissible evidence and arguments without regard to the administrative claim process. See Locher v. UNUM Life Ins. Co., 389 F.3d 288, 293-94 (2d Cir. 2004); DeFelice v. Am. Int'l Life Assurance Co., 112 F.3d 61, 65-66 (2d Cir. 1997); Sheehan v. Metro Life Ins. Co., 368 F. Supp. 2d 228, 253-54 (S.D.N.Y. 2005).

Indeed, to accept Plaintiff's argument would be to conclude that any time a plan fails to provide administrative review the plan administrator automatically forfeits all defenses and confesses judgment in favor of a benefits claimant. Neither the Second Circuit, nor any other court, has ever reached such an extraordinary conclusion and it is contrary to the regulations applied by this Court in its prior decision. 313 F. Supp. at 393-94 (interpreting 29 C.F.R. § 2560.503-1).[1] In short, Plaintiff cannot argue that he is entitled to skip the administrative claim

---

[1]    The Regulation states that, if the plan administrator fails to respond, the claimant is free to bring suit without exhausting the claim procedures and will not be subject to the abuse of discretion standard of review. The Regulation does *not* say that the plan administrator cannot introduce evidence or arguments not introduced in the (nonexistent) claim process.

procedure and go straight to court, and then argue that the Defendant is estopped from contesting his claim in court because it was not permitted to do so in the administrative process.

For similar reasons, Plaintiff's reliance on Lauder v. First UNUM Life Ins. Co., 284 F.3d 375 (2d Cir. 2002) and Spann v. AOL Time Warner, Inc., 219 F.R.D. 307 (S.D.N.Y. 2003) is entirely misplaced. Unlike this case, both Lauder and Spann involved judicial review of a completed administrative process. In the Second Circuit (and virtually all others), judicial review of a completed administrative process is limited to the materials and information contained in the administrative record. See Locher, 389 F.3d at 293-94; Zervos v. Verizon N.Y., Inc., 277 F.3d 635, 646 (2d Cir. 2002). Accordingly, it was appropriate and unsurprising that the Lauder and Spann courts concluded that evidence and arguments outside the administrative record should be excluded from the record on review. That rule is inapplicable here because, as this Court has previously held, no administrative record or decision exists.

Finally, Lauder involved a disability insurance claim against an insurance company defendant and, therefore, the Second Circuit properly looked to insurance law for guidance on the waiver issue. Lauder, 284 F.3d at 380. This case, by fundamental contrast, does not involve insurance coverage nor is any insurance company a defendant, and ERISA's well developed body of law on judicial review of benefit claims controls, not insurance law. Plaintiff's "waiver" contentions are therefore devoid of merit.

### B. Plaintiff Released His Claims Against *All* Defendants (Pl. Resp. pp. 5-6).

Plaintiff next contends that the Release is not enforceable because it names BYK-Chemie USA Inc. "and its affiliates," but does not explicitly name the Retirement Plan or SERP. As a threshold matter, and as the caption Plaintiff himself placed upon this action reveals, Plaintiff *has*

sued BYK-Chemie to compel the payment of benefits under the terms of the Plans in direct

violation of the Release.  That disposes of Plaintiff's self-contradictory argument.

Moreover, the scope of the release is not as narrow as Plaintiff characterizes it.  By

executing the Release, Plaintiff has not just released claims against BYK-Chemie; instead, he

released all "claims arising under or in any way connected with his employment with the

Company or the termination of such employment."  (DApx Tab 16, Ex. C at ¶ 4.)  He also

promised "not to bring any administrative or legal action arising out of his employment by the

Company."  (Id. at ¶ 10.)  Claims for benefits from a company-sponsored benefit plan are

considered claims arising out of or connected with the claimant's employment.  Piehl v. Metro.

Life Ins. Co., No. 03-669-MO, 2005 WL 627586, at *2-*3 (D. Or. March 16, 2005).

