UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GILBERT E. LINDER, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 02-CV-1956 (JGM) |
| v. | : | |
| BYK-CHEMIE USA INC., in its capacity as Plan Sponsor of the RETIREMENT PLAN OF BYK-CHEMIE USA INC., and the SUPPLEMENTAL RETIREMENT PLAN OF BYK-CHEMIE USA INC., | : | |
| Defendants. | : | JANUARY 13, 2006 |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 7(d) of the Local Rules of Federal Rule of Civil Procedure, Plaintiff Gilbert E. Linder ("Plaintiff") hereby files this memorandum in reply to Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (the "Defendants' Opposition").[1]

### I. INTRODUCTION

In the Defendants' Opposition, the Defendants begin by stating that there are no disputed facts and that what is before this Court is a "simple question of the interpretation" of the plans in issue, the Retirement Plan of BYK-Chemie USA, Inc. (the "Plan") and the Supplemental Retirement Plan of BYK-Chemie USA, Inc. (the "SERP") (collectively, the Plan and SERP are referred to as the "Plans"). If that is the case (and Plaintiff agrees that this case boils down to a matter of interpretation of the Plans) then, as a matter of law, extrinsic evidence should not be considered by the Court. However, the Defendants take an inconsistent position with their

---

[1] Plaintiff has moved for partial summary judgment and the Defendants' Opposition was submitted in opposition to the Plaintiff's Memorandum of Law In Support of Plaintiff's Motion for Partial Summary Judgment (the "Plaintiff's First

16822.000/402464.1

statement by attempting to place before this Court a second Declaration of Carol Foley (the "Second Foley Declaration"). This Court should not consider the Second Foley Affidavit since, as the Defendants put it, the Plans are not ambiguous and the Court need only examine the "plain language" of the Plans.[2]

The Defendants, in advancing their argument that "Compensation" does not include compensation from the stock option plan of BYK, would have this Court ignore two important terms in the Plans: "bonuses" and "special pay". As discussed below, this Court cannot disregard the terms used by the drafters. When the plain meaning of those terms is considered, the only logical conclusion that can be reached is that the Plaintiff's stock option compensation falls within either the term "bonuses" or "special pay".

## II. ARGUMENT

### A. Stock Option Compensation Constitutes Either "Bonuses" or "Special Pay"

It is a cardinal principle of contract construction that when a court interprets a contract, every provision must be given effect if it can be reasonably done, because parties do not insert meaningless provisions in a contract. See Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212 (1995); State of New York v. Oneida Indian Nation of New York, 90 F.3d 58 (2d. Cir.1996); Delahunty v. Morgan Stanley Dean Witter, 56 F. Supp. 2d 231 (D.Conn. 1999). Thus, in interpreting the meaning of "Compensation" under the Plans, the Court must give effect to the

---

Memorandum"). In addition, the Defendants have moved for summary judgment (for a second time) and Plaintiff filed a memorandum in opposition dated December 21, 2005 (the "Plaintiff's Opposition Memorandum").

[2] Should the Court find that an ambiguity exists, then the doctrine of contra proferendum would apply and the ambiguity would be construed against Defendants. See Plaintiff's First Memorandum, p. 10-11.

2

16822.000/402464.1

terms "bonuses" and "special pay".[3] Neither of those terms is defined in the Plan, both of which were drafted by the sponsor (or its counsel). See Plaintiff's Rule 56(a)(i) Statement, ¶13 and Defendant's response.

When the plain meaning of both of those terms is examined, the only logical conclusion is that stock option compensation comes within the meaning of one or both of those terms. Webster's New Collegiate Dictionary defines "bonus" as follows:

> **2(b): money or an equivalent given in addition to an employee's usual compensation: (c) a premium (as of stock) given by a corporation to a purchaser of its securities, to a promoter, or to an employee (emphasis added).**

It cannot be rationally disputed that stock option compensation paid to the Plaintiff as an employee of BYK comes within the dictionary definition of "bonus". Here, Plaintiff received a premium of BYK's stock as an employee of BYK. This should be the end of the analysis by the Court. However, if the alternative dictionary definition is applied, the same result is achieved. Indisputably, Plaintiff received money or an equivalent in addition to his usual compensation in the form of the stock option compensation. For obvious reasons, the Defendants' tortured interpretation of "bonus" does not square with the dictionary definition. If this Court does apply the plain, dictionary meaning of the term bonus, it should conclude that stock option compensation received by the Plaintiff comes within the term "bonuses" as that term is used in the definition of Compensation.[4]

---

[3] As set forth in Plaintiff's First Memorandum (at p. 13-14), the stock option compensation also fits with the undefined term "regular remuneration" as used in the definition of "Compensation" in the Plans.

