IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
                        :

GILBERT E. LINDER            :       3:02 CV 1956 (JGM)
                        :
v.                            :
                        :
                        :
BYK-CHEMIE USA, INC., in its Capacity :
as Plan Sponsor of the RETIREMENT   :
PLAN OF BYK-CHEMIE USA, INC. and   :
the SUPPLEMENTAL RETIREMENT     :
PLAN OF BYK-CHEMIE USA, INC.      :
                        :       DATE: MARCH 10, 2006
---------------------------------------------------------x

<u>RULING ON DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

      Plaintiff, Gilbert E. Linder, commenced this action against defendants Byk-Chemie

USA, Inc. [or "BYK-Chemie"], in its capacity as Plan Sponsor of the Retirement Plan of Byk-

Chemie USA, Inc. ["Retirement Plan"], and the Supplemental Retirement Plan of Byk-Chemie

USA, Inc. ["SERP"] on November 4, 2002.  (Dkt. #1).  In his two count Complaint, plaintiff

alleges violations of the Employee Retirement Income Security Act of 1974 ["ERISA"], as

amended, resulting from plaintiff's participation in two pensions plans: namely, violations of

29 U.S.C. § 1132(a)(1)(B) as against the Retirement Plan and 29 U.S.C. § 1132(a)(1)(B) as

against the SERP.  (<u>Id.</u>).  On May 23, 2003, defendants filed their first Motion for Summary

Judgment (Dkts. ##18-19), which Motion was denied by United States District Judge Janet

Bond Arterton on March 16, 2004 (Dkt. #29).  Defendants filed their Answer on July 26, 2005

(Dkt. #52; <u>see also</u> Dkts. ##50-51).

      Judge Arterton referred this case to this Magistrate Judge on March 16, 2004 and one

month later, on April 22, 2004, the parties consented to the jurisdiction of this Magistrate

Judge.  (Dkts. ##31-32).

      On November 8, 2005, defendants filed their Second Motion for Summary Judgment

with brief and Local Rule 56(a)1 Statement.  (Dkts. ##59-61).[1]  The next day, plaintiff filed

his Motion for Partial Summary Judgment with brief and Local Rule 56(a)1 Statement in

support.  (Dkts. ##56-58).[2]  On December 21, 2005, defendants filed their brief in opposition,

Local Rule 56(a)2 Statement and additional exhibit (Dkts. ##64-65 & 69;[3] see Dkts. ##62-63)

and plaintiff filed his brief in opposition with affidavit and Local Rule 56(a)2 Statement (Dkts.

---

[1]Attached to defendants' brief (Dkt. #61) are the following twenty exhibits: copy of ALTANA
excerpts of the 2002 Form 20-F/A (Registration Statement) filed with the SEC ["2002 Form 20-F/A"]
(Exh. 1); copy of deposition of plaintiff taken October 25, 2005 ["Plaintiff's 10/25/05 Depo."](Exh. 2);
copy of the Retirement Plan, amended and restated January 1, 2001 ["Retirement Plan"](Exh. 3);
copy of Declaration of Jöerg Bauer, sworn to November 4, 2005 ["Bauer Decl."](Exh. 4); copy of
letter from Carol Foley to plaintiff, dated May 8, 2002 (Exh. 5); copy of the SERP (Exh. 6); copy of
cover letter dated May 31, 1994 and copy of 1994 Unanimous Consent of Directors ["5/31/94 Letter"
& "Unanimous Consent of Directors"](Exh. 7); copy of e-mail correspondence from Dr. Paul Reuter
to Saul Ben-Meyer, dated April 24, 2002 (Exh. 8); copy of ALTANA Stock Option Plan 2000 (Exh.
9); copy of calculation sheet of exercise of plaintiff's stock options (Exh. 10); copy of e-mail
correspondence from plaintiff to Carol Foley, dated November 21, 2001 ["11/21/01 E-mail"](Exh.
11); copy of e-mail correspondence from Art Dulik to plaintiff, dated January 29, 2002 ["1/29/02 E-
mail"](Exh. 12); copy of Declaration of Dr. Paul Reuter, sworn to November 4, 2005 ["Reuter
Decl."](Exh. 13); copy of affidavit of Richard S. Sych, sworn to November 3, 2005 (Exh. 14); copy of
Declaration of Barbara H. Sheldon, sworn to November 2, 2005 ["Sheldon Decl."](Exh. 15), with
copy of memorandum, dated August 21, 2002 ["8/21/02 Memo."](Exh. 15A); copy of Declaration of
Carol Foley, sworn to November 2, 2005 ["Foley Decl."](Exh. 16), with copy of correspondence,
dated March 13, 2002 and plaintiff's Estimated Pension Calculator (Exh. 16A), fax copy of March
13, 2002 letter ["3/13/02 Letter"] and copy of e-mail correspondence, dated April 19, 2002 (Exh.
16B), and copy of Agreement and Release, dated March 28, 2002 ["Agreement & Release"](Exh.
16C); copy of letter from plaintiff to Roland Peter, dated May 29, 2002 (Exh. 17); copy of e-mail
correspondence from Carol Foley to plaintiff, dated April 25, 2002 (Exh. 18); copy of deposition of
plaintiff, taken April 11, 2003 ["Plaintiff's 4/11/03 Depo."](Exh. 19); and copy of letter from Richard
S. Sych to Carol Foley, dated March 8, 2002 ["3/8/02 Letter"](Exh. 20).