Finally, even if it were not clear from its caption alone that this action is a suit

against BYK-Chemie, Plaintiff's claims are still directed against BYK-Chemie, and are only

nominally against the Retirement Plan and SERP.  As Defendants explained in their moving

brief (Def. Mem. at 4-5), the SERP is a "Top Hat" plan.  Top Hat plans are required by law to be

unfunded, and thus the plan sponsor is obligated to pay the claims under the SERP from its

general assets.  29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1); (DApx Tab __, § 6.1).  As the

Fifth Circuit has noted, in an unfunded plan, the entity from which the employer really seeks

recovery is the employer.  Slaughter v. AT&T Information Systems, Inc., 905 F.2d 92, 94 (5th

Cir. 1990) ("Thus, the Plan is to be treated merely as a nominal defendant because any amount

paid by the Plan is actually paid by the employer.  Indeed, it is the employer that is the actual

party at interest."); Bordonardo v. Union Carbide Corp., 2002 WL 32824 (E.D. La. Jan. 11,

2002) ("Union Carbide Corporation and the [unfunded] plan are actually the same entity, and

should be considered as much in interpreting a release agreement. Therefore, under the release

agreement the discharge of Union Carbide Corporation also discharged the Union Carbide Long Term Disability Plan.").

It is uncontroverted that the SERP is a top-hat plan which is funded exclusively from the employer's general assets. (DApx Tab 6, § 6.01, "The amounts provided by this Plan shall be paid from each Employer's general assets . . . "). Thus, Plaintiff's claim against the SERP is a claim directly against the general assets of the Defendants because the SERP, by law, has no assets. Indeed, a judgment against the SERP would be worthless to Plaintiff since the SERP has no assets. That is precisely why Plaintiff (a former plan fiduciary) has sued BYK-Chemie.

Finally, an employer sponsoring a pension plan subject to Title I of ERISA, such as the Retirement Plan, is required by law to fund the plan. 29 U.S.C. § 1082(b). Funding for the Retirement Plan has never taken into account the proceeds from stock options,[2] so if Plaintiff were to obtain any recovery against the Retirement Plan, it will be left to BYK-Chemie to pay those funds into the Retirement Plan. Because Plaintiff has released all claims against BYK-Chemie, he has released his claims against the Retirement Plan and the SERP.

### C. ERISA's Anti-Alienation Provision Does Not Bar a Release of Claims (Pl. Resp. pp. 7-8).

Plaintiff next argues that ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), the anti-alienation provision, bars the release of his claims. As an initial matter, Plaintiff's argument is clearly contrary to binding Second Circuit authority, which explicitly recognizes that "claims for allegedly accrued ERISA benefits are waivable." Yablon v. Strook & Strook & Lavan Ret. Plan & Trust, 98 Fed. Appx. 55, 56 (2d Cir. 2004). See also Finz v. Schlesinger, 957 F.2d 78, 82 (2d Cir. 1992) ("an individual can waive his or her right to participate in a pension plan governed by ERISA"); Laniok, 935 F.2d at 1364 ("we have found no provision, and the parties have

---

[2]     See DApx Tab 14 ¶ 7.

ATL01/12114773v4

identified none, generally prohibiting an individual from waiving his right to participate in a pension plan").[3]

Moreover, Plaintiff's argument is also contrary to the plain reading of ERISA § 206(d)(1), which provides that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." The applicable regulations define "assignment" and "alienation" as "[a]ny direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary." 26 C.F.R. § 1.401(a)-13(c)(1)(ii) (1992). "The terms 'alienation' and 'assignment' are meant only to cover those arrangements that generate a right enforceable against a plan." Guidry v. Sheet Metal Workers Nat'l Pension Fund, 39 F.3d 1078, 1082-83 (10th Cir. 1994).