[4] Defendant's characterization of the Plaintiff's testimony is wrong. Plaintiff did not make a statement in his deposition that he did not consider his stock option compensation to be a bonus under the meaning of the Plans.

For the same reason, stock option compensation fits within the definition of "special pay". Webster's New Collegiate Dictionary defines "special" as: "being other than the usual: additional, extra". Webster's New Collegiate Dictionary defines "pay" as "to make due return for services rendered". Using the plain meaning of these words, stock option compensation is "special pay" provided by BYK to the Plaintiff. Indisputably, Plaintiff received the stock options as additional or extra compensation in return for services rendered. Thus, "Compensation" as used in the Plan and SERP clearly includes stock option compensation under the term "special pay".

Defendants attempt to use the self-serving Second Foley Declaration to get around the plain meaning of "bonuses" and "special pay". By the admission of the Defendants, this Court should examine only the provisions of the Plans without resorting to extrinsic evidence. The reason that this Court should confine its examination to the terms of the Plans is that, before this Court may consider extrinsic evidence, it must first find an ambiguity in the Plan and SERP. See Curry Road Ltd. v. Kmart Corp., 893 F.2d 509, 511 (2d Cir. 1990) (only when contract is ambiguous may court turn to extrinsic evidence of intent); Duse v. International Business Machines Corp., 252 F.3d 151-158 (2d Cir. 2001) (whether contract is ambiguous is question of law for the court). As Defendants agree, no such ambiguity exists. Thus, the Second Foley Declaration should not be considered by this Court.

If the Court does consider the Second Foley Declaration, it should not accord it any weight. That document contains certain inaccuracies and omissions which make it unreliable and create issues of fact. First, Ms. Foley does not have the background to opine about the administration of the Plans. See Affidavit of Gilbert Linder dated January 13, 2006 filed with this reply (the "Linder Affidavit"). Second, BYK did not, on a day-to-day basis, administer the Plans. Id. That

4

administration was handled by Altana. Id. Moreover, Mr. Linder was the first instance where a BYK executive exercised stock options. Thus, Mr. Linder was the first instance where BYK had to deal with stock option compensation under the Plan. Id.

Ironically, there are certain statements in the Second Foley Declaration actually support Plaintiff's position. First, Ms. Foley states that BYK has never used the "special pay" category. Admittedly, BYK has chosen to ignore the term special pay within the definition of "Compensation" as used in the Plans. Upon an examination of the plain meaning of "special pay", it is obvious why BYK has chosen to ignore that term and never use that category. However, as discussed above, in interpreting the Plans this Court cannot disregard the term under a cardinal principle of contract interpretation. Moreover, Ms. Foley states that, for purposes of W-2 reporting, BYK considered the stock option compensation as "miscellaneous pay". Logically, "miscellaneous pay" sounds like and looks like "special pay". Conveniently, BYK chose not to use the term special pay, as discussed above, in applying the terms of the Plans. Instead, it made up another category to avoid including stock option compensation in the calculation of Plaintiff's benefits under the Plans. This Court should not allow such gerrymandering by the Defendants.

### B.    Stock Option Compensation Is Not A "Fringe Benefit"

To avoid liability here, Defendants seek to put a round peg in a square hole by claiming that stock option compensation falls under the term "fringe benefits". First, as discussed above, stock option compensation falls squarely within the meaning of "bonuses" or "special pay" without the need for distorting the meaning of those terms.

16822.000/402464.1

Second, there are several decisions where courts have determined that stock option compensation is not a "fringe benefit" within the ERISA context. <u>See</u> Plaintiff's Opposition Memorandum, p. 10-12.

Third, the dictionary definition of fringe benefit does not support Defendants' interpretation. Webster's defines fringe benefit as:

> An employment benefit (as a pension, a paid holiday, a health insurance) granted by an employer that involves a money cost without affecting basic wage rates.