[2]Plaintiff filed his Appendix of Exhibits to his brief in support (Dkt. #58-2), which includes the
following seventeen exhibits: copy of letter from plaintiff to Dr. Roland Peter, dated May 29, 2002
and copies of exercised stock options for 1999 and 2001 (Exh. 1); copy of affidavit of plaintiff, sworn
to November 7, 2005 ["Plaintiff's 11/7/05 Aff't"](Exh. 2); another copy of the Retirement Plan (Exh.
3); another copy of SERP (Exh. 4); copy of First Amendment to the Retirement Plan ["First
Amendment"](Exh. 5); another copy of 11/21/01 E-mail (Exh. 6); another copy of e-mail from Carol
Foley to plaintiff, dated April 25, 2002 (Exh. 7); copy of excerpts from the 1999-2004 Annual
Reports of ALTANA (Exhs. 8-13); copy of ALTANA Stock Option Plan 1999 (Exh. 14) another copy
of ALTANA Stock Option Plan 2000 (Exh. 15);  copy of ALTANA Stock Option Plan 2001 (Exh. 16);
and copy of 2001 Form 1040 for plaintiff and copy of plaintiff's pay stub, dated October 2001 (Exh.
17).

[3]Dkt. #69 is defendants' Exhibit 21, a copy of declaration of Carol Foley, sworn to
December 20, 2005.

##66-68).[4]  On January 13, 2006, plaintiff filed his reply brief (Dkt. #73;[5] see Dkts. ##70-71) and four days later, defendants filed their reply brief (Dkt. #77; see Dkts. ##72, 74).

For the reasons stated below, defendants' Second Motion for Summary Judgment (Dkt. #59) is granted in part and plaintiff's Motion for Partial Summary Judgment (Dkt. #56) is denied without prejudice as moot.

## I. FACTUAL SUMMARY

The following factual summary is drawn from defendants' Local Rule 56(a)1 Statement of Facts, filed November 8, 2005 (Dkt. #60)["Defendants' 56(a)1 Statement"], plaintiff's Local Rule 56(a)2 Statement of Facts, filed December 21, 2005 (Dkt. #68) ["Plaintiff's 56(a)2 Statement"], plaintiff's Local Rule 56(a)1 Statement of Facts, filed November 9, 2005 (Dkt. #57)["Plaintiff's 56(a)1 Statement"], and defendants' Local Rule 56(a)2 Statement of Facts, filed December 21, 2005 (Dkt. #64)["Defendants' 56(a)2 Statement"] and the accompanying affidavits, depositions and exhibits. Such factual summary, therefore, does not represent factual findings of the Court.

Plaintiff was employed by BYK-Chemie USA, Inc. for twenty-one years; his employment terminated January 31, 2002 in connection with BYK-Chemie's corporate reorganization.  (Plaintiff's Local Rule 56(a)1 Statement ¶¶ 1 & 3; Defendants' Local Rule 56(a)2 Statement ¶¶ 1 & 3; Plaintiff's 11/7/05 Aff't ¶ 4).  During most of his twenty-one year tenure as an officer of BYK-Chemie, plaintiff was a member of the Retirement Plan Administrative Committee, a three member fiduciary body which has the primary responsibility for administering the Retirement Plan.  (Defendants' 56(a)1 Statement ¶ 1; Plaintiff's Local Rule 56(a)2 Statement ¶ 1; Plaintiff's 10/25/05 Depo., at 12-13; see also

_____

[4]Dkt. #67 is an affidavit of plaintiff, sworn to December 18, 2005 ["Plaintiff's 12/18/05 Aff't"] with another copy of the Agreement & Release attached as Exh. A.

[5]Attached to Dkt. #73 is an affidavit of plaintiff, sworn to January 13, 2006.

Plaintiff's Local Rule 56(a)1 Statement ¶ 3; Defendants' Local Rule 56(a)2 Statement ¶ 3; Plaintiff's 11/7/05 Aff't ¶ 4).[6]  Plaintiff was a participant in the Retirement Plan and in the SERP.  (Defendants' 56(a)1 Statement ¶ 2; Plaintiff's Local Rule 56(a)2 Statement ¶ 2).  At no time did plaintiff ever draft any document forming any part of the Retirement Plan or the SERP, nor was he consulted in the preparation of the text of any document relating to either plan.  (Plaintiff's Local Rule 56(a)1 Statement ¶ 7; Defendants' Local Rule 56(a)2 Statement ¶ 7; Plaintiff's 11/7/05 Aff't  ¶ 8).

In early March 2002, plaintiff was given a copy of the Agreement & Release, under which plaintiff had forty-five days to review the terms of the release and seven days after executing the release to revoke his election.  (Defendants' 56(a)1 Statement ¶ 3; Plaintiff's Local Rule 56(a)2 Statement ¶ 3; Foley Decl. ¶ 3; Agreement & Release).  Plaintiff signed the Agreement & Release on or about March 28, 2002.  (Defendants' 56(a)1 Statement ¶ 4; Plaintiff's Local Rule 56(a)2 Statement ¶ 4; Agreement & Release).  Prior to signing the Agreement & Release, plaintiff was aware that the issue was unresolved of whether income derived from the exercise of stock options under the Altana Stock Option Plan ["SOP"] was included in the definition of "Compensation" under the Retirement Plan and in the SERP. (Defendants' 56(a)1 Statement ¶ 5; Plaintiff's Local Rule 56(a)2 Statement ¶ 5; Sheldon Decl. ¶¶ 5-6; 8/21/02 Memo.; 11/21/01 E-mail; 1/29/02 E-mail; Plaintiff's 10/25/05 Depo., at

_____

[6]Plaintiff contends that although he was a fiduciary under the Retirement Plan, whether he "suffered from a conflict of interest" precluding him from participating in any determination or decision that impacted or affected his entitlement to benefits under the Retirement Plan is a legal conclusion to be determined by the Court.  (Defendants' 56(a)1 Statement ¶ 8; Plaintiff's Local Rule 56(a)2 Statement ¶ 8; see Plaintiff's10/25/05 Depo., at 34; 1/29/02 E-mail; Retirement Plan at § 9.1.2).

Moreover, although plaintiff is aware that Arthur Dulik, the Vice President and Treasurer of Altana, Inc., held stock options and that Dulik was a participant in a defined benefit plan with identical terms, plaintiff similarly denies that Dulik suffered from the conflict of interest addressed above. (Defendants' 56(a)1 Statement ¶ 9; Plaintiff's Local Rule 56(a)2 Statement ¶ 9; see Plaintiff's 10/25/05 Depo., at 40-41; Reuter Decl. ¶ 3).