Many courts have expressly rejected the notion that § 206(d)(1) limits the ability of participants and fiduciaries to settle disputed pension claims. E.g., Rhoads v. Casey, 196 F.3d 592, 599-600 (5th Cir. 1999)( "courts will not ascribe to Congress the intent of making unreasonable law-one requiring terminal litigation rather than settlements as does the general law, and therefore the apparent statutory bar against alienation of pension benefits should yield to reason and allow benefits to be voluntarily waived for settlement purposes."); Lumpkin v. Envirodyne Indus., Inc., 933 F.2d 449, 455 (7th Cir. 1991); Auslander v. Helfand, 988 F. Supp. 576, 580 (D. Md. 1997); Krackow v. Dr. Jack Hern Profit Sharing Plan, No. 00-CV-2550-NGRLM, 2002 WL 31409362, at *6 (E.D.N.Y. May 29, 2002) ("the anti-alienation and anti-

---

[3]    Plaintiff's entire "anti-alienation" argument is based upon a false premise, i.e., that he lost benefits under the Retirement Plan and SERP by executing the Release. As set forth in Defendants' moving papers, Plaintiff has received exactly what he is entitled to under those Plans.

assignment provisions are designed to prevent a plan participant from dissipating his benefits before retirement, not to bar an agreement by the employee with the employer to forego benefits or to waive a claim for benefits").

Here, the Release is devoid of any language which can even remotely be construed as granting Defendants a right to receive Plaintiff's accrued benefit under the Retirement Plan or the SERP. By its very terms, the Agreement merely provides that Plaintiff agrees to waive any and all claims against Defendants arising from his employment, including the claim he asserts here. As such, the Release is not an "assignment or alienation" and is not proscribed by ERISA §206(d)(1). E.g., Rhoads, 196 F.3d at 599-600; Lumpkin, 933 F.2d at 455; Auslander, 988 F. Supp. at 580.

Finally, and contrary to Plaintiff's suggestion, Lynn v. CSX Transp., Inc., 84 F.3d 970 (7th Cir. 1996), does not hold that all releases are invalid under ERISA §206(d)(1). Rather, Lynn holds that "contested claims" for pension benefits are not subject to ERISA's anti-alienation provision. Id. at 975-76. The court defined a "contested claim" as any claim that the participant had "actual or constructive knowledge" of at the time the settlement was reached, "[w]hether the parties actually wrangled over a particular claim is not determinative. What matters is whether claimant knew of the claim and knowingly relinquished it (relinquishment of course including failure to act or raise the issue at all)." Id. at 975.

In Lynn the court found that the plaintiff had waived her claim because, when she signed the release, she knew there was a question as to whether a prior payment would be included in earnings for purposes of her pension calculation. The court found that her failure to "include it in the release . . . constituted a knowing waiver of that claim." Id. at 976. In the case *sub judice*, it is uncontroverted that Plaintiff was aware at the time he signed the Release that stock option

income had not been included in his pension calculation and the issue remained open. (DApx Tab 2 at pp. 41-42; Tab 16, Ex. A at p. 2.) As in Lynn, his failure to preserve this claim in the Release constituted a knowing and voluntary waiver of his claim.

Plaintiff's reliance on Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust, 191 F. Supp. 2d 223 (D. Mass. 2002), is also misplaced. The Laurenzano court's discussion of the anti-alienation provision was not pivotal to its decision. Instead, the court merely noted that "tension" may exist between "the body of federal common law that allows waivers" and the anti-alienation provision, and considered this "tension" a factor in concluding that non-party class members had not released the claims at issue. 191 F. Supp. 2d at 228, 233. Second, if Laurenzano could be read (as Plaintiff advocates) to recognize a bar on the release or waiver of pension or supplemental retirement benefit claims under the anti-alienation provisions, then this decision runs afoul of the law of its own Circuit as well as the Second Circuit, both of which clearly authorize the waiver and release of pension claims. See, e.g., Yablon, 98 Fed. Appx. at 56; Marais v. Cent. Beverage Corp. Union Employees' Supplemental Ret. Plan, 167 F.3d 709, 712-13 & nn. 5, 12 (1st Cir. 1999); Laniok, 935 F.2d at 1365.