Stock option compensation is not a benefit like a pension, paid holiday or health insurance. The dictionary definition and common sense support that view.[5] Stock option compensation is, by definition, either a bonus or special pay.

### C. **Defendants' Reliance on the O'Neil Decision is Misplaced**

Defendants place great stock in the <u>O'Neil</u> decision, in support of their argument that stock option compensation should not be included in the calculation of Plaintiff's benefits. However, there is a significant difference between the facts before the <u>O'Neil</u> court and those before this Court. In <u>O'Neil</u>, the committee that administered the retirement plans met and rendered a decision regarding the interpretation of the plan at issue in that case. The committee in <u>O'Neil</u> made significant findings after reviewing the intent, history and prior interpretations of those plans. As such, the Second Circuit had an administrative record before it, and it gave great deference to the committee's decision. Here, in response to Plaintiff's claim, the committee in charge of the administration of the Plans never met and never rendered a decision. Rather, the committee ignored Plaintiff's claim. Since the committee administering the Plans never followed the

16822.000/402464.1

administrative process, there is no administrative record for this Court to review. Accordingly, this Court must conduct a de novo review and interpret the Plans, in accordance with the plain meaning of their terms. When it does so, it should find in favor of the Plaintiff.

### D. The Amendments to the Plan Are Admissible in Support of Plaintiff's Claims

The April 24, 2002 amendments to the Plans are admissible under Fed.R.Evid., Rule 407 because they do not prove, nor even suggest, negligence or culpable conduct by the Defendants. Rule 407, whose actual text the Defendants conveniently fail to cite, provides:

> When, after an *injury or harm* allegedly caused by an *event,* measures are taken that, if taken previously, would have made the *injury or harm* less likely to occur, evidence of the subsequent measures is not admissible to prove *negligence, culpable conduct,* a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule *does not require the exclusion* of evidence of subsequent measures *when offered for another purpose*, such as proving ownership, control, or feasibility or precautionary measures, if controverted, or impeachment.

(emphasis added). By its plain terms, Rule 407 refers to "injuries" caused by "events" occasioned by "negligence." It is wholly inapplicable to the present situation- which involves merely the question of how to interpret a written agreement.

Outside of the products liability realm, Rule 407 narrowly prohibits the introduction of evidence of subsequent remedial measures only when it is offered to prove "negligence" or other "culpable conduct." See e.g. R.W. Murray Co. v. Shatterproof Glass Corp., ("Shatterproof") 758 F.2d 266, 274 (8th Cir. 1985) ("Rule 407 is, by its terms, confined to cases involving negligence or other culpable conduct."), Herndon v. Seven Bar Flying Service, Inc., 716 F.2d 1322, 1331 (10th Cir. 1983) ("[W]here there is any reason for use of the evidence other than to establish the

---

[5] The Plan itself gives examples of fringe benefits: auto allowances and group term life insurance. Those examples are akin to the fringe benefit examples given in the Webster's definition.

16822.000/402464.1

defendant's negligence, Rule 407 should not apply.") Rule 407 states several exceptions for the admission of evidence, including: to prove ownership, control, and feasibility of precautionary measures. However, this list of exceptions is non-exhaustive. Werner v. Upjohn Co., 628 F.2d 848, 856 (4th Cir. 1980).

Since negligence is not an issue in this case, the Defendants seem to suggest that the 2002 amendments are being offered to prove "culpable conduct." Black's Law Dictionary defines "culpable" as "guilty, blameworthy" or "involving the breach of a duty." (7th Ed. 1999) "Culpable conduct normally involves something more than simple negligence and implies conduct which is blameworthy; censurable; involving the breach of a legal duty or the commission of a fault. . ." Werner, 628 F.2d 848, 856-7. Therefore, "culpable conduct" requires the breach of some positive legal duty. In Shatterproof, the defendant sold windows to a builder which had defective water-tight seals. In a breach of warranty action against defendant, the Eighth Circuit allowed evidence that the defendant subsequently changed the method by which it sealed its windows. The court allowed the evidence because there is no issue of faulty or blameworthy conduct in a breach of warranty action. Shatterproof, 758 F.2d 266, 274; see also Ault v. International Harvester Co., 528 P.2d 1148, 1150 (Cal. 1975) (Culpable conduct is not present in a strict liability case because the defendant's conduct is not an issue).