41-42).  According to the January 1, 2002 Summary Plan Description for the Retirement

Plan, the term "compensation" means:

> . . . . your earnings from the Employer, including salary, bonuses, overtime and special pay, or amounts that you defer pursuant to a salary deferral election under a 401(k) plan or cafeteria plan or for certain transportation fringe benefits (e.g., transit passes or qualified parking).  Compensation does not include the value of any fringe benefits, including but not limited to auto allowances, group insurance and equity-based compensation, provided by the Employer.  For plan years after December 31, 2001, Compensation shall not exceed $200,000 in any calendar years as adjusted for cost-of-living increases in accordance with the Internal Revenue Code.

(Plaintiff's Local Rule 56(a)1 Statement ¶ 4; Defendants' Local Rule 56(a)2 Statement ¶ 4).[7]

"Compensation" is defined in Section 1.10 of the Retirement Plan as

> the regular remuneration actually paid or accrued by the Employer to or for the benefit of an employee during the period of reference, including, . . . any bonuses and pay for overtime or special pay, and excluding the Employer's cost for any public or private employee benefit plan, including the Plan; provided, however, that any compensation which is deferred by an employee pursuant to a plan or arrangement qualified . . . shall be regarded as Compensation for purposes of this Plan.  Compensation shall not include the value of any fringe benefits provided by the Employer, including, but not limited to, auto allowances and group term life insurance. . . .

(Plaintiff's Local Rule 56(a)1 Statement ¶ 5; Defendants' Local Rule 56(a)2 Statement ¶ 5[8];

Retirement Plan at § 1.10; see Plaintiff's Local Rule 56(a)1 Statement ¶ 8(c)).

The First Amendment to the Retirement Plan "amend[ed] the [Retirement] Plan to

---

[7]Local Rule 56(a)3 requires that

> Each statement of material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. . . .

Plaintiff fails to cite the underlying evidence, and the 2002 Summary Plan Description is not attached as an exhibit.  Additionally, although plaintiff cites his affidavit at page 2, such citation does not substantiate the origin of this quoted language. (See Plaintiff's 11/7/05 Aff't).

[8]Defendants contends that "[p]laintiff was only subject to this definition of Compensation from the date upon which the restated Retirement Plan went into effect, which was January 1, 2001."

clarify the definition of 'Compensation' . . . by adding the following clause" to the above-referenced language, excluding from "compensation":

> . . . any income or gain realized in connection with the exercise of stock options, stock appreciation rights or other equity-based incentive awards granted by the Company or an Affiliate or any income realized upon the purchase at a discount of stock or other equity securities of the Company or an Affiliate.

(Plaintiff's Local Rule 56(a)1 Statement ¶ 6;[9] Defendants' Local Rule 56(a)2 Statement ¶ 6; First Amendment).

The term "Compensation" is given the same meaning in the SERP as it is in the Retirement Plan.  (Plaintiff's Local Rule 56(a)1 Statement ¶¶ 9(b) & 10; Defendants' Local Rule 56(a)2 Statement ¶¶ 9-10; see SERP § 2.03).  However, unlike the Retirement Plan, "Compensation" for the purposes of the SERP includes

> salary, bonus or other compensation that the Company would otherwise have paid to a Participant but for the Participant's election to defer the receipt of such salary, bonus or other compensation pursuant to a Company sponsored deferred compensation program. . . .

(Plaintiff's Local Rule 56(a)1 Statement ¶ 10; Defendants' Local Rule 56(a)2 Statement ¶ 10; SERP at § 2.03).  The SERP was adopted by the Board of Directors of Altana, Inc., effective May 27, 1994 as a non-qualified supplemental retirement plan for certain executives of its BYK-Chemie USA Division.  The intent of the Plan was to replace pension benefits lost under the tax qualified pension plan for employees of the BYK-Chemie USA Division due to the reduction in the compensation limit under Code 401(a)(17) which became effective January 1, 1994.  However, no formal Plan document was prepared at the time of adoption of the SERP.  (Plaintiff's Local Rule 56(a)1 Statement ¶ 11; Defendants' Local Rule 56(a)2

---

[9] Plaintiff erroneously has included two paragraphs 6.  The Court, to the extent necessary, will refer to the first number 6 as it does here and the second as "duplicative" 6 in the same manner as defendants. (See Plaintiff's Local Rule 56(a)1 Statement ¶¶ 6 & Duplicative 6; Defendants' Local Rule 56(a)2 Statement ¶¶ 6 & Duplicative 6).

Statement ¶ 11; SERP at § 1.01).  All of the documents relating to the formation of the Retirement Plan and the SERP were prepared by BYK-Chemie's attorneys and/or actuaries. (Plaintiff's Local Rule 56(a)1 Statement ¶ 13; Defendants' Local Rule 56(a)2 Statement ¶ 13; Plaintiff's Aff't, 11/7/05  ¶ 7).[10]

Two weeks before he signed the Agreement & Release, plaintiff was specifically advised that the income derived from exercising his stock options in 2001 was not going to be included in his pension calculation.  (Defendants' 56(a)1 Statement ¶ 6; Plaintiff's Local Rule 56(a)2 Statement ¶ 6; 3/13/02 Letter).  Plaintiff received consideration in exchange for releasing certain employment claims against BYK-Chemie USA., Inc.  (Defendants' 56(a)1 Statement ¶ 7; Plaintiff's Local Rule 56(a)2 Statement ¶ 7; 3/8/02 Letter; Agreement & Release ¶ 3; Plaintiff's 10/25/05 Depo., at 22).