Finally, the Court should disregard Plaintiff's subjective and conclusory averment, relegated to a footnote, that the Release is not enforceable because he did not "intend" to release the claims asserted in this action. (Pl. Resp. p. 6 n.4.) See Danzer v. Norden Sys., Inc., 151 F.3d 50, 57 n.5 (2d Cir. 1998) (non-movant's conclusory affidavit is "insufficient to defeat a motion for summary judgment"); Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 724 (7th Cir. 1998) ("self-serving affidavits without factual support in the record will not defeat a motion for summary judgment") (citations, quotation marks, and brackets omitted). "If the parties intended to leave some things out of a general release, then their intent to do so should be

made manifest." <u>Overberg v. Lusby</u>, 727 F. Supp. 1091, 1093 (E.D. Ky. 1990) (internal quote marks and citations omitted).  Moreover, the Release itself, containing a handwritten modification doubling Plaintiff's time to exercise stock options, confirms that Plaintiff (a highly-credentialed, experienced business person and employee benefits professional) knew how to – but did not – reserve any right that he was otherwise waiving by executing the Release. Plaintiff's "argument here amounts to nothing more than a claim of subjective misunderstanding, which, standing alone, will not defeat an otherwise valid release" and is contradicted by the undisputed facts.  <u>Howell v. Motorola, Inc.</u>, No. 03-C-5044, 2005 WL 2420410, at *6 (N.D. Ill. Sept. 30, 2005).

## II. PLAINTIFF'S PLAN INTERPRETATION CONTENTIONS FAIL.

As set forth more fully in Defendants' moving papers, both the SERP and the Retirement Plan specifically exclude "the Employer's cost for any public or private employee benefit plan" from the definition of Compensation. (DApx Tab 3 at § 1.16.) It is uncontroverted that the stock options were granted and paid under an employee benefit plan that is sponsored and funded by Defendants and that the income to Plaintiff resulted in a cost to the Company.  (*See* DApx Tabs 9-10; Tab 13.)  Tellingly, Plaintiff makes no effort whatsoever to explain why this unambiguous exclusion does not apply to the stock option income.  Even if the Stock Option Plan could somehow be deemed not to be an "employee benefit plan," it is clearly a fringe benefit excludable from "Earnings."  <u>Id.</u>  Accordingly, Defendants are entitled to judgment in their favor.  <u>Kaltman-Glasel v. Dooley</u>, 228 F. Supp. 2d 101, 110 n.10 (D. Conn. 2002) (failure to respond to argument in defendant's summary judgment motion may constitute waiver).

### A. Stock Options are Not "Special Pay" (Pl. Resp. pp. 8-9).

Plaintiff contends that Defendants have "ignored" "special pay" in their analysis of "Compensation," and that "special pay" encompasses stock options. Plaintiff is wrong. As explained in the Second Declaration of Carol Foley and Defendants' Response to Plaintiff's summary judgment motion (Def. Resp. p. 10), stock options have never been treated as "special pay." (DApx Tab 21, Foley Decl. at ¶ 4.) Indeed, BYK-Chemie has never categorized *any* compensation paid to employees as "special pay." (Id.) Moreover, even if the stock option income could be characterized as "special pay," it would plainly fall within the exclusion for employee benefit plans, fringe benefits, or both, and would be excluded. (See DApx Tab 3, § 1.16.) Again, Plaintiff fails completely to address this point; thus mandating judgment in Defendants' favor.

### B. Defendants Have Previously Defeated All of Plaintiff's Plan Interpretation Arguments (Pl. Resp. pp. 9-13).

Plaintiff next launches a barrage of insubstantial arguments seeking to challenge the legal authority proffered in Defendants' motion. First, the distinctions Plaintiff posits between this case and the Second Circuit's decision in O'Neil v. Ret. Plan, 37 F.3d 55 (2d Cir. 1994), are insignificant. Even though O'Neil applied the arbitrary and capricious standard on appeal, it affirmed the district court's judgment – under the *de novo* standard of review – rejecting claims virtually identical to those asserted in this action. Additionally, even if some of the considerations weighed in O'Neil are inapposite here, O'Neil is the only controlling authority concerning the issues at hand. Plaintiff's effort to avoid this decision is understandable, but misplaced.