In the present case, there is similarly no "culpable conduct" for which any evidence might be relevant. Mr. Linder does not argue that the Defendants are at fault, but merely that their interpretation of the Plans is incorrect. Just as the Shatterproof court found that Rule 407 does not apply to a breach of contract case, so should the Court here find that Rule 407 does not apply to the interpretation of an ERISA plan.

16822.000/402464.1

The Defendants cite a number of cases to support their contention that revisions to a legal document might constitute subsequent remedial measures. These cases are irrelevant, however, because the documents at issue in those cases were all in violation of positive federal statutory provisions. <u>Malone v. Microdyne Corp.</u> was a Rule 10b-5 securities fraud case; 26 F.3d 471 (4th Cir. 1994); <u>Noble v. McClatchy Newspapers</u> involved a violation of Section 1 of the Sherman Act; 533 F.2d 1081 (9th Cir. 1976); and <u>R.M. Perlman, Inc. v. New York Coat, Suit Dresses, Rainwear & Allied Workers' Union Local 89-22-1</u> involved a labor contract which violated the National Labor Relations Act. 33 F.3d 145 (2nd Cir. 1994). Because these cases all involved violations of federal law, the conduct at issue was self-evidently "culpable." Here, however, there is no violation of any law. Mr. Linder only asserts that the Plans mean something different than what the Defendants assert. Rule 407 does not apply because there is no culpable conduct to which any evidence might be relevant.

Moreover, the amendments are admissible because there is no policy justification for excluding them. Stating the policy behind Rule 407, the Second Circuit has said: "Rule 407 is prompted by the fear that people will be less likely to take subsequent remedial measures if evidence of their repairs or improvements may be used against them in lawsuits arising out of prior accidents." <u>Cann v. Ford Motor Co.</u>, 658 F.2d 54, 60 (2nd Cir. 1981). Counterbalanced with this concern is "the desirability not only of encouraging safety improvements but also of permitting the finder of fact. . .to consider probative evidence. . ." <u>Traylor v. Husqvarna Motor</u>, 988 F.2d 729, 733 (7th Cir. 1993). In this case there was no improvement, repair, or gain for society which came from the Defendant's amendment of the Plans. There was merely a change in the wording in two employee benefit plans. There is, however, significant probative value to allowing the admission of

16822.000/402464.1

the amendments. Since there is no policy reason to exclude the amendments, Rule 407 does not apply.

Defendants claim that the amendments were undertaken only to "clarify" the Plans. The self-serving "clarification" language in the amendments is a failed effort by Defendants to camouflage the impact of the amendments. The term "Compensation" was amended after Plaintiff lodged his claim to include stock option compensation in the calculation of his benefits under the Plans. Clearly, the exclusory amendment was made because a plain reading of the Plans (prior to their amendment) leads to the conclusion that stock option compensation falls within the term "Compensation" as "bonuses" or "special pay".

## II. CONCLUSION

For the reasons set forth in this memorandum, in Plaintiff's First Memorandum, and in Plaintiff's Opposition Memorandum, this Court should deny Defendants' Motion for Summary Judgment and grant Plaintiff's Motion for Partial Summary Judgment.

PLAINTIFF, GILBERT E. LINDER

By: _____
Dominic Fulco III (ct06494)
Reid and Riege, P.C.
One Financial Plaza 21st Floor
Hartford, CT 06103
Tel: (860) 278-1150
Fax: (860) 240-1002
dfulco@reidandriege.com
His Attorney

16822.000/402464.1

## CERTIFICATION

      This is to certify that a copy of the foregoing was served via first-class mail, postage prepaid this 13th day of January, 2006, to:

| | |
|---|---|
| Charles F. Corcoran, III, Esq.<br>Carmody & Torrance LLP<br>195 Church Street<br>P.O. Box 1950<br>New Haven, Connecticut 06509-1950 | Michael G. Monnolly, Esquire<br>Alston & Bird, LLP<br>One Atlantic Center<br>1201 West Peachtree Street<br>Atlanta, GA 30309-3424 |

                                                    _/s/ Dominic Fulco III_____
                                                  Dominic Fulco III

16822.000/402464.1