The cost of providing stock options under the SOP constitutes an expense by the Employer for an employee benefit plan because upon exercising such options, the Company incurs an expense and a charge against earnings that is equal to the value of the options exercised.  (Defendants' 56(a)1 Statement ¶ 12; Plaintiff's Local Rule 56(a)2 Statement ¶ 12; 2002 Form 20-F/A at F-22 to F-29).  The Retirement Plan provides for benefit accruals based upon an employee's compensation and years of service with BYK-Chemie.  (Defendants' 56(a)1 Statement ¶ 13; Plaintiff's Local Rule 56(a)2 Statement ¶ 13; Retirement Plan at § 5.1; Bauer Decl. ¶ 3).  The SERP provides the exact same benefits as are provided under the Retirement Plan, calculated in the same way, except the SERP benefits are not subject

---

[10]Plaintiff has attached the annual reports of Altana AG for the years 1999-2004.  (Plaintiff's Local Rule 56(a)1 Statement ¶¶ 14 & 18-19 & Exhs. 8-13; Defendants' Local Rule 56(a)2 Statement ¶¶ 14 & 18-19).

The Altana Annual Report for 1999 reads: "The Managing Board and Supervisory Board intend to launch more Stock Option Plans over the coming years."  (Plaintiff's Local Rule 56(a)1 Statement ¶ 16 & Exh. 8; Defendants' Local Rule 56(a)2 Statement ¶ 16).

to the compensation limits under tax laws. (Defendants' 56(a)1 Statement ¶ 14; Plaintiff's Local Rule 56(a)2 Statement ¶ 14; Bauer Decl. ¶ 4; 5/31/94 Letter & 1994 Unanimous Consent of Directors). The SERP provides that the term "'Compensation' shall . . . have the same meaning given such term in the Pension Plan." (Defendants' 56(a)1 Statement ¶ 15; Plaintiff's Local Rule 56(a)2 Statement ¶ 15; SERP at § 2.03).

## II. DISCUSSION

The standard for summary judgment is well established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "When both parties have moved for summary judgment, [the court] consider[s] each motion separately, resolving all ambiguities and drawing all inferences from the record in favor of the party against whom summary judgment is sought." I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Eng'rs Council Ins. Trust Fund, 136 F.3d 114, 119 (2d Cir. 1998)(internal quotations and citation omitted). Upon motion, following adequate time for discovery, Rule 56(c) requires that summary judgment be entered against a party

> who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." FED. R. CIV. P. 56(c). "On summary judgment the inferences to be drawn from the underlying facts contained in the [the moving

party's] materials must be viewed in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970), quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "If reasonable minds could differ as to the import of the evidence, . . . the moving party simply cannot obtain summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)(citations & internal quotation marks omitted). Thus, the party moving for summary judgment must "carry its burden of showing the absence of any genuine issue of fact." Adickes, 398 U.S. at 153.

### A. DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

Defendants contend that plaintiff's claims fail because he knowingly and voluntarily signed a valid release and covenant not to sue, which release is recognized by the Second Circuit (Dkt. #61, at 11-19); and the proceeds from the exercise of stock options are not included in "Compensation" for purposes of calculating plaintiff's pension and supplemental retirement income (id. at 19-28).

In opposition, plaintiff argues that defendants have waived any defense of release by failing to raise that defense at the administrative proceeding stage (Dkt. #66, at 2-5); alternatively, according to plaintiff, the agreement did not release the Retirement Plan or the SERP and, therefore plaintiff's claims in this action are not barred (id. at 5-6); the Anti-Alienation provision in ERISA and the SERP void any release of plaintiff's claims (id. at 7-8); defendants have ignored the term "Special Pay" in their analysis of compensation (id. at 8-9); defendants' construction of "Compensation" is wrong (id. at 9-13); and the Bauer and Sheldon Declarations and the Sych Affidavit are not admissible and should not be considered by the Court (id. at 13-17).

Defendants counter that plaintiff's waiver argument is misplaced (Dkt. #77, at 2-4); plaintiff released his claims against all defendants (id. at 4-6)(emphasis in original); ERISA's

Anti-Alienation provision does not bar a release of claims (id. at 6-10); stock options are not "Special Pay" (id. at 11); defendants have previously defeated all of plaintiff's plan interpretation arguments (id. at 11-13); and plaintiff's criticisms of the Bauer and Sheldon Declarations and the Sych Affidavit are unavailing. (Id. at 13-15).

## 1. WAIVER OF DEFENSE

Plaintiff contends that by failing to raise the defense of waiver and release during an administrative review process, defendants have waived that defense and cannot assert it as a bar to plaintiff's claims in this action. (Dkt. #66, at 2). In response, defendants assert that because plaintiff argued successfully for a de novo review of his claims, in that there was no administrative decision, see Linder v. BYK-Chemie USA, Inc., 313 F. Supp. 2d 88, 92 (D. Conn. 2004), the Court "starts with a clean slate, unrestricted by administrative review and considers all admissible evidence and arguments without regard to the administrative claim process." (Dkt. #77, at 3)(multiple citations omitted).

On March 15, 2004, Judge Arterton denied defendants' first Motion for Summary Judgment (Dkt. #29), 313 F. Supp. 2d at 94, in which Ruling Judge Arterton found that plaintiff submitted a formal claim for benefits to the Administrative Committee of the Retirement Plan on May 29, 2002 (at 92), the Committee had not issued a decision on plaintiff's claim as of the date of her Ruling (id.), and plaintiff was deemed to have exhausted his administrative remedies under the plans and could proceed with his claims before this Court (at 94). Accordingly, plaintiff contends, defendants were aware of the existence of the waiver defense in May 2002, at the time of plaintiff's formal claim, but chose not to raise the defense during the administrative process. (Dkt. #66, at 3). The administrative claim procedure in this case, however, was not completed and, as this Court has previously held, there is no administrative record or decision. By failing to provide administrative review of

10

plaintiff's claim, defendants have not forfeited all defenses.