So too is Plaintiff's attempt to distinguish O'Neil because "the SERP is a non-qualified plan under I.R.C. § 401(a) whereas the plan in O'Neil was a qualified plan." (Pl. Resp. p. 10.) It

is undisputed that the SERP adopts and applies the exact same definition of "Earnings" that appears in the Retirement Plan, thus, it matters not one iota whether the SERP is a qualified or non-qualified plan.

Second, the Supreme Court's so-called "extremely inclusive reading of compensation" in Comm. v. Smith, 324 U.S. 177 (1945) is irrelevant. Not only does Smith predate the promulgation of ERISA, but it merely stands for the unremarkable proposition that stock option proceeds are taxable income. Smith sheds no light on the issue at hand – whether such proceeds constitute "Compensation" under the respective Plans – and there is no dispute that Plaintiff's stock option income was taxable. As to the issue at hand, the IRS has clearly pronounced that the compensation taken into account when determining maximum benefits allowable under qualified pension plans *excludes* stock option proceeds. Treas. Reg. § 1.415-2 (d)(3)(ii). See also Scipio v. United Nat. Bankshares, Inc., 284 F. Supp. 2d 411, 422-24 (N.D. W. Va. 2003) (applying this regulation to uphold the exclusion of stock options from "earnings"), aff'd, 119 Fed. Appx. 431 (4th Cir. Dec. 22, 2004).

Third, as Defendants have previously noted, cases such as Adams v. La.-Pac. Corp., 284 F. Supp. 2d 331 (W.D.N.C. 2003) and Dicioccio v. Duquesne Light Co., 911 F. Supp. 880 (W.D. Pa. 1995), are inapposite because the plan interpretation issues turned on language expressly including all earnings reported on an IRS Form W-2, historical inclusion of stock option proceeds in pension calculations, or evidence of employer intent to include these proceeds. Not only are these critical facts and plan provisions *absent* from the instant case, but all the evidence in this case leads to a completely opposite conclusion. Plaintiff inadvertently underscores this point, arguing that "given the unique nature of each pension plan, this Court cannot be guided strictly by decisions of other courts construing other plans." (Pl. Resp. p. 13.) The Plans here, of

course, are broadly *excessive* when it comes to defining "Earnings" (excluding "employee benefit plan" and "fringe benefit" income among other categories), not broadly inclusive like the plans in Adams and Dicioccio.

### III. PLAINTIFF'S CRITICISMS OF THE BAUER AND SHELDON DECLARATIONS AND THE SYCH AFFIDAVIT ARE UNAVAILING.

The Court should either disregard or overrule Plaintiff's challenges to the Declarations of Jörg Bauer and Barbara Sheldon and the Affidavit of Richard Sych. As Defendants noted in their moving brief, the clear terms of the Release and the plain language of the Retirement Plan and SERP foreclose the inclusion of stock option proceeds in Plaintiff's pension calculations. Thus, the Court need not resort to Defendants' extrinsic evidence to dismiss this action.

If the Court decides to consider the extrinsic evidence, however, the Bauer and Sheldon Declarations and the Sych Affidavit withstand Plaintiff's challenges. Mr. Bauer states in the very first paragraph of his Declaration that he makes all statements in his Declaration on his own personal knowledge. (DApx Tab 4 at ¶ 1.) Contrary to Plaintiff's accusation, Mr. Bauer does not make *any* statement "on information and belief." Cf. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988) (affidavit given "on personal knowledge *or* information and belief" was insufficient where there was "no way to ascertain which portions . . . "were based on personal knowledge, as opposed to information and belief").[4] Thus Mr. Bauer's Declaration satisfies the requirements of Rule 56(e).