In Lauder v. First Unum Life Ins. Co., 284 F.3d 375, 381 (2d Cir. 2002), the Second Circuit acknowledged that the application of waiver in ERISA cases has largely been left open by other circuits, but then clarified that the determination of a waiver of a defense in an ERISA case may only be addressed by way of a "case-by-case analysis." In Lauder, the Second Circuit held that where the court was undertaking a judicial review of a completed administrative process, a known defense to an ERISA claim can be waived where the defense is not raised at the administrative review level.  See 284 F.3d at 381-82[11]; see also Spann v. AOL Time Warner, Inc., 219 F.R.D. 307, 317-19 (S.D.N.Y. 2003).  Such conclusion is in accord with the widely followed principle that when a district court undertakes a de novo review, it is limited to the materials and information contained in the administrative record. Krizek v. Cigna Group Ins., 345 F.3d 91, 97-98 (2d Cir. 2003); Zervos v. Verizon N.Y., Inc., 277 F.3d 635, 646 (2d Cir. 2002); Spann, 219 F.R.D. at 317-18.

In this case, as stated above, Judge Arterton concluded that as of March 15, 2004, the date of her ruling on defendants' first Motion for Summary Judgment, the Administrative Committee of the Retirement Plan had not issued a decision on plaintiff's claim; the administrative process was not complete.  313 F. Supp. 2d at 94.  It is impossible to limit this Court's review to the administrative record to the exclusion of any claims or defenses that could have been made, as no record exists.

---

[11]To decide whether a defense has been waived, the Second Circuit examines if finding a waiver would "create coverage where none would otherwise exist."  Lauder, 284 F.3d at 381.  This is not an issue in this case as the parties agree that plaintiff is entitled to his benefits under the Retirement Plan and the SERP; the calculation of those benefits is in dispute.

Additionally, the Second Circuit recognized that courts should not require administrators to "imagine every conceivable basis" for the denial of a claim, as permitting a waiver under such circumstances would turn "ERISA notices into 'meaningless catalogs' of all possible bases for denial."  Id. at 382.  Again this is a non-issue in this case as the Plan administrators did not complete the administrative process.

## 2. AGREEMENT & RELEASE

On or about March 28, 2002, plaintiff executed an Agreement and Release in connection with his separation of his employment from BYK-Chemie USA, Inc. (Agreement & Release; Foley Decl. ¶ 5; Plaintiff's 12/18/05 Aff't). The first paragraph of the Agreement and Release provides:

> In consideration of the payments and benefits described herein, Gil Linder (the "Executive") is entering into this Agreement and Release . . . for the benefit of BYK Chemie USA Inc. (the "Company"), its affiliates and the respective shareholders, officers, directors, employees, agents, successors and assigns of the Company and its affiliates (together with the Company, the "Company Group").

(Agreement & Release at 1). The Agreement and Release provides:

> The Executive hereby fully and forever releases the Company Group from any and all claims, causes of action and charges, of whatever kind or nature, whether known or unknown, which he now or hereafter may have against any member of the Company Group, including, but not limited to, claims arising under or in any way connected with his employment with the Company or the termination of such employment.
>
> . . . .
>
> The Executive further agrees, to the extent permitted by law, not to bring any administrative or legal action arising out of his employment by the Company or the rights released under this Agreement. . . .

(At ¶ 4).

### a. KNOWING AND VOLUNTARY WAIVER

There is no provision in ERISA generally prohibiting an individual from waiving his right to participate in an ERISA benefits plan and the Second Circuit has held that the absence of such a provision is not inconsistent with the stated purpose of ERISA, that is "to protect . . . the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans. . . ." Laniok v. Advisory Comm. of Brainerd Manuf. Co. Pension Plan, 935 F.2d 1360, 1364-65 (2d Cir. 1991), quoting 29 U.S.C.

§ 1001(c).[12]  Additionally, the United States Supreme Court has held that the conditioning additional benefits or early retirement incentives upon the voluntary waiver of claims against an employer is not prohibited by Section 406(a)(1)(D) of ERISA.  Lockheed Corp. v. Spink, 517 U.S. 882, 894-95 (1996).  That notwithstanding, "[b]ecause individuals waiving pension benefits claims are relinquishing [rights] that ERISA indicates a strong congressional purpose of preserving," Finz v. Schlesinger, 957 F.2d 78, 81 (2d Cir.)(citation and internal quotations omitted), cert. denied, 506 U.S. 822 (1992),"a beneficiary's waiver of a claim to benefits under ERISA is subject to closer scrutiny than a waiver of general contract claims."  Spann, 219 F.R.D. at 317, citing Yak v. Bank Brussels Lambert, BBL, 252 F.3d 127, 131 (2d Cir. 2001).  See also Finz, 957 F.2d at 81.  To determine if a beneficiary has released his claims under ERISA, the Court must consider "whether, in the totality of the circumstances, the individual's waiver of his right can be characterized as knowing and voluntary. " Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 231 (2d Cir. 1995)(internal quotations and citations omitted).

The following factors, identified by the Second Circuit, are "useful in determining whether the totality of the circumstances" indicates that a release of an ERISA claim was knowing and voluntary:

> 1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, [as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so] and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

Laniok, 935 F.2d at 1367-68 (citation omitted).  Accordingly, a "fact-specific inquiry" is "necessary to determine whether . . . [plaintiff] knowingly and voluntarily waived [his] rights to

---

[12]Although defendant cites Yablon v. Stroock & Stroock & Lavan Retirement Plan and Trust, 98 Fed. Appx. 55 (2d Cir. 2004), such case may not be cited as precedential authority.

13

pension benefits" under the Retirement Plan and the SERP.   Walker v. Asea Brown Boveri, Inc., 214 F.R.D. 58, 65 (D. Conn. 2003).  Defendants, as the parties asserting the affirmative defense of release of ERISA claims, "bear the burden of proving that the elements of release are satisfied." Martino-Catt v. E.I. duPont de Nemours & Co., 317 F. Supp. 2d 914, 922 (S.D. Iowa 2004)(multiple citations omitted).