Even if it were not clear from the face of his Declaration that he is testifying based on his own personal knowledge, Mr. Bauer's Declaration is in the nature of testimony of a corporate

---

[4]    Plaintiff also suggests that Mr. Bauer's Declaration is insufficient because it does not detail Mr. Bauer's roles with the company ten and twenty years ago. (Pl. Resp. at 16.) This suggestion is a red herring because, as Plaintiff well knows, the Altana Stock Option Plan was not established until *1999.* (DApx Tab 9 at p. BYK 00248.)

representative pursuant to Federal Rule 30(b)(6). A Rule 30(b)(6) witness may testify as to matters within the witness' personal knowledge *and* "as to matters known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6); <u>PPM Finance, Inc. v. Norandal USA, Inc.</u>, 392 F.3d 889, 894 (7th Cir. 2004). Had Plaintiff chosen to depose a Rule 30(b)(6) representative (Plaintiff chose not to), Defendants would have designated Mr. Bauer to give a deposition in that capacity.

Plaintiff's "relevancy" criticisms to the Bauer and Sheldon Declarations and the Sych Affidavit are likewise misplaced. Plaintiff apparently views as irrelevant any evidence that is damaging to his case. Plaintiff does not contend that Mr. Bauer is unable (as a corporate representative or otherwise) to offer testimony consistent with his Declaration. <u>Cf. Santos v. Murdock</u>, 243 F.3d 681, 683-84 (2d Cir. 2001) (affidavit was insufficient because it contained no "implicit or explicit showing that the affiant is prepared to testify in a manner consistent with his affidavit").[5] Similarly, Plaintiff does not challenge Mr. Sych's or Ms. Sheldon's experience and knowledge as actuaries, nor does he question their ability to testify as to the customs and practices of pension actuaries. The industry practice of excluding stock option proceeds bears directly on the intent of the parties with respect to the Plans and Plaintiff has failed to offer *any* factual or expert evidence in opposition to Mr. Sych or Ms. Sheldon, or to indicate a contrary intent by the settlors of the Retirement Plan and SERP.

Plaintiff's footnoted request for additional discovery should also be rejected. Plaintiff had every opportunity to undertake discovery in this action, including deposing witnesses who supplied affidavits and declarations as well as other witnesses. Plaintiff chose to take only one

---

[5] Moreover, Plaintiff "waived any objection to the [Bauer or Sheldon Declarations or the Sych Affidavit] by failing to move to strike" them. <u>In re Teletronics Servs., Inc.</u>, 762 F.2d 185, 192 (2d Cir. 1985).

deposition (that of Ms. Foley), but he is now improperly attempting, under the guise of

challenging the admissibility of parts of the Bauer Declaration, to cross-examine Mr. Bauer and

impugn his credibility.[6]  Plaintiff's thinly-veiled efforts should fail.[7]

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in Defendants' moving brief and

Response to Plaintiff's summary judgment motion, the Court should grant summary judgment in

favor of Defendants as to all Counts in the Complaint.

Respectfully submitted on January 13, 2006,

THE DEFENDANTS,

BY: _____

CHARLES F. CORCORAN, III
FOR:  Carmody & Torrance LLP
195 Church Street, P.O. Box 1950
New Haven, CT 06509-1950
(203) 777-5501
Federal Bar No. ct04299

Gregory C. Braden
Michael G. Monnolly
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

---

[6]     Of course, it is well settled that courts may not evaluate or even consider witness
credibility on summary judgment.  Jeffreys v. City of N.Y., 426 F.3d 549, 553-54 (2d Cir. 2005).
[7]     Plaintiff's election to conduct only limited discovery also undermines his eleventh-hour
request, tucked into a footnote, for additional discovery pursuant to Rule 56(f) (misidentified as
"56(e)," and in any event not remotely compliant with Rule 56(f)).

{N0741221}- 15 -

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on

January 13, 2006, to:

    Lawrence H. Lissitzyn, Esq. , Dominic Fulco, III
    Todd S. Federico, Robert B. Huff
    Reid and Riege PC
    One Financial Plaza
    755 Main Street
    Hartford, CT  06103-3185

                          Charles F. Corcoran, III