Plaintiff holds a bachelor's degree in business administration from Lehigh University and an MBA from American University.  (Plaintiff's 4/11/03 Depo., at 5).  Before working for BYK-Chemie USA, Inc., plaintiff spent several years working in the accounting and corporate budgeting departments of several corporations.  (Id. at 5-6).  Over the past twenty years, plaintiff worked as a corporate controller for BYK-Chemie and later assumed the title of vice president of finance, at which time plaintiff assumed responsibility for the employee benefit plans in the role of administrator.  (Id. at 6-21).  During most of his tenure as an officer of BYK-Chemie, plaintiff was a member of the Retirement Plan Administrative Committee, a three member fiduciary body which has the primary responsibility for administering the Retirement Plan. (Defendants' 56(a)1 Statement ¶ 1; Plaintiff's Local Rule 56(a)2 Statement ¶ 1; Plaintiff's 10/25/05 Depo., at 12-13; Plaintiff's Local Rule 56(a)1 Statement ¶ 3; Defendants' Local Rule 56(a)2 Statement ¶ 3; Plaintiff Aff't ¶ 4 ).  Plaintiff was a participant in the Retirement Plan and in the SERP and served as a fiduciary under the Retirement Plan. (Defendants' 56(a)1 Statement ¶¶ 2 & 8; Plaintiff's Local Rule 56(a)2 Statement ¶¶ 2 & 8; see Plaintiff's 10/25/05 Depo., at 34; 1/29/02 E-mail; Retirement Plan at § 9.1.2).  Plaintiff's extensive business experience and involvement in the Retirement Plan weigh heavily in favor of finding that plaintiff was fully aware of the implications of executing the Agreement & Release.

In early March 2002, plaintiff was given a copy of the Agreement & Release, under

which plaintiff had forty-five days to review the terms of the release, and then seven days after executing the release to revoke his election. (Defendants' 56(a)1 Statement ¶ 3; Plaintiff's Local Rule 56(a)2 Statement ¶ 3; Foley Decl. ¶ 3; Agreement & Release). Plaintiff signed the Agreement & Release on or about March 28, 2002. (Defendants' 56(a)1 Statement ¶ 4; Plaintiff's Local Rule 56(a)2 Statement ¶ 4; Agreement & Release). Prior to signing the Agreement & Release, plaintiff was aware that the issue was unresolved of whether income derived from the exercise of stock options under the Altana SOP was included in the definition of "Compensation" under the Retirement Plan and under the SERP. (Defendants' 56(a)1 Statement ¶ 5; Plaintiff's Local Rule 56(a)2 Statement ¶ 5; Sheldon Decl. ¶¶ 5-6; 8/21/02 Memo.; 11/21/01 E-mail; 1/29/02 E-mail; Plaintiff's 10/25/05 Depo., at 41-42). The Agreement & Release also included a provision advising plaintiff to consult with attorneys and financial advisors of his choosing prior to signing the agreement. (Agreement & Release at ¶ 9). In light of plaintiff's knowledge concerning the Retirement Plan and the SERP, the forty-five day time period during which plaintiff could review the terms, the seven day period to rescind his election, and the explicit advisement to consult with counsel and plaintiff's financial advisor(s), plaintiff cannot contend that he did not have adequate time to review the Agreement & Release or an opportunity to seek outside advice. Accordingly, these factors also weigh in favor of defendants.

The terms of the Release are clear and provide that plaintiff waives "any and all claims, causes of action and charges, of whatever kind or nature, whether known or unknown, which he now or hereafter may have against any member of the Company Group, including, but not limited to, claims arising under or in any way connected with his employment with the Company. . . ." (Agreement & Release at ¶ 4). In addition, plaintiff further agreed, "to the extent permitted by law, not to bring any administrative or legal action arising out of his

15

employment by the Company or the rights released under this Agreement. . . ." (Id.).  Plaintiff, as a senior level executive with extensive business and employee benefits experience, negotiated the release terms so as to provide for a twenty-four month period, rather than a twelve month period as originally stated, in which to exercise his remaining stock options. (Agreement & Release at ¶ 3(b)).  Consequently, this factor also weighs in favor of defendants.

     In exchange for executing this release of "any and all claims" against defendants, plaintiff received: (i) a lump sum cash payment of $55,000; (ii) an extension of his vesting schedule relating to his stock options under the SOPs; (iii) a lump sum cash payment bonus for 2001 in the amount of $42,500; (iv) the option to receive medical coverage for ten years; and (v) a company car.  (Agreement & Release at ¶¶ 3(a)-(e)).  Additionally, plaintiff testified at his deposition that his later exercise of stock options from the then vested 2000 and 2001 SOPs earned him approximately $310,000 to $320,000.  (Plaintiff's 10/25/05 Depo., at 20-22). The value of plaintiff's current claim is approximately $100,000 to $125,000  (see 3/8/02 Letter; Dkt. #61, at 19 & n.4), which value is eclipsed by the consideration he received for executing the release.

     Plaintiff argues that he "did not intend to release claims against the . . . Retirement Plan . . . or . . . SERP . . . from any claims that [he] had or may have against those entities." (Plaintiff's 12/18/05 Aff't, ¶¶ 3 & 5.  See also Dkt. #66, at 6, n.4).  However, in light of the foregoing, plaintiff's release was made knowingly and voluntarily and, as noted above by reference to the handwritten changes made to the Agreement & Release, despite what plaintiff now contends was his intention, plaintiff made appropriate changes to preserve his rights prior to his execution of a valid release.

     "It is well established a general release is valid as to all claims of which a signing party

has actual knowledge or that he could have discovered upon reasonable inquiry." Fair v. International Flavors & Fragrances, Inc., 905 F.2d 1114, 1116 (7th Cir. 1990)(multiple citations and internal quotations omitted).  However, because of the case-by-case inquiry applicable to actions in which a claim of waiver of ERISA benefits exists, various courts have reached differing outcomes as to the validity of such a waiver.  See Barron v. Unum Life Ins. Co. of Am., 260 F.3d 310, 317-18 (4th Cir. 2001)(a general release executed in favor of defendant as the plan administrator cannot be relied upon to deny plaintiff benefits involving a different plan, of which defendant was also plan administrator, under which plaintiff made a claim five years later); Morais v. Central Beverage Corp. Union Employees Supp. Ret. Plan, 167 F.3d 709, 713-15 (1st Cir. 1999)(waiver exists where plaintiff relinquished his benefits by voluntarily signing a plan document for which he received substantial consideration); Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 586-88 (1st Cir. 1993)(plaintiff was aware of his eligibility for benefits and, under the circumstances, he made a voluntary and informed choice, so that his waiver was valid); Finz, 957 F.2d at 81- 83 (a knowing and voluntary waiver exists when plaintiff, an attorney and former state court judge, understood that he might have been covered under the pension plan but nevertheless waived his claims); Fair, 905 F.2d at 1116 (a general release precluding the bringing of an action arising from an "employment relationship" constitutes the waiver of an ERISA claim); Piehl v. Metropolitan Life Ins. Co., 2005 WL 627586, at *2-3 (D. Or. Mar. 16, 2005)(plaintiff knowingly released his claims when certain employee benefits were excluded from the release while others, including ERISA claims, were explicitly released); Antoniou v. Thiokol Corp. Group Long Term Disability Plan, 849 F. Supp. 1531, 1534-35 (M.D. Fla. 1994)(no waiver of ERISA claims where employer and employer-sponsored plan were separate legal entities, the record revealed that there was no intent to release the plan, and federal maritime law directs that a release is only

17

effective to those the seaman intends to release); Unum Life Ins. Co. of Am. v. Cappello, 278 F. Supp. 2d 228, 233-36 (D.R.I. 2003)(plaintiff did not waive her rights to collect long term disability benefits as she did not intend to release defendant, the term "plan fiduciar[y]" in the release did not include defendant, defendant was not mentioned and was not a signatory, the premium payments were continuously deducted after plaintiff signed the release and the value of consideration did "not match" what defendant contends plaintiff waived).

The case which is most analogous to the situation here is the Fair case, where, in settling her Title VII lawsuit against her employer, the plaintiff agreed to "never . . . institute . . . any suit or action at law, in equity or otherwise, in any court or administrative agency, with respect to any claim of any kind . . . arising from any matter relating to her employment relationship with [defendant]. . . ." Fair, 905 F.2d at 1114 & 1117. The release in Fair did not specify a release of a claim relating to an ERISA benefit plan, just like the Agreement and Release here, where ERISA is not specifically mentioned in the various federal and state causes of action for which plaintiff gave a release. (Agreement and Release at ¶ 4). That notwithstanding, the Seventh Circuit Court of Appeals concluded that even though the plaintiff's ERISA claim was "nonexistent" at the time of her release, because the plaintiff did not retire from defendant for another year and a half, 905 F.2d at 1115-16, the "plain language of the Settlement Agreement preclud[ed] [plaintiff] from bringing suit against [the defendant] on any claim arising from her employment relationship." Id. at 1116. As stated above, the plain language of the Agreement and Release in this case "preclude[s] [plaintiff] from bringing suit against [BYK-Chemie] on any claim arising from [his] employment relationship. . . ." See Fair, 905 F.2d at 1116.

### b. RELEASE OF THE EMPLOYER VS. THE PLAN

Plaintiff contends that "the only entity that is released is BYK," in that neither the

Retirement Plan nor the SERP "is mentioned anywhere in the Agreement." (Dkt. #66, at 5. See also Plaintiff's 12/18/05 Aff't, ¶ 4. Plaintiff argues that because ERISA recognizes employee benefit plans as separate legal entities, a release purporting to release ERISA claims is ineffective when the plans themselves are not released. (Id. at 6).

Plaintiff correctly observes that under ERISA, the law recognizes, in some situations, that an employee benefit plan is separate and distinct from the employer and, as a result, "[a]n employee benefit plan may sue or be sued . . . as an entity." 29 U.S.C. § 1132(d)(1). However, "[f]or purposes of contract interpretation, there is nothing that compels the conclusion that an ERISA benefits plan, for all purposes, must be considered a distinct entity from that of the establishing entity," or the employer. Bordonaro v. Union Carbide Corp., 2002 WL 32824, at *3 (E.D. La. Jan. 11, 2002). The court in Bordonaro relies on Antoniou, as does plaintiff, which held that the defendant plan was not released in a release agreement that referenced the plaintiff's employer but not the employee disability plan because the employer and the plan were properly recognized as separate legal entities. 849 F. Supp. at 1534-35. However, the Antoniou case is markedly different from the case at hand, for here plaintiff seeks benefits from a "top hat" ERISA plan. A top hat plan is defined as "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). A plan is unfunded where "benefits thereunder will be paid . . . solely from the general assets of the employer." Demery v. Extebank Deferred Comp. Plan (B), 216 F.3d 283, 287 (2d Cir. 2000)(citation and internal quotation omitted).

In Bordonaro, the express language of the agreement released "Union Carbide Corporation, its parent, subsidiary, affiliated, related, companion, predecessor or successor

19

corporations, their agents, representatives, officers, employees, successors and assigns . . . "; the agreement did not expressly reference the Union Carbide Corporation Long Term Disability Plan or Metropolitan Life Insurance Company.  2002 WL 32824, at *1-2.  The court concluded that for purposes of construing the release at issue in that case, which is substantially similar to the release at issue in this case, the employer and the Plan are "actually the same entity, and should be considered as much in interpreting a release agreement."  Id. at *3.[13]

In this case, the SERP explicitly provides that "[t]he amounts provided by [that Plan] shall be paid from each Employer's general assets or by such other means as the Employer deems advisable."  (SERP at ¶ 6.01).   Because plaintiff's "top hat" plan is unfunded and the SERP is funded solely by the general assets of the BYK, the entity from which plaintiff seeks recovery is really BYK, his former employer, not the Retirement Plan or the SERP.  See Slaughter v. AT&T Info. Sys., Inc., 905 F.2d 92, 94 (5th Cir. 1990).  The Plan is merely a nominal defendant and the real party in interest is the employer.  See id. Thus, the language of the Agreement and Release precludes plaintiff from bringing suit against the employer defendant for any and all claims "arising under or in any way connected with his employment." (See Agreement & Release at ¶ 4).

### c. ANTI-ALIENATION PROVISION OF ERISA

Plaintiff further argues that the anti-alienation provision in ERISA, § 206(a)(1), 29 U.S.C. § 1056(d)(1), and the terms of the SERP[14] void any release of plaintiff's claims to this

---

[13]Moreover, as defendants correctly observe, plaintiff has sued BYK-Chemie USA, Inc. to compel the payment of benefits under the terms of the Retirement Plan and the SERP in direct violation of the release.  (See Dkt. #77, at 5).

[14]Under Section 6.02 of the SERP, "[t]he Supplemental Retirement Income payable under the Plan shall not be subject in any manner to anticipation, assignment, garnishment or pledge and any attempt to anticipate, assign, garnish or pledge the same shall be void. . . ."

20

action.  (Dkt. #66, at 7-8).  Defendants respond that the Agreement and Release is "devoid of any language which can even remotely be construed as granting [d]efendants a right to receive [p]laintiff's accrued benefits under the Retirement Plan or the SERP."  (Dkt. #77, at 8).  According to defendants, therefore, the Agreement and Release is "not an 'assignment or alienation' and is not proscribed by ERISA § 206(d)(1)."  (Id.)(citations omitted).

ERISA's anti-alienation provision, Section 206(d)(1), requires that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."  29 U.S.C. § 1056(d)(1).  This provision "clearly does not" prevent plaintiff from waiving his pension benefits.  Lumpkin v. Envirodyne Indus. Inc., 933 F.2d 449, 455 (7th Cir.), cert. denied, 502 U.S. 939 (1991).  "The anti-alienation provision, while clearly manifesting Congress's intent to protect workers from unknowingly signing away their vested pension benefits, does not impose a bar on settlement agreements wherein pension claims are knowingly and intentionally resolved by employees."  Id. at 455 (citations omitted); see also Auslander v. Hefland, 988 F. Supp. 576 (D. Md. 1997)(ERISA's anti-alienation provision does not apply where an employee knowingly and voluntarily waives ERISA benefits by executing a written release of claims).  "[T]he anti-alienation provision protects individuals who pledge their pension benefits as collateral or squander their benefits before retirement."  Lumpkin, 933 F.2d at 456 (citation omitted).

The Seventh Circuit has clarified that while "[p]ension entitlements are, without exception, subject to the anti-alienation provision of ERISA", "[c]ontested pension claims . . . are simply outside the realm of the provision."  Lynn v. CSX Transp., Inc., 84 F.3d 970, 975 (7th Cir. 1996)(internal quotations and citation omitted).  A "contested pension claim" arises under a settlement agreement and exists "where a claimant knew of the claim and knowingly relinquished it."  Id.

21

In this case, as stated above, prior to signing the Agreement & Release, plaintiff was aware that the issue was unresolved of whether income derived from the exercise of stock options under the Altana SOP was included in the definition of "Compensation" under the Retirement Plan, and the definition of "Compensation" under the SERP. (Defendants' 56(a)1 Statement ¶ 5; Plaintiff's Local Rule 56(a)2 Statement ¶ 5; Sheldon Decl. ¶¶ 5-6; 8/21/02 Memo.; 11/21/01 E-mail; 1/29/02 E-mail; Plaintiff's Depo., 10/25/05 at 41-42). Moreover, plaintiff was a member of the Retirement Plan Administrative Committee and was responsible for administering the Retirement Plan. (Defendants' 56(a)1 Statement ¶ 1; Plaintiff's Local Rule 56(a)2 Statement ¶ 1; Plaintiff's 10/25/05 Depo., at 12-13; Plaintiff's Local Rule 56(a)1 Statement ¶ 3; Defendants' Local Rule 56(a)2 Statement ¶ 3; Plaintiff's 11/7/05 Aff't ¶ 4). Accordingly, plaintiff, like the plaintiff in <u>Lynn</u>, knew there was an outstanding question related to his pension calculation yet plaintiff in this case, knowingly failed to include it in the release. <u>Lynn</u>, 84 F.3d at 976. Thus, "[t]o apply the anti-alienation provision [to a case in which the parties enter into a negotiated settlement] would establish the untenable rule that ERISA prevents plaintiffs from ever entering into a settlement in a dispute over lost pension benefits." <u>Lumpkin</u>, 933 F.2d at 455.[15]

### 3. DEFENDANTS' REMAINING ARGUMENTS

In light of the conclusions reached above, there is no need to address defendants' remaining arguments.

---

[15]Plaintiff also relies on <u>Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust</u>, 191 F. Supp. 2d 223 (D. Mass. 2002,) in support of his contention that the anti-alienation provision has been read to apply to releases given by employees. (Dkt. #66, at 7-8). That case differs in two important respects: the Court in that case concluded that the releases were not knowingly and voluntary and the Court found that the Trust in that case, which was a defined benefit plan, was a legally separate entity and a release of Blue Cross did not automatically release the Trust. <u>Id.</u> at 226-33.

     B. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

     In light of the conclusions reached above, plaintiff's Motion for Partial Summary Judgment (Dkt. #56) is denied without prejudice as moot.

## III. CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment (Dkt. #59) is granted in part and plaintiff's Partial Motion for Summary Judgment (Dkt. #56) is denied without prejudice as moot.  The Clerk's Office is directed to close the file.[16]

Dated this 10th day of March, 2006, at New Haven, Connecticut.

     _____/s/_____
     Joan Glazer Margolis
     United States Magistrate Judge

---

[16]The Magistrate Judge commends both counsel for their comprehensive and well-written briefs.